UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X  Case Number 24-cv-2792
CAROL S. CYMBLER, on behalf of herself and all
      others similarly situated,
               Plaintiff

      -against-                          **CLASS ACTION COMPLAINT**

NEW YORK STATE
NASSAU COUNTY
NASSAU COUNTY TRAFFIC AND PARKING      **JURY TRIAL DEMANDED**
      VIOLATIONS AGENCY
VERRA MOBILITY CORPORATION
AMERICAN TRAFFIC SOLUTIONS, INC.,
               Defendants
-------------------------------------------------------------------X

Plaintiff Carol S. Cymbler ("plaintiff"), by and through her counsel, on behalf of herself and all

others similarly situated, alleges based upon personal knowledge as to plaintiff's own acts and

observations, and upon information and belief as to all other matters based upon the

investigations conducted by and through plaintiff's attorneys, against defendants New York

State, Nassau County, Nassau County Traffic and Parking Violations Agency, Verra Mobility

Corporation, and American Traffic Solutions, Inc. (collectively "defendants"), as follows:

## NATURE OF THE ACTION

1.      This action concerns the red light camera program operating in Nassau County.

2.      The issues raised herein are not challenging the constitutional permissiveness of red light

      camera programs. Rather, issues exist concerning the constitutionality of the enacting

      statutes as written. Actions taken by defendants, predicated upon the belief of the

      statutes' constitutionality, caused injury to plaintiff and all class members.

3.      Regardless of whether or not the enacting statutes were constitutional, at issue herein is

      that the manner in which the red light cameras in Nassau County have been installed and

operated since their first use – and continuing through the present day – is illegal. The injuries to plaintiff and to the class members would not have occurred if constitutional and statutory requirements had been complied with and if compliance with those requirements had been placed ahead of government and corporate greed.

4.    All additional claims set forth herein flow directly from the illegal installation and operation of red light cameras in Nassau County and actions taken in furtherance of a pursuit of monies from those accused of red light violations at camera locations.

## JURISDICTION AND VENUE

5.    As claims herein concern the constitutionality of statutes, this Court maintains exclusive jurisdiction under Article III of the United States Constitution.

6.    Issues involved in this action also concern interstate commerce as contracts for the providing of goods and services across state lines are involved. As regulation of interstate commerce is exclusively bestowed upon Congress by Article I, § 8, Clause 3 of the Constitution, this Court maintains jurisdiction under Article III, § 2 of the Constitution.

7.    This action also involves the electronic transmission of information in a manner regulated by federal law (specifically The Telecommunication Act of 1934 [47 U.S.C. § 151 et. seq.]). Jurisdiction rests with this Court as per Article III, § 2 of the Constitution, federal courts maintain jurisdiction of cases involving federal law.

8.    Pursuant to 18 U.S.C. § 1964, 18 U.S.C. § 2724, and 28 U.S.C. § 1337, original jurisdiction solely rests with this Court for claims brought herein.

9.    This Court further maintains jurisdiction under 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for claims raised herein.

10.   This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(a) because the

amount in controversy exceeds $5,000,000, exclusive of interests and costs; there are hundreds of thousands of class members; and at least one class member will be a citizen of a state different from the state of citizenship of any defendant.

11.    Pursuant to 28 U.S.C. § 1367 this Court has supplemental jurisdiction over the state law claims which arise out of the same facts and circumstances.

12.    Per 28 U.S.C. § 1391(b)(2), venue is proper in this District as a substantial part of the events giving rise to the claims occurred within the District's jurisdictional boundaries.

13.    As plaintiff resides within the jurisdictional boundaries of this Court, venue in the Eastern District is also proper under 18 U.S.C. § 1965(a).

## PARTIES

14.    Plaintiff Carol S. Cymbler is an individual and a citizen of the State of New York.

15.    Defendant State of New York ("New York State" or "NYS") is the sovereign State of New York.

16.    Defendant Nassau County is a municipal corporation as defined by § 66 of New York General Construction Law and a county as defined by § 3 of New York County Law.

17.    Defendant Nassau County Traffic and Parking Violations Agency ("NCTPVA") is a municipal corporation as defined by § 66 of New York General Construction Law.

18.    Defendant Verra Mobility Corporation ("Verra Mobility") is a foreign for-profit business corporation as defined by § 66 of New York General Construction Law and § 102 of New York Business Corporation Law. Said corporation is incorporated in the State of Delaware[1] and maintains its principal place of business in the State of Arizona.

19.    Defendant American Traffic Solutions, Inc. ("American Traffic Solutions" or "ATS") is a

---

[1] Upon information and belief, at the time of its incorporation, the entity utilized, and registered under, the name Gores Holdings II, Inc. Since that time it has formally changed its officially registered name.

foreign for-profit business corporation as defined by § 66 of New York General

Construction Law and § 102 of New York Business Corporation Law. Said corporation is

incorporated in the State of Kansas[2] and maintains its principal place of business in the

State of Arizona.

## FACTUAL ALLEGATIONS

20.    In 2009, the New York State Legislature passed a bill amending the state's Vehicle and

Traffic Law ("VTL") by creating a new section of the law. Once signed by the Governor,

the bill officially became law.

21.    The newly created VTL § 1111-b authorized Nassau County to create what is commonly

referred to as a red light camera program.[3] Specifically, the new section authorized

Nassau County to install and operate "traffic-control signal photo violation-monitoring

devices" at fifty (50) intersections throughout the county.[4] Originally set to expire in

December of 2014, NYS has repeatedly extended VTL § 1111-b's expiration date.[5]

22.    VTL § 1111-b(a)(1) "authorized and empowered" Nassau County "to adopt and amend a

local law or ordinance establishing" the red light camera program. As, at the time of the

adoption of this section of the VTL, no such program yet existed in Nassau County, the

Nassau County Legislature crafted such a program. On May 18, 2009 the County

---

[2] At the time of its incorporation, the entity utilized, and registered under, the name Traffic Electronics Corporation. Since that time it has formally changed its officially registered name.

[3] Four separate laws were enacted allowing for the installation and operation of red light cameras. Each gave authorization to a different location: Nassau County, Suffolk County, the City of Rochester, and the City of Yonkers. Each created an identically numbered section of the VTL resulting in four separate laws which all identify as VTL § 1111-b. This action only concerns the section pertaining to Nassau County.

[4] Commonly referred to as "red light cameras," these devices will hereafter be referred to by that designation.

[5] In addition, the State Legislature amended VTL § 1111-b to increase the number of authorized red light cameras in Nassau County by doubling the number of intersections at which such cameras could be installed and operated from fifty (50) to one hundred (100).

Legislature passed Local Law 12-2009 which, upon being signed by the Nassau County Executive, became effective on June 18, 2009. Pursuant to this Local Law, a new Title 72 was added to the existing Miscellaneous Laws of Nassau County.[6]

23.    New York State was very specific in the authorization which VTL § 1111-b granted to Nassau County. In authorizing use of a red light camera program in and by Nassau County, New York State specifically declared that the red light camera program "shall empower such county to _install and operate_ traffic-control signal photo violation-monitoring devices." VTL § 1111-b(a)(1). (Italics and underlining added.)

24.    When, in May of 2009, the Nassau County Legislature established its red light camera program via Title 72 of the Miscellaneous Laws of Nassau County, it ensured that the wording of Title 72 complied with the authorization granted in VTL § 1111-b(a)(1).

25.    The second sentence of Title 72 deals with installation and operation of the red light cameras. Pursuant to § 1(a) of Title 72, the Nassau County Legislature specifically states, "_The Department of Public Works_, for purposes of implementation of such program, _shall be authorized to install_ traffic-control signal photo violation-monitoring devices _and to operate_ such devices at no more than fifty intersections within and under the jurisdiction of the County at one time." [7] (Italics and underlining added.)

26.    By means of VTL § 1111-b(a)(1)'s wording, New York State declared that Nassau County was to not only install the red light cameras but that the county was also responsible for operating those cameras. No authorization – explicit or implied – was

---

[6] A Title 72 dealing with fertilizer laws already existed in the Miscellaneous Laws. When creating the local laws regarding red light cameras, the Nassau County Legislature enacted a second Title 72. Thus the Miscellaneous Laws of Nassau County contains two separate and distinct sections known as Title 72. The instant action does not involve the fertilizer law Title 72 section.

[7] When New York State amended VTL § 1111-b to increase the number of intersections at which cameras could be installed from fifty (50) to one hundred (100), Nassau County amended Title 72 to allow for the increase.

given for the county to "farm out" or "contract out" the installation or operation to any third party, including vendors (which would include private for-profit corporations such as Verra Mobility and American Traffic Solutions).[8]

27.    In Title 72, Nassau County specifically placed full responsibility for installation and operation of these cameras upon the county's Department of Public Works. No authorization – express or implied – was given for the Department of Public Works to "farm out" or "contract out" the installation or operation to any other government agency or entity or to any third party, including vendors (which would include private for-profit corporations such as Verra Mobility and American Traffic Solutions).[9]

28.    Nassau County intentionally ignored the limitations contained in the explicit statutory authorizations set forth in VTL § 1111-b(a)(1) and Title 72.

29.    Although the Department of Public Works was statutorily authorized to install and operate the red light cameras, the Department's only involvement with the program has been to assist in selecting locations for the installation of these cameras. The Department does nothing else regarding installation and has no involvement with their operation.

30.    A completely separate government agency – Nassau County Traffic and Parking Violations Agency – without any legal authority and in contravention of Title 72, involved itself with the installation and operation of the red light cameras in Nassau County. But NCTPVA went even further with its unauthorized, illegal actions.

31.    In direct violation of both Title 72 and VTL § 1111-b(a)(1), NCTPVA entered into

---

[8] Whenever amendments to the statute were enacted, the State Legislature made no changes to that portion which expressly authorized only Nassau County to perform the installation and operation of the cameras.

[9] When the County Legislature amended Title 72 to conform with the State Legislature increasing the number of intersections in Nassau County in which red light cameras could operate, no change was made regarding responsibility or authorizations for installation and operation of the cameras. The amended Title 72 continued to vest responsibility for installation and operation of the cameras solely in the Department of Public Works.

multiple contracts[10] with the for-profit corporate defendants to rent the red light cameras from these private corporations. By means of these contracts, the Arizona based corporate defendants were leasing goods to an entity which only exists in New York. As such, these contracts involve interstate commerce as defined by 15 U.S.C. § 78c(a)(17).

32.    In further direct violation of both VTL § 1111-b(a)(1) and Title 72, the terms of these contracts also set forth that the corporate defendants would be responsible for, and paid for, installing, operating, and maintaining the red light cameras. By those terms, the Arizona based corporate defendants were providing services to an entity which only exists in New York. As such, for a second reason, these contracts involve interstate commerce as defined by 15 U.S.C. § 78c(a)(17).

33.    Alleged violations of law captured by the red light cameras installed and operated in Nassau County get processed and those who are deemed to have violated the red light statute are then mailed a Notice of Liability ("Notice"). As set forth in VTL § 1111-b, the Notices are sent to, and financial liability imposed upon, the registered owners of the vehicles that the cameras photographed and recorded violating the red light statute.

34.    Those who received a Notice would then have the option of paying the amount demanded or contesting the Notice and having a hearing scheduled.

35.    If the person or entity receiving a Notice chose not to contest it and to instead pay the demanded amount, payment could be made in four different ways. One option was to make payment in person to NCTPVA at its office. The second option was to pay by mail with a check or money order. The checks and money orders were to be made out to, and mailed directly to, Nassau County – not to NCTPVA. The third option was to make

---

[10] The contracts, upon information and belief, were entered into by NCTPVA on behalf of itself and Nassau County.

payment to the corporate defendants over the phone by calling a toll-free telephone number that connects to a call center operated by them. The fourth payment method was by making the payment to the corporate defendants electronically, over the internet, via a commercial website privately owned and operated by the corporate defendants.

36.    If the person or entity receiving a Notice of Liability chose to contest the Notice, then they would fill out a form to request a hearing. The form would be mailed to Nassau County – not to NCTPVA. A hearing would then be scheduled before a judicial hearing officer employed by Nassau County and NCTPVA.

37.    If the judicial hearing officer upheld the Notice of Liability, payment would have to be made directly to NCTPVA at its office.

38.    If the judicial hearing officer dismissed the Notice, since 2011 the Notice recipient has still had to pay NCTPVA – at its office – "fees" imposed by Nassau County.

**Factual Allegations As Pertaining To Plaintiff**

39.    Plaintiff received a Notice of Liability, bearing Notice Number 1692202357250, for an alleged violation of a red light by a vehicle registered to her. A copy of the Notice is attached as Exhibit "A."

40.    Per the Notice of Liability, the violation of the red light by plaintiff's vehicle was captured by a red light camera and both video and still images were taken by that camera.

41.    According to the Notice, the camera involved bears identification number NC30 and was located at the intersection of Old Country Road and South Oyster Bay Road.

42.    According to the Notice, the camera recorded the red light violation by plaintiff's vehicle as it travelled east on Old Country Road at 12:20:03 on the afternoon of June 15, 2022.

43.    The camera involved is one of the red light cameras installed, operated, and maintained

by, the corporate defendants pursuant to contract(s) with Nassau County and NCTPVA.

44.    Although the alleged violation occurred on June 15, 2022, the Notice of Liability is dated July 1, 2022 – twenty-seven (27) days later.

45.    Per the Notice, plaintiff was told that her financial liability for this red light violation was one hundred fifty dollars ($150). This was broken down into three parts. Plaintiff was subjected to a fine of fifty dollars ($50) which is the statutory maximum that can be imposed per both state and county statutes. She was also required to pay an additional forty-five dollars ($45) for a county imposed fee bearing the name "Driver Responsibility Fee." On top of that plaintiff was required to pay an additional fifty-five dollars ($55) for a county imposed fee delineated as a "Public Safety Fee."

46.    The Notice of Liability gave plaintiff two options. Option one was to pay the amount demanded and option two was to challenge the Notice and request a hearing. Per the Notice, plaintiff had until August 23, 2022 to make her selection.

47.    If plaintiff were to have chosen option one and paid the amount demanded without contesting the Notice and amount demanded, she would have had four choices on how to pay. She could have paid in person, by mail, over the phone, or over the internet.

48.    If paying in person, payment was to be made to NCTPVA at their office.

49.    A second payment method, payment by mail, required payment via a check or money order made out to Nassau County – not to NCTPVA. Furthermore, the payment was to be mailed to Nassau County – not to NCTPVA.

50.    As a third alternative, plaintiff could have called a toll free telephone number and made the payment over the phone. Calling that number would have connected plaintiff to a call center operated by the corporate defendants and would therefore have required payment

be made to the corporate defendants, not to Nassau County or NCTPVA.

51.     The fourth option for paying would have been by plaintiff paying electronically over the internet. The Notice provided the web address of the site to which plaintiff could go in order to make the payment. However the website is not an official website of either Nassau County or NCTPVA. Rather it is a commercial website and it automatically redirects visitors to a different commercial website which is owned, operated, maintained, and copyrighted by the corporate defendants. Any payment made via the website would be made to the corporate defendants and not to Nassau County or NCTPVA.

52.     Plaintiff chose to contest the Notice and requested a hearing by completing the provided form (located on the reverse side of the "tear-off" section of the Notice) and mailing it as required. The form was mailed, per the instructions, to Nassau County – not to NCTPVA.

53.     Plaintiff subsequently received a letter from Nassau County and NCTPVA. The letter, dated August 9, 2022, indicated that a hearing would be held on January 31, 2023. A copy of the letter is attached as Exhibit "B." Plaintiff attended the hearing with counsel.

54.     The hearing was held at the offices of NCTPVA, a prosecuting attorney employed by Nassau County and NCTPVA appeared on their behalf, and the hearing was presided over by a judicial hearing officer employed by Nassau County and NCTPVA.

55.     Nassau County and NCTPVA, by and through their prosecuting attorney, submitted evidence at the hearing. This evidence constituted photographs and a video recording made by the camera and a certificate sworn to by an NCTPVA employed technician.

56.     By nature of the unconstitutionality of the enacting statutes, the photographs and video recording were inadmissible.

57.     Even if the enacting statutes are declared constitutional, as the camera involved was not

installed or operated in compliance with the state and county statutes, the camera was unauthorized and illegal. As such, any photographs and video recording it made were fruit of the poisonous tree, illegal, unlawfully obtained, and inadmissible as evidence.

58.    Furthermore, the certificate submitted failed to meet the statutory requirements for admission as it conflicts with plaintiff's constitutional rights.

59.    Nassau County and NCTPVA – via their judicial hearing officer employee – allowed the inadmissible photographs, video, and certificate admitted into evidence despite objection to their admission and despite their failing to qualify for admission under the law.

60.    After Nassau County and NCTPVA (via their judicial hearing officer presiding over the hearing) allowed their own inadmissible (and illegal and unlawfully obtained) evidence (submitted by their attorney) to be improperly entered into evidence, they (via the judicial hearing officer employed by them) ruled against plaintiff and upheld the Notice of Liability which they had issued. Nassau County and NCTPVA (via their judicial hearing officer employee) justified that ruling by predicating the ruling upon their own evidence – in spite of that evidence being illegal, unlawfully obtained, and statutorily inadmissible.

61.    After the hearing, plaintiff paid the full one hundred fifty dollar ($150) amount demanded – inclusive of the imposed Driver Responsibility Fee and Public Safety Fee. Payment was made directly to NCTPVA at its offices. Plaintiff made said payment via a credit card.

62.    In addition, for using that method of payment, plaintiff was also charged an additional "convenience fee" of four dollars and forty-eight cents ($4.48).

**CLASS ACTION ALLEGATIONS**

63.    Plaintiff brings this action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the additional Classes defined as follows:

***The Ticketed Class:*** All persons and entities that were issued a Notice of Liability for violation of VTL § 1111-b in Nassau County since the installation and operation of red light cameras in Nassau County in 2009 where such violations were captured in still photographs and video recordings by a red light camera installed and operated in Nassau County and such Notice was issued predicated on the images and video recording.

***The Paying Class:*** All persons and entities that were issued a Notice of Liability for violation of VTL § 1111-b in Nassau County since the initial installation and operation of red light cameras in Nassau County in 2009 where such violations were captured in still photographs and video recordings by a red light camera installed and operated in Nassau County and who paid the monies owed for the Notice of Liability received. This class is divided into three subclasses as follows:

   ***The Non-disputing Subclass:*** All persons and entities who, without disputing, contesting, or challenging the Notice(s) issued to them, paid the full amount demanded on the Notice(s), inclusive of the statutory liability for the violation plus any additional fees imposed by Nassau County including, but not limited to, a fee known as a Public Safety Fee and a fee known as a Driver Responsibility Fee, as well as any fees called "convenience fees" imposed by Nassau County, NCTPVA, Verra Mobility and/or ATS.

   ***The Disputing Subclass:*** All persons and entities who disputed the Notice(s) of Liability issued to them, requested and received a hearing on their disputed Notice(s), whose liability was upheld and affirmed at such hearing, and who thereafter paid the full amount demanded on the issued Notice(s) in full, inclusive of the statutory liability for the violation plus any additional fees imposed by Nassau County including, but not limited to, a fee known as a Public Safety Fee and a fee known as a Driver Responsibility

Fee, and any "convenience fees" imposed by Nassau County and/or NCTPVA.

**_The Fee Only Subclass:_** All individuals and entities who, since 2011, disputed the Notice(s) of Liability issued to them and had the Notice(s) dismissed but, as it was a dismissal rather than a "Not Guilty" ruling, were still required to, and did, pay all fees imposed by Nassau County including, but not limited to, a fee known as a Public Safety Fee and a fee known as a Driver Responsibility Fee as well as any fees described as "convenience fees" imposed by Nassau County and/or NCTPVA.

**_The RICO Class:_** All persons and entities who suffered actual financial injuries as a result of actions taken by Nassau County, NCTPVA, Verra Mobility, and ATS in violation of the RICO statutes. This class is divided into two subclasses as follows:

**_The Older Subclass:_** All persons and entities who, as a result of the RICO violations, suffered actual financial injuries more than four (4) years prior to the filing of this action.

**_The Newer Subclass:_** All persons and entities who, as a result of the RICO violations, suffered actual financial injuries within the four (4) years immediately prior to the filing of this action.

64.    Regarding the numerosity requirement of Fed. R. Civ. P. 23(a)(1), the members of each Class and Subclass are so numerous that joinder of all members of each Class or Subclass is impractical.[11]

---

[11] Using calendar year 2016 statistics as an example, The Ticketed Class would have hundreds of thousands of members as over five hundred thousand (500,000) red light camera based Notices of Liability were issued; if only half of those recipients paid without dispute, The Non-Disputing Subclass would have over two hundred thousand (200,000) members; if, conservatively, only one quarter of one percent of those Notice recipients requested and received a hearing, had their liability affirmed thereat, and paid the demanded amount, The Disputing Subclass would have over one thousand two hundred fifty (1,250) members; and over two hundred thousand (200,000) people/entities would have suffered actual financial damage and constitute the RICO Class. As the red light cameras have been in operation since 2009, factoring in all the other years of the program's operation exponentially increases these statistics and the size of the Classes and Subclasses.

[13]

65.     This action meets the requirements of Fed. R. Civ. P. 23(a)(2) in that common questions of law and fact exist which dominate over any such questions that only affect individual Class or Subclass members. These common questions include, but are not limited to:

a)  Whether the New York State statute which authorized Nassau County to install and operate red light cameras and to issue Notices of Liability for red light violations captured by those cameras is unconstitutional;

b)  Whether the local law enacted by Nassau County which authorized the Nassau County Traffic and Parking Violations Agency to issue Notices of Liability for red light violations captured by red light cameras was unconstitutional;

c)  Whether the red light cameras operating in Nassau County are illegal based upon the manner in which, and/or contracts under which, they were installed and are operated;

d)  Whether Nassau County and NCTPVA abused process;

e)  Whether Nassau County, NCTPVA, Verra Mobility, and ATS attempted to, and did, commit fraud;

f)  Whether Nassau County and NCTPVA denied due process under the New York State and United States Constitutions;

g)  Whether the local law enacted by Nassau County which imposed a "Public Safety Fee" was unconstitutional;

h)  Whether Nassau County's institution of a "Driver Responsibility Fee" was unconstitutional;

i)  Whether the privacy of those to whom Nassau County based red light camera Notices were issued was invaded;

[14]

    j)    Whether Nassau County, NCTPVA, Verra Mobility, and ATS were unjustly enriched;

    k)    Whether multiple defendants were associated with an enterprise engaged in, or the activities of which affected, interstate commerce, and conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of RICO statutes;

    l)    Whether multiple defendants conspired together to violate the RICO statutes.

**66.** Plaintiff can adequately represent the various classes, inclusive of absent class members. She is a member of The Ticketed Class, The Paying Class, and The RICO Class. The claims she puts forth herein are typical of the claims of each Class and the relief sought for the unlawful actions complained of are also typical of the relief sought on behalf of each Class. As such the typicality requirement of Fed. R. Civ. P. 23(a)(3) is met.

**67.** The adequacy requirements of Fed. R. Civ. P. 23(a)(4) are also met. Plaintiff can adequately represent the members of each Class. Plaintiff's interests are aligned with those of each Class and her interests are neither antagonistic towards, nor in conflict with, the interests of any of the Classes. Plaintiff has retained competent and experienced counsel who are intimately familiar with the facts and issues involved herein and who are prepared to meet the needs of litigating a case of this size and complexity.

**68.** A class action is a fair and efficient means by which to adjudicate this controversy and is superior to other methods. Judicial economy is promoted by allowing for hundreds of thousands of class members to have their virtually identical claims consolidated and litigated in a single action.

**69.** Common questions of law predominate over any such questions affecting individual

Class or Subclass members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy as individually seeking redress would be burdensome to the litigants and the Court. Furthermore, having the issues pursued in separate litigation by each member of the Classes creates the potential for inconsistent or contradictory judgments. Plaintiff does not see any reason why the Court would encounter any difficulty in managing this action as a class action. As such, Certification of the Classes under Fed. R. Civ. P. 23(b)(3) is appropriate.

70.     Notice of claim was served upon Nassau County and NCTPVA as required by General Municipal Law § 50-e and a hearing was held pursuant to § 50-h. At least thirty (30) days have elapsed since the service of such notice, and since the date of that hearing, and adjustment or payment thereof has been neglected or refused.

### AS AND FOR A FIRST CAUSE OF ACTION
#### Constitutionality of NYS Statute under the Federal Constitution

71.     Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "70" as though they are fully set forth herein.

72.     VTL § 1231 declares that "[e]very person riding a bicycle…upon a roadway…shall be subject to all of the duties applicable to the driver of a vehicle by this title, except as to special regulations in this article and except as to those provisions of this title which by their nature can have no application."

73.     Among the duties applicable to drivers of vehicles by the VTL are those regarding compliance with traffic signals.

74.     VTL § 1110(a) declares that except for drivers of emergency vehicles, "[e]very person shall obey the instructions of any official traffic-control device applicable to him placed in accordance with the provisions of this chapter, unless otherwise directed by a traffic or

police officer."

75.    Yet in enacting VTL § 1111-b, the NYS Legislature intentionally chose to target certain "law breakers" for violation of traffic law, thereby explicitly allowing others to "break" that same law without fear of consequences.

76.    VTL § 1111-b (a)(1) authorized installation and operation of "traffic-control signal photo violation-monitoring devices" (commonly called "red light cameras") in Nassau County.

77.    The purpose of the red light camera program was for the purpose of "imposing monetary liability on the owner of a *vehicle* for failure of an operator thereof to comply with traffic-control indications." (Italics added.)

78.    The very wording of the statute indicates that the statute was specifically aimed at targeting vehicular violations of red lights.

79.    As vehicles and bicycles have separate definitions under the VTL, the very wording of VTL § 1111-b indicates that the red light cameras were not to photograph bicycles violating red light traffic signals.

80.    By not photographing bicycles violating red light traffic signals, no red light camera Notices of Liability were to be issued to owners of bicycles when the operator of such bicycles violated the red light traffic signal.

81.    The Fourteenth Amendment to the United States Constitution expressly declares that "[n]o State shall make or enforce any law which shall…deny to any person within its jurisdiction the equal protection of the laws."

82.    New York State's VTL expressly declares that operators of both vehicles and bicycles must obey all traffic laws. The traffic laws include obeying traffic signal indicators.

83.    By wording the red light camera program as focusing solely on "vehicles," VTL § 1111-b

[17]

only targets owners and operators of "vehicles."

84.     No attempt at applying the law to bicycles is even vaguely implied in the statute.

85.     As the statute requiring the obeying of traffic laws applies equally to bicycles and vehicles, establishing a statutory program which specifically targets only vehicles, but not bicycles, for the identical traffic violation is an unjust and unequal application of law.

86.     By intentionally crafting a program that specifically targets only vehicle owners and, by nature of the statute's wording expressly not targeting bicycle owners, VTL § 1111-b essentially provides a statutory exemption and immunity from Notices of Liability to bicycle owners whose operators violate red lights in Nassau County at intersections where red light cameras operate.

87.     By specifically targeting only vehicle owners and not bicycle owners for the identical violation of law and, by making only vehicle owners and not bicycle owners liable for the identical violations of law, vehicle owners are denied equal protection of law.

88.     As vehicle owners are denied equal protection of law, VTL § 1111-b, as written, violates the Fourteenth Amendment and is therefore unconstitutional.

89.     As VTL § 1111-b has, since its inception and throughout all of its subsequent updates, always targeted only vehicles and not bicycles, the statute is not only currently unconstitutional but has been unconstitutional since it was initially enacted.

## AS AND FOR A SECOND CAUSE OF ACTION
### Constitutionality of NYS Statute under the New York State Constitution

90.     Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "89" as though they are fully set forth herein.

91.     As indicated above, per New York State statutes, operators of a bicycle must comply with the traffic laws applicable to vehicles.

[18]

92.    As further indicated above, despite the traffic laws applying equally to operators of bicycles and vehicles, VTL § 1111-b specifically creates a program whereby cameras are used to target, and hold liable, owners of vehicles for red light violations caught on camera while making no attempt to target or hold owners of bicycles liable for red light violations by operators of the bicycles.

93.    Article I, § 6 of the New York State Constitution expressly states that "[n]o person shall be denied the equal protection of the laws of this state."

94.    By intentionally crafting a statute and statutory program which, by nature of its wording, specifically targets only vehicle owners for red light violations, VTL § 1111-b essentially provides statutory exemption and immunity from Notices of Liability to bicycle owners whose operators violate red lights in Nassau County at intersections where red light cameras operate.

95.    By specifically targeting only vehicle owners and not bicycle owners for the identical violation of law and by making only vehicle owners and not bicycle owners liable for the identical violations of law, vehicle owners are denied equal protection of the law.

96.    As vehicle owners are denied equal protection of law, VTL § 1111-b, as written, violates Article I, § 6 of the New York State Constitution and is therefore unconstitutional.

97.    As VTL § 1111-b has, since its inception and throughout all of its subsequent updates, always targeted only vehicles and not bicycles, the statute is not only currently unconstitutional under the New York State Constitution but has been unconstitutional since the statute was initially enacted.

### AS AND FOR A THIRD CAUSE OF ACTION
### Constitutionality of NYS Statute under the Federal Constitution

98.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "97" as

though they are fully set forth herein.

99.    The Fourteenth Amendment imposes the federal guarantee of due process upon the states.

100.    Under New York State law, hearsay evidence is inadmissible unless it falls within certain categories established by statute or case rulings. Improper admission of hearsay evidence constitutes a violation of a person's rights to due process.

101.    In crafting VTL § 1111-b, the NYS Legislature declared that hearsay in the form of a sworn affidavit is sufficient evidence of the accusations made against Notice recipients.

102.    Such affidavits do not fall within any exceptions which would allow for their admissibility into evidence.

103.    By statutorily creating a new exception to the generally applicable rules on hearsay, VTL § 1111-b denies due process to red light Notice recipients in violation of the due process guarantees of the Fourteenth Amendment to the federal Constitution.

104.    By denying due process to red light Notice recipients, VTL § 1111-b is unconstitutional and has been since it was enacted.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**Constitutionality of NYS Statute under the NYS Constitution**

105.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "104" as though they are fully set forth herein.

106.    Article I, § 6 of the NYS Constitution guarantees the right of due process.

107.    In New York, in order to be admissible, hearsay evidence must fall within certain categories established by statute or case rulings. Improper admission of hearsay evidence constitutes a violation of a person's rights to due process.

108.    In crafting VTL § 1111-b, the NYS Legislature declared that hearsay in the form of a sworn affidavit is sufficient evidence of the accusations made against Notice recipients.

109. Such affidavits do not fall within any exceptions which would allow for their admissibility into evidence.

110. By creating a new exception to the generally applicable rules on hearsay, VTL § 1111-b statutorily denies due process to red light Notice recipients in violation of their due process rights under Article I, § 6 of the NYS Constitution.

111. By denying due process to red light Notice recipients, VTL § 1111-b is unconstitutional and has been since it was first enacted.

### AS AND FOR A FIFTH CAUSE OF ACTION
### Constitutionality of Local Law

112. Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "111" as though they are fully set forth herein.

113. The very existence of defendant NCTPVA is a product of both state and county law.

114. In General Municipal Law § 370(2) the New York State Legislature ordered the creation of NCTPVA.

115. The State Legislature also set forth NCTPVA's duties and responsibilities. Per General Municipal Law § 370-a(1), the sole purpose of NCTPVA is "*to administer and dispose of traffic and parking infractions.*" (Italics and underlining added.)

116. The Nassau County Legislature created NCTPVA by enacting § 24-1.1 of the Administrative Code of Nassau County. The County Legislature, just like the State Legislature, explicitly set forth the duties and responsibilities of NCTPVA. The Administrative Code mirrored the GML by limiting NCTPVA's responsibilities and authority to the administration and disposition of law, rule, regulation, and ordinance infractions pertaining to traffic and parking.

117. Both the state and county were thus very clear as to what NCTPVA's responsibilities are.

NCTPVA, pursuant to state and county law, is responsible for adjudicating and disposing of tickets and summonses issued for traffic and parking infractions. Nothing in those parameters authorized NCTPVA to issue, or authorize issuing of, tickets or summonses.

118.    When in 2009 the State Legislature granted Nassau County authorization to utilize red light cameras, the Nassau County Legislature passed Local Law 12-2009. This Local Law enacted Title 72 of the Miscellaneous Laws of Nassau County – which created the county's red light camera program – and also amended § 24-1.1 of the Administrative Code of Nassau County – to define NCTPVA's responsibilities regarding the camera program authorized by VTL § 1111-b.

119.    In relevant part, the amended § 24-1.1 states NCTPVA's sole responsibility is "to assist the Nassau County District Court in the disposition and administration of infractions of traffic and parking laws, ordinances, rules and regulations, and the adjudication of liability of owners for violations of subdivision (d) of section 1111 of the Vehicle and Traffic Law in accordance with section 1111-b of such law."

120.    The amended statute's wording clearly sets forth that NCTPVA's parameters of authority and responsibility are in lockstep with those established by the State Legislature.

121.    While GML § 370-a(1) and amended Administrative Code § 24-1.1 (created by § 2 of Local Law 12-2009) are in alignment with one another, they conflict with the new Title 72 of the Miscellaneous Laws of Nassau County (created by § 1 of Local Law 12-2009.)

122.    Per Title 72 § 5(d), NCTPVA was given the authorization to prepare and mail the red light camera Notices of Liability. By preparing the Notices, NCTPVA was thereby authorized to be the entity issuing the Notices.

123.    In enacting Title 72 § 5(d) of the Miscellaneous Laws of Nassau County, the Nassau

County Legislature expanded the responsibilities and authority of NCTPVA beyond the parameters set forth by the state under General Municipal Law § 370-a(1).

124.    As the authorization granted by Title 72 § 5(d) exceeds the authorization limitations set by the State Legislature in General Municipal Law § 370-a(1), conflict preemption mandates that the state statute is superior. As such, Title 72 § 5(d) is unconstitutional and has been since its initial enactment.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Constitutionality of Local Law under the United States Constitution**

125.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "124" as though they are fully set forth herein.

126.    Title 72 § 5(d) is also unconstitutional as it creates a due process violation.

127.    Pursuant to Title 72 § 5(d), NCTPVA (or its authorized designee) is to prepare the Notices of Liability. As preparing them constitutes issuing them, by preparing the Notices, NCTPVA has already decided that a red light infraction had been committed.

128.    Prior to the enactment of Title 72, both state and county law had specifically stated that NCTPVA's sole responsibility was to serve as the administrator, adjudicator, and disposer of traffic infraction violations.

129.    NCTPVA's sole responsibility regarding red light camera violations is specifically set forth by law. Per § 24-1.1 of the Administrative Code of Nassau County, NCTPVA's only responsibility regarding VTL § 1111-b violations is "adjudication of liability."

130.    By creating Title 72 § 5(d), the County Legislature authorized NCTPVA to declare existence of liability and issue the Notices of Liability which, under GML § 370-a(1) and § 24-1.1 of the Administrative Code of Nassau County, NCTPVA would then be responsible for adjudicating. This is a due process violation as it eliminates the very

concept of having an impartial hearing by statutorily mandating that the entity responsible for determining whether or not to affirm existence of a violation and liability is the very same entity that had already declared both the violation and liability to exist.

131.    Further proof of this unconstitutional design is found in Title 72 itself.

132.    Title 72 § 5(d) authorized NCTPVA (or its designee) to prepare the Notices of Liability. The very next section – Title 72 § 6 – declared that NCTPVA was to then adjudicate liability imposed by the very Notices it issued under § 5(d). This clearly eliminates any concept of a fair tribunal existing and thereby denies due process.

133.    Due process cannot exist when the very entity charged with deciding that a traffic infraction had occurred and had issued a Notice of Liability for that infraction is then the same entity serving as the tribunal which is to decide whether or not to uphold the Notice which it had issued and the liability it had imposed via issuance of that Notice.

134.    Due process by the states is guaranteed by the Fourteenth Amendment. By means of Title 72 § 5(d), Nassau County chose to eliminate due process.

135.    As due process was obliterated by Title 72 § 5(d) of the Miscellaneous Laws of Nassau County, this Court should declare that this law is, and has always been, unconstitutional.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**Constitutionality of Local Law under the New York State Constitution**

136.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "135" as though they are fully set forth herein.

137.    As set forth above, the New York State Legislature established specific parameters of authorization for NCTPVA.

138.    As also set forth above, by means of Title 72 § 5(d) of the Miscellaneous Laws of Nassau County, the Nassau County Legislature illegally expanded the parameters beyond the

limits established by New York State.

139. GML § 370-a(1) specifically limited NCTPVA's responsibility's to that of adjudicating traffic infractions. Nothing in the statute authorized NCTPVA to issue tickets, summonses, or Notices for traffic infractions.

140. These state imposed limitations of authority are even acknowledged by Nassau County as those same limits are set forth in § 24-1.1 of the Administrative Code of Nassau County.

141. Title 72 § 5(d) of the Miscellaneous Laws authorized NCTPVA to issue Notices of Liability for red light violations captured by a red light camera and to impose liability for those violations.

142. By means of GML § 370-a(1) and § 24-1.1 of the Administrative Code, NCTPVA was charged with serving as the tribunal responsible for adjudicating the very red light violations which it had already decided had occurred and for which it had issued Notices of Liability under Title 72 § 5(d).

143. Due process is a right guaranteed by Article I, § 6 of the New York State Constitution.

144. Having the same entity which already determined that a traffic infraction occurred and had imposed liability then serve as the adjudicator when the infraction and liability is challenged is the opposite of due process as it eliminates the existence of an impartial tribunal.

145. By denying due process in violation of the New York State Constitution, Title 72 § 5(d) of the Miscellaneous Laws of Nassau County is, and has been since its enactment, unconstitutional.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### Constitutionality of Local Law under the Federal Constitution

146. Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "145"

as though they are fully set forth herein.

147.    Since 2011, Nassau County imposes a fee which, after having undergone a name change, is currently called a "Driver Responsibility Fee."[12] This "Fee," assessed on every red light camera Notice issued in Nassau County, is imposed pursuant to Local Ordinances passed by Nassau County[13] and is to be collected by NCTPVA.[14] The "Fee" is allegedly administrative in nature and its alleged purpose is to cover NCTPVA's administrative costs in processing and adjudicating each matter.

148.    Despite such claims, the Driver Responsibility Fee is unconstitutional as it violates the United States Constitution.

149.    The Driver Responsibility Fee exceeds the actual administrative costs which NCTPVA incurs. As a fee in excess of costs, the Driver Responsibility Fee is not only an illegal tax but also violates the takings clauses of the Fifth Amendment as applicable to the states via the Fourteenth Amendment.

150.    The tax grab nature of the "Fee" is easily seen.

151.    By nature, the administrative costs of processing and adjudicating would be higher for those who receive a hearing than for those who do not. Yet the exact same amount as a Driver Responsibility Fee is charged to, and paid by, The Non-disputing Subclass members – none of whom had hearings – as is charged to, and paid by, The Disputing Subclass members and The Fee Only Subclass members – all of whom had hearings. If

---

[12] All references to the Driver Responsibility Fee incorporate any prior names by which the fee was known.

[13] There are several Ordinances involved since initial enactment of the "Fee." Each subsequently enacted Ordinance increased the amount of the "Fee."

[14] As mentioned earlier and as shall be discussed later, many Notice recipients who pay the monies demanded in the Notices make payment to the corporate defendants. Such payments include the Driver Responsibility Fee. By paying the "Fee" to the corporate defendants, it is not collected by NCTPVA.

this "Fee" were truly an administrative fee intended to cover administrative costs associated with the processing and adjudication of the Notices of Liability, then the amount charged should be different depending on whether or not a hearing was held.

152.    Charging the identical amount as a "Fee" regardless of what the actual administrative costs are while claiming that the "Fee" is to cover those costs only further demonstrates that it is not a cost covering administrative fee but an illegally imposed tax.

153.    In addition, imposition of the Driver Responsibility Fee upon The Non-disputing Subclass members when they did not obtain any "benefit" (such as a hearing) which was received by The Disputing Subclass members and the Fee Only Subclass members essentially equates to yet another violation of the takings clauses.

154.    As such, this Court should declare that the Driver Responsibility Fee and the Local Ordinances which established it, increased it, and enforce it, are, and always have been, unconstitutional.

## AS AND FOR A NINTH CAUSE OF ACTION
### Constitutionality of Local Law under the NYS Constitution

155.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "154" as though they are fully set forth herein.

156.    As stated above, since 2011, pursuant to Local Ordinances, Nassau County has imposed the "Driver Responsibility Fee" on every red light camera Notice issued in the County. The "Fee," as argued above, is allegedly administrative in nature with an alleged purpose of covering NCTPVA's administrative costs in processing and adjudicating each matter.

157.    Despite such claims, the Driver Responsibility Fee is unconstitutional as it violates the New York State Constitution.

158.    The Driver Responsibility Fee exceeds the actual administrative costs which NCTPVA

incurs. As a fee in excess of costs, the Driver Responsibility Fee is an illegal tax and violates the takings clause set forth in Article I, § 7 of the New York State Constitution.

159.    Further, although the administrative costs of processing and adjudicating would be higher for those who receive a hearing than for those who do not, the same amount is charged to all Notice recipients, whether or not they receive a hearing. If this "Fee" were truly administrative and intended to cover administrative costs associated with Notice processing and adjudication, then the amount charged should be different depending on whether or not a hearing was held.

160.    Charging the identical amount as a "Fee" regardless of what the actual administrative costs are while claiming that the "Fee" is to cover those costs further demonstrates that it an illegally imposed tax in disguise.

161.    In addition, by imposing the Driver Responsibility Fee upon The Non-disputing Subclass members who did not obtain any "benefit" (such as a hearing) which was received by both The Disputing Subclass and The Fee Only Subclass members essentially equates to yet another violation of the takings clause of Article I, § 7 of the NYS Constitution.

162.    As such, this Court should declare that the Driver Responsibility Fee and the Local Ordinances which established it, increased it, and enforce it, are, and always have been, unconstitutional under the NYS Constitution.

## AS AND FOR A TENTH CAUSE OF ACTION
### Constitutionality of Local Law under the Federal Constitution

163.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "162" as though they are fully set forth herein.

164.    Since January 2, 2017, Nassau County has imposed a fee called the "Public Safety Fee"

which NCTPVA is to collect.[15] However this fee – imposed by § 8-33.0 of the Nassau County Administrative Code is unconstitutional.

165.   The statute declares that one purpose of the fee is to protect "the "safety and well-being" of the residents and visitors to the County." The statute goes on to state that promoting traffic safety is one of the means by which the Public Safety Fee is intended to accomplish that intent.

166.   Despite its stated purpose, the statute expressly declares that the "Fee" is not imposed upon "tickets issued for infractions of parking laws, ordinances, rules, and regulations."

167.   A significant number of parking laws on both the county and state level, when violated, directly affect traffic safety. Many of these parking laws, when violated, endanger the "safety and well-being" of Nassau County residents and/or visitors.

168.   If the true purpose of the Public Safety Fee is as stated in the statute, it must apply to all matters involving traffic safety.

169.   By not applying equally to all matters involving traffic safety, Nassau County is selectively choosing whom to impose this "Fee" upon. This creates an inequality such that there is a denial of the right to equal protection of law as guaranteed by the Fourteenth Amendment.

170.   Furthermore, the Public Safety Fee is not, in fact, a fee at all but is a tax disguised by being labeled as a fee. The nature of the tax being imposed in a discriminatory manner makes the Public Safety Fee illegal and unconstitutional as it is not applied equally as required by the Fourteenth Amendment to the United States Constitution.

171.   It can also be argued that the mandatory nature of the Public Safety Fee equates to an

---

[15] Again, Notice recipients can pay the monies demanded in the Notices to the corporate defendants, inclusive of the Public Safety Fee. By paying the "Fee" to the corporate defendants, it is not collected by NCTPVA.

illegal taking without just compensation. This renders the "Fee" unconstitutional under the Fifth and Fourteenth Amendments.

172.    As such, this Court should declare the Public Safety Fee and the Local Ordinances which established it, increased it, and enforce it, are, and always have been, unconstitutional.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION**
**Constitutionality of Local Law under the NYS Constitution**

173.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "172" as though they are fully set forth herein.

174.    The Public Safety Fee imposed by Nassau County and to be collected by NCTPVA pursuant to § 8-33.0 of the Nassau County Administrative Code is also unconstitutional under the NYS Constitution.

175.    Despite the stated purpose of the statute being to protect "the safety and well-being of the residents and visitors to the County" including through promotion of traffic safety, the statute expressly declares that there are a variety of traffic safety regulations, rules, and ordinances for which this "Fee" will not be applied even though violation of them would endanger the safety and well-being of residents and/or visitors to Nassau County.

176.    If the true purpose of the Public Safety Fee is as stated in the statute, it must apply to all matters involving traffic safety as such matters all involve protecting the safety and well-being of Nassau County residents and visitors.

177.    By not applying equally to all traffic safety matters, Nassau County selectively chooses whom to impose this "Fee" upon. This creates an inequality which thereby denies the right to equal protection of law as guaranteed by Article I, § 11 of the NYS Constitution.

178.    Furthermore, the Public Safety Fee is nothing more than a tax in disguise, labeled as a fee. As this tax is imposed in a discriminatory, unequal manner, the Public Safety Fee is

illegal and unconstitutional under Article I, § 11 of the NYS Constitution.

179.  It can also be argued that the mandatory nature of the Public Safety Fee is an illegal

taking without just compensation in violation of Article I, § 7 of the NYS Constitution.

180.  As such, this Court should declare the Public Safety Fee and the Local Ordinances which

established it, increased it, and enforce it, are, and always have been, unconstitutional.

### AS AND FOR A TWELFTH CAUSE OF ACTION
### Constitutionality of Local Law under the NYS Constitution

181.  Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "180"

as though they are fully set forth herein.

182.  Section 8-33.0 of the Nassau County Administrative Code as well as all Local

Ordinances which established the amount of the Public Safety Fee are unconstitutional as

they conflict with New York State law and are thus preempted by state law.

183.  The Public Safety Fee is not an administrative fee. The wording of the statute declares

that it is to be collected "in like manner as administration fees." By such comparison and

wording, Nassau County has already conceded that while it is to be collected in the same

manner as administrative fees, the Public Safety Fee is not an administrative fee.

184.  As the Public Safety Fee is not an administrative fee, it must therefore be deemed a fine

or penalty. This is actually supported by the wording of the statute which specifically

states that the Public Safety Fee's purposes include "deterring illegal and reckless

driving." A deterrent is, by nature and definition, a penalty.

185.  In granting Nassau County the authority to utilize red light cameras, the New York State

Legislature expressly established the limits of liability. While NYS does allow each

locality to enact local ordinances to set the amount of the liability imposed in that

locality, VTL § 1111-b(e) specifically declared that the maximum liability that can be

imposed for red light camera traffic violations is fifty dollars. ($50)[16]

186.    After receiving permission to utilize a red light camera program, Nassau County passed a local law to create the County's red light camera program. In crafting the law, Nassau County opted to set the liability for a red light camera infraction at fifty dollars ($50) – the state allowed maximum.

187.    Since 2017, by imposing a "Public Safety Fee" which is described in its enacting statute as a deterrent, Nassau County has been illegally imposing penalties above the maximum penalty allowed by state law.

188.    As the local laws and ordinances enacting and imposing the Public Safety Fee conflict with the NYS statute, conflict prevention renders the local laws and ordinances unconstitutional.

189.    As the New York State Legislature chose to declare the maximum penalties for red light camera violations and makes no allowances for any additional fees or surcharges (except for a late fee), the State Legislature has chosen to occupy the regulatory area. Therefore the Public Safety Fee is also unconstitutional under the doctrine of field preemption.

190.    For the foregoing reasons, this Court should declare that § 8-33.0 of the Nassau County Administrative Code as well as all Local Ordinances which established the amount of the Public Safety Fee are, and have always been, unconstitutional.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION**
**FRAUD**
*As to defendants Nassau County, NCTPVA, Verra Mobility and ATS*
*on behalf of The Ticketed Class*

191.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "190"

---

[16] The statute does allow for an additional twenty-five dollar ($25) fee for failing to respond to the issued Notice of Liability within the time period for doing so.

as though they are fully set forth herein.

192.    The established parameters of state law prohibit NCTPVA from issuing any ticket, summons, or Notice of Liability of any kind, including for violations of any traffic or parking laws. As a government agency, NCTPVA knows, should know, and is expected to know, the limits of its legal authority.

193.    Nassau County also knows, and has reason to know, that pursuant to state law, NCTPVA lacks legal authority to issue any tickets, summonses, or Notices of Liability.

194.    Further, Nassau County knows, and has reason to know, that when creating NCTPVA in 1990, the Nassau County Legislature, in compliance with the parameters set by the New York State Legislature, expressly omitted granting NCTPVA authorization to issue any ticket, summons, or Notice of Liability for violations of any traffic or parking laws.

195.    Nassau County also knows, and has reason to know, that any express or implied authority for issuing tickets, summonses, or Notices of Liability that the County Legislature may have granted to NCTPVA since 1990 was invalid, void, and illegal as such authority conflicted with the established laws of Nassau County and was beyond the limits of the authority expressly set for NCTPVA by the New York State Legislature.

196.    NCTPVA is not authorized – by state or county law – to arrange for, enter into any type of contract regarding, or have any involvement whatsoever with the installation of, operation of, or maintenance of red light cameras.

197.    As a government entity, NCTPVA knows, should know, and is expected know the legal authority it has, the legal authority it lacks, what its responsibilities are, and what its responsibilities are not. NCTPVA therefore knows, should know, and is expected to know that it had no responsibility for, and no legal authority to enter into, contracts for

the installation of, operation of, or maintenance of red light cameras.

198.    Nassau County knows, should know, and is expected to know state laws as well as its own county law. As such, Nassau County knows, should know, and is expected to know that pursuant to both state and county laws, NCTPVA had no legal authority to arrange for, enter into any type of contract regarding, or have any involvement whatsoever with the installation, operation, or maintenance of, red light cameras.

199.    Nassau County knows, should know, and is expected to know, that pursuant to its own laws, only the Nassau County Department of Public Works was legally authorized to install and operate red light cameras. Additionally, Nassau County knows, should know, and is expected to know that pursuant to its own laws the Nassau County Department of Public Works was not legally authorized to pass those responsibilities on to any other government agency or entity and was not legally authorized to enter into any contracts with private third party entities whereby such other entities would install and/or operate red light cameras.

200.    Verra Mobility and ATS have a responsibility to ensure that they are entering into legal contracts. They should exercise due diligence and ensure that any party with whom they are entering into contracts is legally authorized to enter into such contracts.

201.    Despite knowing, and having reason to know, that it lacked any legal authority, NCTPVA none-the-less entered into contracts with the corporate defendants whereby the corporate defendants would install, operate, and maintain the red light cameras in Nassau County.

202.    As Nassau County and NCTPVA knew, should have known, and are expected to know, that NCTPVA was not authorized to enter into contracts with third party private entities for the installation, operation, and maintenance of red light cameras, those contracts were

unauthorized and illegal.

203. As the contracts were unauthorized and illegal, any attempts by Nassau County and/or NCTPVA to utilize the red light cameras installed and operated pursuant to those contracts as a means (or basis) of obtaining monies is illegal.

204. Based on the illegally entered into contracts, the illegally installed and operated red light cameras, and manual review of the photographs and video recordings illegally made by those cameras, Notices of Liability were mailed to plaintiff and all members of The Ticketed Class. The purpose of these Notices was to induce plaintiff and all members of The Ticketed Class to pay monies that Nassau County, NCTPVA, Verra Mobility, and ATS were not entitled to under law.

205. The cameras were illegally installed and illegally operated. The Notices bear the name and County Seal of Nassau County and the name of NCTPVA to imply that such cameras were legal, installed legally, and operated legally. This is a clear and intentional concealment of, and misrepresentation of, multiple material facts.

206. Additionally, as stated earlier, per the parameters set forth by the NYS Legislature, NCTPVA does not have legal authority to issue Notices of Liability for traffic violations – including red light violations as captured by the red light cameras. The illegality of the issued Notices is a material fact.

207. The lack of NCTPVA's authority is not contained anywhere on the Notices issued to plaintiff and all members of The Ticketed Class. Thus the Notices were intentionally crafted and designed in such a way as to intentionally misrepresent their legality and to intentionally conceal that these Notices were unauthorized and illegal.

208. The entire purpose of issuing the Notices of Liability was financial. Monies obtained as a

result of the issued Notices filled the coffers of Nassau County, NCTPVA, Verra Mobility, and ATS.

209. As all of these defendants knew, should have known, and were expected to know, (1) that the cameras were illegally installed and illegally operated and (2) that the issued Notices of Liability were unauthorized by law, these defendants intended to utilize the cameras and the Notices to defraud plaintiff and all members of The Ticketed Class.

210. That they intentionally misrepresented and concealed material facts in the process only further evidences their intent to defraud.

211. The intent to defraud is further demonstrated by the use of Nassau County's name and County Seal (and implied power) and NCTPVA's name (and implied power) as part of a design to imply that the actions taken by Nassau County, NCTPVA, Verra Mobility, and ATS were legal and backed by the weight and power of Nassau County's government.

212. By taking illegal and unauthorized actions and by knowingly and intentionally misrepresenting and concealing material facts, Nassau County, NCTPVA, Verra Mobility, and ATS conspired together to design and perpetuate fraud upon plaintiff and the members of The Ticketed Class.

213. As such, Nassau County, NCTPVA, Verra Mobility, and ATS are liable to plaintiff and all members of The Ticketed Class for equitable fraud.

### AS AND FOR A FOURTEENTH CAUSE OF ACTION
### FRAUD
*As to defendants Nassau County, NCTPVA, Verra Mobility, and ATS*
*on behalf of The Paying Class*

214. Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "213" as though they are fully set forth herein.

215. All members of The Non-disputing Subclass made full payment on the red light camera

[36]

Notices issued to them without requesting a hearing. The members of The Disputing Subclass made full payment on the Notices issued to them after requesting and receiving a hearing at which liability was upheld. The members of The Fee Only Subclass had disputed the Notices issued to them, requested a hearing, had their Notices dismissed, but were still held liable for paying the additional "Fees" imposed by Nassau County.

216.    The liability imposed – whether inclusive of a penalty for the violation (pre-imposition of additional "Fees") or the penalty plus the additional "Fees" (after their imposition) or just the "Fees" – flowed directly from the taking of photographs and video by a red light camera installed and operated within Nassau County.

217.    The Notices are issued in the name of Nassau County and NCTPVA.

218.    The Notices issued for red light camera violations in Nassau County contain copies of the photographs, provide a website address at which the video can be viewed, and indicate that the photographs and video were taken by the camera.

219.    By indicating that the camera took the photos and video, and the Notice is jointly issued by Nassau County and NCTPVA, the Notices, at the very least, imply that the cameras are legal, are operated by Nassau County and NCTPVA, and that the photographs and video were legally taken.

220.    Despite those implications, none of the red light cameras are legal.

221.    As indicated earlier, the state legislature gave express authority for installation and operation of red light cameras to Nassau County. Nothing in the VTL gave express or implied authority for any other entity to install or operate the cameras nor did the statute expressly or impliedly authorize Nassau County to "farm out," or enter into any contract with, any other entity whereby such entity would install or operate the red light cameras.

[37]

222.    Additionally, when Nassau County enacted its own legislation regarding the red light cameras, it expressly authorized the Department of Public Works to install and operate the cameras. Nothing in Nassau County's statutes gave express or implied authority for any other entity to install or operate the cameras nor did the statute expressly or impliedly authorize the Department of Public Works to "farm out," or enter into any contract with, any other entity whereby such entity would install the red light cameras.

223.    As Nassau County's statutes specifically and expressly authorized only the Department of Public Works to install and operate the cameras, there was no express or implied authority given to NCTPVA to install or operate the cameras nor any express or implied authority for NCTPVA to contract with any entity whereby such contracted with entity would install or operate the red light cameras.

224.    Nassau County and NCTVPA knew, and had reason to know, the authorizations contained in the state and local statutes.

225.    Nassau County intentionally and/or negligently chose to ignore its own laws by allowing NCTPVA to exceed its state and county statutory authority by (1) taking on a responsibility which was statutorily imposed on a different government entity; (2) entering into statutorily unauthorized contracts with the corporate defendants for installation and operation of the cameras; and (3) issuing the Notices.

226.    As the contracts entered into were statutorily unauthorized, they were illegal. Thus, the cameras were illegal and anything obtained from them used for establishing red light violations and liability was fruit of the poisonous tree.

227.    As the cameras were installed and operated in an unauthorized manner, for a second reason the cameras were illegal and anything obtained from them used for establishing

red light violations and liability was fruit of the poisonous tree.

228.    Nassau County and NCTPVA knew, and had reason to know, that the cameras were statutorily illegal and that nothing obtained from them was legal or legally obtained.

229.    Citing to the camera, and to the photographs and the video taken by the camera, on each and every Notice so as to imply to Notice recipients that the cameras were legal, legally installed, and legally operated and that the photographs and videos were legally taken and are legally obtained "evidence," constitutes multiple misrepresentations of facts.

230.    By means of the due diligence which should have been exercised by the corporate defendants, Verra Mobility and ATS knew, and should have known, they were entering into illegal contracts as (1) NCTPVA had no authorization to enter into any type of contract regarding installation or operation of red light cameras and (2) nothing in the state or county enabling statutes authorized any private entity to contract for installing and/or operating, such cameras. Yet they still chose to enter into those contracts.[17]

231.    Verra Mobility and ATS were contractually responsible for printing the Notices. The Notices bear the name and County Seal of Nassau County and the name of NCTPVA. Nowhere on the Notices do the names of the corporate defendants appear nor do the Notices indicate that the corporate defendants – not Nassau County or NCTPVA – were the actual entities that installed and operated the cameras.

232.    One purpose of making the knowingly false implications and the concealing of material

---

[17] As shall be discussed in subsequent causes of action, even if the corporate defendants were allowed to install and operate the cameras, they could not operate them without having a specific NYS issued license. Neither Verra Mobility nor ATS had, or ever had, that license and both knew, and had reason, to know this fact. Nassau County and NCTPVA also knew, and had reason to know this fact. By entering into the contracts anyway, Nassau County, NCTPVA, Verra Mobility, and ATS only further demonstrated (1) that they were acting illegally; (2) that they were intentionally entering into illegal contracts; (3) that the cameras and therefore any photographs and video recordings made by the cameras were illegal; and (4) that they intended to use those illegal actions, cameras, photographs, and videos to commit fraud.

facts in the Notices was to imply to Notice recipients (1) that the cameras were legal, legally installed, and legally operated; (2) that the Notices were legal and legally issued; (3) that the camera-based evidence used against them was legal and legally obtained; and (4) that the financial liability was legally imposed.

233. A second purpose of making knowingly false implications and the concealing of material facts was financial so as to induce Notice recipients to pay the monies demanded.

234. As indicated earlier, millions of Notices have been issued in Nassau County. Each Notice contained the knowingly false implications of fact and each was identical in purpose.

235. The members of The Non-disputing Subclass chose not to challenge the Notice(s) they received and simply paid the monies demanded. Those individuals and entities justifiably relied on the untruthful, yet implied facts of the Notices thereby relying upon the implied legality of the cameras, their installation, their operation, and the photographs and videos taken by them, and the implied legality of the Notices. This justifiable reliance was not only foreseeable by Nassau County, NCTPVA, Verra Mobility, and ATS but was intended by these defendants. As a result of this reliance, The Non-disputing Subclass members were injured as they suffered actual financial loss.

236. A third purpose of making knowingly false implications and concealing material facts was also financial.

237. The members of The Disputing Subclass challenged the Notices they received and received hearings. Throughout the hearing process they justifiably relied upon the misrepresentations and untruthful implications of the Notices which implied legality of the cameras, their installation, their operation, and the photographs and videos taken by them, as well as on the implied legality of the Notices themselves.

[40]

238. However, to the misfortune of the Disputing Subclass members, the misrepresentations of fact were also relied upon by the prosecuting attorneys employed by, Nassau County and NCTPVA who represented them at hearings and who moved for, and submitted the photographs and video recordings into evidence.

239. To the further misfortune of the Disputing Subclass members, the Nassau County and NCTPVA employed judicial hearing officers also relied on the misrepresentations, allowed the photographs and video recordings into evidence, and then relied upon them as the basis for ruling against the Subclass members.

240. As a consequence of those rulings, the Disputing Subclass members suffered actual financial injury as they were forced to pay the monies demanded in the Notices.

241. The Disputing Subclass members' justifiable reliance on these misrepresentations – as well as the justifiable reliance on them by both the prosecuting attorneys and the judicial hearing officers – was not only foreseeable by Nassau County, NCTPVA, Verra Mobility, and ATS but was intended by these defendants.

242. The Fee Only Subclass members also suffered financial injury as a result of their justifiable reliance on the misrepresentations and untruthful implications of the Notices. Their reliance led them to believe in the legality of the cameras, their installation and operation, the photographs, the video recordings, and the Notices.

243. The members of The Fee Only Subclass had each requested a hearing. Although their Notices were dismissed and they were not required to pay the penalty for the red light violation, the members of this Subclass were still required to pay, and paid, the "Fees" additionally imposed by Nassau County.

244. The Fee Only Subclass members' justifiable reliance upon the misrepresentations and

implied facts contained in the Notices were not only foreseeable by Nassau County, NCTPVA, Verra Mobility, and ATS but were intended by these defendants.

245.    The Fee Only Subclass members' justifiable reliance upon the legality of the cameras, photographs, video recordings, Notices, and the expectation of no financial liability for dismissed Notices were not only foreseeable by Nassau County and NCTPVA but were intended by the defendants.

246.    Nassau County, NCTPVA, Verra Mobility, and ATS knew, should have known, and were expected to know (1) that the contracts for the installation, operation, and maintenance of the cameras were statutorily illegal and unauthorized; (2) that the cameras were illegally installed; (3) that the cameras were illegally operated; (4) that the issued Notices of Liability were unauthorized by law; and (5) that the members of The Paying Class would justifiably rely on the government operating in a legal fashion and rely upon the facts – both misrepresented and implied – contained in the Notices.

247.    Nassau County, NCTPVA, Verra Mobility, and ATS intended to utilize the cameras and the Notices of Liability as a means of committing fraud. They committed illegal acts and unauthorized acts, and then took additional actions which intentionally misrepresented material facts and concealed material facts from plaintiff and all other members of The Paying Class. These defendants knew, and had reason to know, that the members of The Paying Class would justifiably rely upon those misrepresentations and implications (and that the Nassau County and NCTPVA employed prosecuting attorneys and judicial hearing officers would also justifiably rely upon them) and used that foreseeable reliance as a means to financially damage the members of The Paying Class.

248.    The defendants shared the monies received as a result of the fraud committed through

their misrepresentation of material facts. Upon information and belief, Nassau County (and by extension, NCTPVA) received sixty-five percent (65%) of the monies paid as the statutory penalty for the traffic infraction and thirty-five percent (35%) was received by the corporate defendants. However, the Driver Responsibility Fee and Public Safety Fee monies were not shared, going solely to Nassau County's coffers.

249.  As a result of successfully committing fraud, Nassau County, NCTPVA, Verra Mobility, and ATS are liable to plaintiff and all members of The Paying Class.

**AS AND FOR A FIFTEENTH CAUSE OF ACTION**
**INVASION OF PRIVACY**
*As to defendants Nassau County and NCTPVA on behalf of The Ticketed Class*

250.  Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "249" as though they are fully set forth herein.

251.  Even assuming that the statutes authorizing installation and operation of the red light cameras are ruled to be constitutional, the manner in which the cameras were installed and have been operated is none-the-less illegal. By nature, any action flowing from use of those cameras is predicated upon that illegality.

252.  NCTPVA, on behalf of itself and Nassau County, entered into multiple contracts with the corporate defendants whereby Nassau County and NCTPVA would rent the red light cameras to be used in Nassau County from the corporate defendants and the corporate defendants would also install, operate, and maintain the cameras.

253.  In entering the contracts, Verra Mobility and ATS held themselves out as having all the qualifications necessary for performing the contracted for services.

254.  Prior to entering the contracts, Nassau County and NCTPVA were required to ensure that the corporate defendants maintained all necessary authorizations and licenses to perform

the services contracted for.

255. Nassau County and NCTPVA, at the very least, failed to ensure that the corporate defendants were qualified to perform the contracted for services.

256. At the same time, Verra Mobility and ATS intentionally and/or negligently withheld the fact that they were not qualified to enter into those contracts.

257. The purpose of the cameras was two-fold. One purpose was to obtain information about violation of red light laws in Nassau County. The violations constitute wrongs done against the County of Nassau.

258. A second purpose of the cameras was to "secure" evidence of those wrongdoings by photographing and video recording the violations. The photographs and video recordings would serve as the basis for the issuance of the Notices of Liability and, when Notices were disputed, would also serve as evidence at the hearings.

259. By means of the contracts for operation of the red light cameras, Verra Mobility and ATS were contracted to obtain and secure evidence of wrongs that were committed against Nassau County in violation of Nassau County and NYS statutes.

260. Prior to entering into those contracts, Nassau County and NCTPVA knew that they would use the photographs and video recordings taken by the red light cameras as evidence at hearings requested by Notice recipients. Therefore they intentionally contracted with Verra Mobility and ATS whereby the corporate defendants, for a fee, would operate the red light cameras and thus take the photographs and video recordings.

261. By contracting for operation of the cameras whereby they would take the photographs and video recordings, Verra Mobility and ATS were hired to secure evidence to be used at the hearings.

262. Pursuant to New York State law, any person or entity hired to obtain evidence of a crime committed against the state (which includes NYS and/or any political subdivision such as Nassau County) is required to hold a private investigator license issued by the New York State Department of State.

263. Pursuant to New York State law, any person or entity hired to secure evidence to be used at civil or criminal trials is required to hold a private investigator license issued by the New York State Department of State.

264. In order to perform the services contracted for, Verra Mobility and ATS were required to hold a private investigator license issued by the New York State Department of State.

265. Despite being required to do so, neither Verra Mobility nor ATS have, nor ever had, a private investigator license issued by the New York State Department of State.

266. By not having, and never having had, such a license, neither corporate defendant could legally perform the camera operation services they contracted to provide.

267. As the corporate defendants could not legally perform the services they contracted to provide, the contracts are illegal.

268. As the contracts are illegal and the corporate defendants could not legally perform the services they provided, the operation of the red light cameras was illegal, and all photographs and video recordings taken by those cameras were illegal.

269. By acting as private investigators in NYS without having the requisite license, Verra Mobility and ATS committed a class B misdemeanor of acting as unlicensed private investigators. Said misdemeanor was repeated each and every time these defendants took a photograph or made a video recording via a red light camera in Nassau County.

270. The illegally taken photographs and video recordings were used by Nassau County and

NCTPVA as the basis and justification for issuing the Notices of Liability.

271.  To issue the Notices of Liability, Nassau County and NCTPVA needed to obtain the ownership information regarding each vehicle to which a Notice was to be issued.

272.  The only entity to have the ownership information is the Department of Motor Vehicles ("DMV") of the state in which a vehicle has been registered.

273.  Upon information and belief, Nassau County and NCTPVA – using the license plate and state of registration information from the illegally taken photographs and video recordings – used their authority under 18 U.S.C. § 2721(b) to obtain the confidential information regarding the identity and contact information for the owner of every vehicle to which a Notice was to be issued.

274.  However, the red light cameras were illegal as they were unconstitutional, the cameras were illegally installed and operated, the contracts were illegal as the corporate defendants were not NYS licensed private investigators, and the photographs and video recordings were illegally taken and thus illegal fruit of the poisonous tree.

275.  By nature of their illegality, the photographs and video recordings could not legally serve as a basis for issuing Notices of Liability.

276.  As the Notices could not legally be issued, Nassau County and NCTPVA could not legally obtain ownership information from the DMV of any state.

277.  By using the photographs and video recordings as the predicate upon which they obtained the ownership information so as to issue illegal Notices, pursuant to 18 U.S.C. § 2721(b), Nassau County and NCTPVA did not have a permissible purpose for obtaining the confidential ownership information.

278.  By using the illegally obtained photographs and video recordings as the basis upon which

they obtained the ownership information in order to issue the illegal, unauthorized

Notices, Nassau County and NCTPVA procured confidential information for unlawful

purposes in violation of 18 U.S.C. § 2722(a).

279.    In order to obtain the confidential information, Nassau County and NCTPVA had to have

made false representations in violation of 18 U.S.C. § 2722(b).

280.    For these violations, under 18 U.S.C. § 2724(b)(1) Nassau County and NCTPVA are

liable to each member of the Ticketed Class for invasion of privacy.

281.    For these violations, Nassau County and NCTPVA are also liable to the Ticketed Class

for reasonable attorneys' fees under 18 U.S.C. § 2724(b)(3) and for additional equitable

relief under § 2724(b)(4).

282.    Nassau County and NCTPVA intentionally and willfully chose to ignore NYS law and

further ignored both state and county law by entering into multiple unauthorized contracts

with Verra Mobility and ATS pursuant to which the corporate defendants were contracted

to regularly and repeatedly commit criminal misdemeanors – culminating in Nassau

County and NCTPVA illegally obtaining the confidential information regarding vehicle

ownership and contact information for each member of The Ticketed Class. As such,

Nassau County and NCTPVA are also liable to the Ticketed Class members for punitive

damages under 18 U.S.C. § 2724(b).

**AS AND FOR A SIXTEENTH CAUSE OF ACTION**
**INVASION OF PRIVACY**
*As to defendants Verra Mobility and ATS on behalf of The Ticketed Class*

283.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "282"

as though they are fully set forth herein.

284.    Even assuming that the enabling statutes are found constitutional as stated above, (1) the

[47]

cameras are illegal as they have been installed, and are operated, in a statutorily

unauthorized manner by unauthorized private corporate entities; (2) the contracts are

illegal for lack of statutory authorization of NCTPVA to enter into such contracts; and (3)

the contracts are also illegal because the corporate defendants lack the license statutorily

required by them in order to perform their part of the contracts thus the contract terms

require the corporate defendants to regularly and repeatedly commit criminal acts.

285.    As further stated above, the illegally taken photographs and video recordings from the

illegally installed and illegally operated cameras were used by Nassau County and

NCTPVA to issue the Notices of Liability.

286.    In order to issue the Notices, Nassau County and NCTPVA needed to obtain the

ownership information regarding each vehicle to which a Notice was to be issued.

287.    The only entity to have the ownership information is the DMV of the state in which a

vehicle has been registered.

288.    Upon information and belief, the contracts called for that ownership/registration

information to be obtained by the corporate defendants.

289.    As the cameras are illegally installed and operated and the contracts for their installation

and operation are also illegal, neither the cameras, nor the photographs or video

recordings taken by them, nor the contracts, can serve as the legal basis upon which

Verra Mobility or ATS could take subsequent actions.

290.    Neither Verra Mobility nor ATS thus had any legal basis for obtaining vehicle ownership

information from any state Motor Vehicle Department in regards to camera based red

light violations in Nassau County.

291.    By not having a legal basis for obtaining that information, under 18 U.S.C. § 2721(b),

neither Verra Mobility nor ATS had a permissible use for obtaining that information.

292.    By not having a permissible purpose or use, in violation of 18 U.S.C. § 2721(b), Verra
Mobility and ATS illegally obtained the identity and contact information for the owner of
every vehicle to which red light camera based Notices were issued in Nassau County.

293.    By not having a permissible purpose or use, Verra Mobility and ATS procured
confidential information for unlawful purposes in violation of 18 U.S.C. § 2722(a).

294.    By using the illegal photographs and video recordings as the basis for implying a
permissible use so as to obtain the confidential ownership information, Verra Mobility
and ATS had to have made false representations in violation of 18 U.S.C. § 2722(b).

295.    For these violations, pursuant to 18 U.S.C. § 2724(b)(1), Verra Mobility and ATS are
liable to each member of the Ticketed Class for invasion of privacy.

296.    As the corporate defendants intentionally and willfully chose to ignore NYS law, entered
into multiple contracts without having the statutorily required license to perform their
duties under those contracts, without having such license thereby contracted to regularly
and repeatedly commit criminal misdemeanors, and contracted to take further illegal
actions predicated upon those criminal actions – culminating in their illegally obtaining
the confidential vehicle ownership and contact information for each member of The
Ticketed Class – Verra Mobility and ATS are also liable to the Ticketed Class members
for punitive damages under 18 U.S.C. § 2724(b).

297.    For these violations, Verra Mobility and ATS are also liable to the Ticketed Class for
reasonable attorneys' fees under 18 U.S.C. § 2724(b)(3) and for additional equitable
relief under § 2724(b)(4).

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### *As to defendants Nassau County and NCTPVA on behalf of The Paying Class*

298.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "297" as though they are fully set forth herein.

299.    As stated above, the red light cameras installed and operated in Nassau County are illegal as the state and county statutes under which they were authorized were unconstitutional under both the U.S. and NYS Constitutions.

300.    As further stated above, even if the enabling statutes are deemed constitutional, the red light cameras installed and operated in Nassau County remain illegal as they are not installed or operated in compliance with the state and county statutes.

301.    Nassau County and NCTPVA knew, and had reason to know, that in order to be legal the red light cameras in Nassau County must be installed and operated in compliance with state and county statutes.

302.    Nassau County and NCTPVA knew, and had reason to know, that use of the red light cameras in Nassau County would result in their issuing Notices of Liability.

303.    Nassau County and NCTPVA also knew, and had reason to know, that issuance of such Notices would result in their receiving millions of dollars from Notice recipients.

304.    Nassau County and NCTPVA knew, and had reason to know, that the corporate defendants were not qualified to operate the red light cameras in Nassau County as neither possessed a private investigator license issued by the NYS Department of State.

305.    Nassau County and NCTPVA none-the-less knowingly, willingly, and intentionally entered into multiple contracts with Verra Mobility and ATS pursuant to which the corporate defendants would illegally install and illegally operate the red light cameras in

Nassau County.

306.  Nassau County and NCTPVA used their illegal actions to illegally obtain monies from The Paying Class.

307.  Nassau County and NCTPVA were unjustly enriched by receipt of those monies to which they were not entitled and that unjust enrichment was to the financial detriment of the members of The Paying Class.

308.  It can also be argued that by knowing, and having reason to know, that they were contracting with the corporate defendants for the performance of illegal acts (including contracting for the repeated commission of misdemeanors by the corporate defendants), Nassau County and NCTPVA conspired with the corporate defendants for purposes of unjustly enriching themselves.

309.  For their actions which resulted in their being unjustly enriched, Nassau County and NCTPVA are liable to The Paying Class for that unjust enrichment.

## AS AND FOR AN EIGHTEENTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### *As to defendants Verra Mobility and ATS on behalf of The Paying Class*

310.  Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "309" as though they are fully set forth herein.

311.  Verra Mobility and ATS knew, and had reason to know, that NYS law required them to have a private investigator license issued by the NYS Department of State in order to perform what was required of them by the terms of the contracts they entered into with Nassau County and NCTPVA.

312.  Verra Mobility and ATS knew, and had reason to know that neither had, nor ever had, a private investigator license issued by the NYS Department of State.

313.    Despite knowing, and having reason to know, the license requirements and their lack of having such license, the corporate defendants none-the-less entered into contracts with Nassau County and NCTPVA without having the requisite license.

314.    Despite knowing, and having reason to know, the license requirements, the corporate defendants none-the-less illegally performed the contracted for services.

315.    When entering into each of those contracts, Verra Mobility and ATS knew, and had reason to know, that the illegal and criminal actions they would take under the terms of those contracts would result in financial injury to the members of The Paying Class.

316.    Despite knowing, and having reason to know, that they were acting illegally and criminally, as well as knowing, and having reason to know, that their actions would result in financial injury to The Paying Class, Verra Mobility and ATS none-the-less accepted, and continue to accept, payment from Nassau County and NCTPVA for performance of their illegal acts.

317.    The payments received by Verra Mobility and ATS for their performance of illegal acts (including repeated commission of misdemeanors) were to their financial benefit.

318.    By knowing, and having reason to know, that they were contracting with Nassau County and NCTPVA for performance of illegal and criminal actions and knowing, and having reason to know, that such actions would financially benefit themselves while simultaneously financially injuring the members of The Paying Class, it can also be argued that the corporate defendants conspired with Nassau County and NCTPVA for purposes of unjustly enriching themselves.

319.    It is against good conscience to allow the corporate defendants to commit criminal acts to financially benefit themselves when they knew, and had reason to know, that those

actions would be to the financial detriment of The Paying Class. Verra Mobility and ATS have unjustly enriched themselves at the expense of The Paying Class members and should be held liable to The Paying Class for that unjust enrichment.

## AS AND FOR A NINETEENTH CAUSE OF ACTION
## FEDERAL DUE PROCESS
### As to defendants Nassau County and NCTPVA on behalf of The Disputing Subclass

320.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "319" as though they are fully set forth herein.

321.    All members of The Disputing Subclass disputed the Notices sent to them for red light violations in Nassau County.

322.    Anyone who disputed such Notices received a hearing. These hearings are deemed by the courts to constitute civil trials.

323.    At each hearing, evidence against the Notice recipient included the photographs taken by the red light camera and the video recording made by the red light camera.

324.    If, as argued earlier, the enabling statutes authorizing the red light cameras in Nassau County are deemed unconstitutional thereby making the cameras and their use illegal, all photographs and video recordings made by those cameras constitute fruit of the poisonous tree which could not be legally used as evidence.

325.    Even if the enabling statutes are deemed constitutional, as argued earlier, (1) the cameras are illegal as they were not installed in compliance with state or county statutes; (2) the cameras are illegal as they are not operated in compliance with state or county statutes; (3) the contracts under which the cameras were installed and operated are illegal for lack of authorization by NCTPVA to enter into such contracts; (4) as neither corporate defendant has, or ever had, a private investigator license issued by the NYS Department

of State, the terms of the contracts under which the corporate defendants operated the cameras required them to perform illegal, criminal acts; and (5) the corporate defendants did perform those illegal, criminal acts. As a consequence, all photographs and video recordings made by those cameras constitute illegal fruit of a poisonous tree, were illegally and criminally obtained, and therefore could not be legally used as evidence.

326.    Despite the photos and video recordings made by such cameras being illegally taken, illegally obtained, and thereby inadmissible, at every red light camera Notice dispute hearing held in Nassau County, Nassau County and NCTPVA – through the prosecuting attorney employed by them and appearing at the hearing on their behalf – moved for, and did submit, the photographs and video recordings taken by the cameras as evidence.

327.    Despite the submitted photographs and video recordings being illegally taken, illegally obtained, and thereby inadmissible, the Nassau County and NCTPVA employed judicial hearing officers presiding over the hearings allowed the photographs and video recordings into evidence.

328.    Based upon that evidence, the judicial hearing officers rendered rulings against the members of The Disputing Subclass.

329.    Due process provisions include only allowing admission of legally obtained evidence.

330.    Presenting evidence that is not only illegally taken but which was also illegally obtained violates the due process guarantee of the Fourteenth Amendment.

331.    Allowing the submission of evidence that was illegal as well as illegally obtained violates the due process guarantee of the Fourteenth Amendment.

332.    Rendering a judicial decision predicated upon illegal, unlawfully obtained, and inadmissible evidence violates the due process guarantee of the Fourteenth Amendment.

[54]

333.    As the photographs and video recordings taken by the red light cameras in Nassau County were illegal and unlawfully obtained, Nassau County and NCTPVA violated the Fourteenth Amendment rights of The Disputing Subclass by having their attorney move for, and submit, the photographs and video recordings into evidence at the hearings.

334.    Nassau County and NCTPVA again violated the Fourteenth Amendment rights of The Disputing Subclass by having the judicial hearing officers employed by them allow submission of the photographs and video recordings into evidence at the hearings.

335.    Nassau County and NCTPVA again violated the Fourteenth Amendment rights of the members of The Disputing Subclass when the presiding judicial hearing officers rendered decisions against the Subclass members predicated upon the illegally taken, illegally obtained, and illegally submitted evidence.

336.    As a direct consequence of the submission of, admission into evidence of, and rendering of adverse rulings predicated upon, the illegally taken and illegally obtained photographs and video recordings, each member of The Disputing Subclass suffered actual financial injury by being forced to pay the amount demanded in the Notices received by them.

337.    Having violated the Fourteenth Amendment rights of The Disputing Subclass and by causing the Subclass members to suffer actual injury as a result of those violations, Nassau County and NCTPVA are liable to the members of The Disputing Subclass.

338.    In addition, the submission of the illegal and unlawfully obtained evidence at these hearings is not merely a random act. Rather it is official policy and procedure of Nassau County and NCTPVA. As such, official policy of Nassau County and NCTPVA is to knowingly and intentionally deprive all members of The Disputing Subclass of their federal due process rights.

[55]

339.    Further, allowing the illegally taken and illegally obtained photographs and video recordings into evidence and then relying on that "evidence" as the basis for rendering decisions against The Disputing Subclass members are not random acts. Rather these acts are also official policy and procedure of Nassau County and NCTPVA. As such, official policy of Nassau County and NCTPVA is to knowingly and intentionally deprive The Disputing Subclass members of their federal due process rights in a second manner.

340.    As deprivation of these federal due process rights was pursuant to official policy and procedure of Nassau County and NCTPVA, such deprivation was done under color of law. Nassau County and NCTPVA are therefore also liable to The Disputing Subclass members for violation of 42 U.S.C. § 1983.

341.    In addition, for actions taken under color of law as official policy, pursuant to 42 U.S.C. § 1988, Nassau County and NCTPVA are also liable to the members of The Disputing Subclass for attorneys' fees.

**AS AND FOR A TWENTIETH CAUSE OF ACTION**
**STATE DUE PROCESS**
*As to defendants Nassau County and NCTPVA on behalf of The Disputing Subclass*

342.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "341" as though they are fully set forth herein.

343.    Article I, § 6 of the New York State Constitution guarantees the right to due process.

344.    The provisions of due process include only allowing admission of legal, and legally obtained, evidence.

345.    Presenting illegal evidence that was illegally obtained violates the due process guarantee contained in the NYS Constitution.

346.    Allowing the submission of illegal and unlawfully obtained evidence violates the due

process guarantee of Article I, § 6 of the NYS Constitution.

347.   Rendering a judicial decision predicated upon illegal and unlawfully obtained evidence violates the due process guarantee of Article I, § 6 of the NYS Constitution.

348.   As argued above, the photographs and video recordings taken by the red light cameras in Nassau County were illegally taken and illegally obtained. By their prosecuting attorney moving for, and submitting, the photographs and video recordings at the hearings, Nassau County and NCTPVA violated the due process rights guaranteed to The Disputing Subclass members by the NYS Constitution.

349.   By the Nassau County and NCTPVA employed judicial hearing officers allowing submission of the photographs and video recordings into evidence at the hearings, Nassau County and NCTPVA again violated the due process rights which the members of The Disputing Subclass were guaranteed by the NYS Constitution.

350.   By rendering decisions against the Subclass members predicated upon the illegally taken, illegally obtained, and illegally submitted evidence, Nassau County and NCTPVA further violated the due process rights guaranteed to the members of The Disputing Subclass by the NYS Constitution.

351.   As a direct consequence of these due process violations, the members of The Disputing Subclass suffered actual financial injury by being forced to pay the amount demanded in the Notices received by them.

352.   Having violated rights guaranteed to the members of The Disputing Subclass by Article I, § 6 of the NYS Constitution and causing them injury as a result of those violations, Nassau County and NCTPVA are liable to the members of The Disputing Subclass.

353.   Submission of the illegally taken and illegally obtained evidence at these hearings is not

merely a random act. Rather it is official policy and procedure of Nassau County and NCTPVA. As such, official policy of Nassau County and NCTPVA is to knowingly and intentionally deprive The Disputing Subclass members of the due process rights guaranteed to them by the NYS Constitution.

354.   Further, allowing the illegal and unlawfully obtained evidence into evidence and then relying upon that "evidence" as the basis for rendering decisions against the members of The Disputing Subclass are not random acts. Rather they are official policy and procedure of Nassau County and NCTPVA. As such, official policy of Nassau County and NCTPVA is to again knowingly and intentionally deprive all Disputing Subclass members of the due process rights guaranteed by Article I, § 6 of the NYS Constitution.

355.   As the deprivation of the state due process rights of the members of The Disputing Subclass was pursuant to official policy and procedure of Nassau County and NCTPVA, such deprivation was done under color of law and Nassau County and NCTPVA are therefore also liable to the Subclass members for violation of 42 U.S.C. § 1983.

356.   In addition, for actions taken under color of law as official policy, pursuant to 42 U.S.C. § 1988, Nassau County and NCTPVA are also liable to the members of The Disputing Subclass for attorneys' fees.

### AS AND FOR A TWENTY-FIRST CAUSE OF ACTION
### UNJUST ENRICHMENT
### *As to Nassau County, NCTPVA, Verra Mobility, and ATS*
### *on behalf of The Non-Disputing Subclass and The Disputing Subclass*

357.   Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "356" as though they are fully set forth herein.

358.   The installation and operation of red light cameras in Nassau County is not, and never was, in compliance with New York State law or with Nassau County law.

359.    Neither Verra Mobility nor American Traffic Solutions have, or ever had, a New York State license to operate as a private investigator in New York State.

360.    Neither Nassau County nor NCTPVA had legal authorization to enter into contracts with the corporate defendants for installation or operation of red light cameras.

361.    As neither Nassau County nor NCTPVA had such authorization, all such contracts are invalid and illegal.

362.    One purpose of all such contracts was for, and included, the making of photographs and video recordings to be used as the basis of issuing Notices of Liability and for use at trial.

363.    As stated above, the photographs and video recordings made by the corporate defendants were illegal and constitute illegally obtained evidence and therefore cannot serve as the basis for the issuance of Notices of Liability.

364.    State law authorizations are superior to any later enacted county law authorizations. Despite any authorizations which may have been granted by county laws later enacted by the Nassau County Legislature, the parameters and limitations of NCTPVA's authority have been expressly set forth by the NYS Legislature.

365.    Per state law, NVCTPVA had no authority to issue Notices thus any Notices it issued were illegal.

366.    As the illegally issued Notices were the basis upon which monies were paid by The Paying Class, such monies were illegally obtained.

367.    The Notices issued include a statutorily established penalty of fifty dollars ($50). Pursuant to contractual terms, monies paid was split between Nassau County and the corporate defendants with, upon information and belief, Nassau County receiving sixty-five percent (65%) and the corporate defendants receiving thirty-five percent (35%).

368.   Each member of The Non-disputing Subclass and The Disputing Subclass, upon making such payment, suffered financial injury.

369.   As the Notices of Liability were illegal, as the evidence upon which said Notices were issued was illegally obtained, as the cameras which produced that evidence were illegally installed and operated under both county and state law, and as the contracts which arranged for the installation, operation, and maintenance of those cameras were illegal, neither Nassau County, NCTPVA, Verra Mobility, nor ATS were entitled to any monies for payment of fines which they obtained from the members of The Disputing Subclass, including plaintiff, or from The Non-disputing Subclass.

370.   As Nassau County, NCTPVA, Verra Mobility, and ATS were not entitled to such monies, they were unjustly enriched to the detriment of all members of The Disputing Subclass and The Non-disputing Subclass.

### AS AND FOR A TWENTY-SECOND CAUSE OF ACTION
### UNJUST ENRICHMENT
*As to defendant Nassau County on behalf of The Paying Class*

371.   Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "370" as though they are fully set forth herein.

372.   In addition to the statutory amount of the penalty imposed for the red light violation, since 2011, Nassau County has imposed a fee, known as the Driver Responsibility Fee, on every red light camera Notice of Liability issued in Nassau County.

373.   If the red light camera program enacting statutes, as argued earlier, are deemed unconstitutional, the Driver Responsibility Fee, which directly flows from that program, is not a valid or legal fee and its collection, ever since 2011, constitutes an unjust enrichment of Nassau County.

374. If, as argued earlier, the local ordinances enacting the Driver Responsibility Fee are deemed unconstitutional, then Nassau County has been unjustly enriched since 2011 by charging and collecting this "Fee."

375. If the statutes enacting the red light camera program and the ordinances enacting the Driver Responsibility Fee are all deemed constitutional, Nassau County has still been unjustly enriched since 2011 by charging and collecting this "Fee."

376. As stated earlier, (1) the installation and operation of red light cameras in Nassau County is not, and never was, in compliance with state or county law and (2) neither Nassau County nor NCTPVA had legal authorization to enter into contracts with the corporate defendants for installation and/or operation of, red light cameras in Nassau County thereby making those contracts illegal.

377. Anything flowing from those contracts and the installation and operation of the cameras – including the photographs and video recordings made by the cameras – is thus illegal.

378. As the photographs and video recordings made by the corporate defendants were illegal, they cannot serve as the basis for the issuance of Notices of Liability.

379. Further, per the limitations of authority set forth for NCTPVA by state law, NCTPVA had no authority to issue Notices of Liability.

380. As the illegally issued Notices – predicated upon the illegally taken photographs and video recordings – were the basis upon which the Driver Responsibility Fee was charged to, and paid by, The Paying Class since 2011, such monies were illegally obtained. The full amount of these monies was received by Nassau County. Receipt of these monies by Nassau County was to the financial detriment of the members of The Paying Class.

381. As Nassau County was not entitled to monies it imposed and collected as the Driver

Responsibility Fee, it was unjustly enriched to the detriment of all members of The Paying Class who, since 2011, were issued red light camera Notices and paid this "Fee."

**AS AND FOR A TWENTY-THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
*As to defendant Nassau County on behalf of The Paying Class*

382.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "381" as though they are fully set forth herein.

383.    Beginning on January 2, 2017, Nassau County also imposed another fee, called the "Public Safety Fee," on those to whom Notices of Liability were issued.

384.    If the red light camera program enacting statutes, as argued earlier, are deemed unconstitutional, the Public Safety Fee, which directly flows from that program, is not a valid or legal fee and its collection, ever since 2017, unjustly enriched Nassau County.

385.    If, as argued earlier, the statute enacting the Public Safety Fee is deemed unconstitutional, then Nassau County has been unjustly enriched since 2017 by charging and collecting this "Fee."

386.    If the statutes enacting the red light camera program and the Public Safety Fee are all deemed constitutional, Nassau County has still been unjustly enriched since 2017 by charging and collecting this "Fee."

387.    As stated earlier, (1) the installation and operation of red light cameras in Nassau County is not, and never was, in compliance with New York State law or with Nassau County law and (2) neither Nassau County nor NCTPVA had legal authorization to enter into contracts with the corporate defendants for installation and/or operation of, red light cameras in Nassau County thereby making those contracts illegal.

388.    Anything flowing from those contracts and the installation and operation of the cameras –

including the photographs and video recordings made by the cameras – is thus illegal.

389.   As the photographs and video recordings made by the corporate defendants were illegal, they cannot serve as the basis for the issuance of Notices of Liability.

390.   Further, per the limitations of authority set forth for NCTPVA by state law, NCTPVA had no authority to issue Notices of Liability.

391.   As the illegally issued Notices – predicated upon the illegally taken photographs and video recordings – were the basis upon which the Public Safety Fee was charged to, and paid by, The Paying Class since 2017, such monies were illegally obtained. The full amount of these monies was received by Nassau County. Receipt of these monies by Nassau County was to the financial detriment of the members of The Paying Class.

392.   As Nassau County was not entitled to monies it imposed and collected as the Public Safety Fee, it was unjustly enriched to the detriment of all members of The Paying Class who, since 2017, were issued red light camera Notices and paid this "Fee."

393.   Further, as the statute which created the Public Safety Fee expressly declares its purpose is to serve as a deterrent, imposition of that "Fee" constitutes a penalty. Imposition of this second penalty, over and above the statutory maximum fifty dollar ($50) penalty already imposed for the traffic infraction, renders the Public Safety Fee unconstitutional.

394.   As an unconstitutional fee, the monies received constitute an unjust enrichment of Nassau County and a financial injury suffered by all members of The Paying Class who have been issued red light camera Notices and paid this fee since January 2, 2017.

**AS AND FOR A TWENTY-FOURTH CAUSE OF ACTION**
**ABUSE OF PROCESS**
*As to defendants Nassau County and NCTPVA on behalf of The Ticketed Class*

395.   Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "394"

as though they are fully set forth herein.

396.   The Notices sent by Nassau County and NCTPVA are all predicated upon, as stated earlier, illegal actions, illegal contracts, and illegal and unlawfully obtained "evidence."

397.   As stated earlier, the red light cameras installed and operated in Nassau County are illegal as they were installed, and are operated, in violation of the state and county statutes which authorize and govern their installation and operation.

398.   As further stated earlier, despite not having authority under either state or county statutes, NCTPVA – on behalf of itself and Nassau County – contracted with the corporate defendants for the renting of the cameras and for their installation and operation.

399.   The red light cameras in Nassau County were expressly installed to take photographs and video recordings of vehicles violating red light statutes in Nassau County. The photographs and video recordings would be (1) used as the basis for issuing Notices of Liability; (2) provided as "evidence" on the issued Notices (with the videos viewable online at a website provided on the Notices) so as to support issuance of those Notices; and (3) submitted as evidence at hearings held in regards to issued Notices.

400.   As stated earlier, although hired to obtain and secure evidence, neither corporate defendant has, or ever had, the required NYS issued private investigator license necessary to perform that task.

401.   Even assuming that they were allowed to contract with the corporate defendants, Nassau County and NCTPVA knew, and had reason to know, (1) of the statutory requirement for the corporate defendants to have that license and (2) of their obligation to ensure that the corporate defendants had the requisite qualifications – including licenses – before entering into contracts with them.

402.    Nassau County and NCTPVA also had ample opportunity to perform the due diligence necessary before entering into such contracts.

403.    Despite the corporate defendants lacking the requisite licenses, Nassau County and NCTPVA none-the-less knowingly, willfully, and intentionally entered into multiple contracts with them for the express purpose of having the corporate defendants regularly commit the Class B misdemeanor of acting as unlicensed private investigators by illegally operating the red light cameras in Nassau County in order to obtain illegally taken photographs and videos for use as the basis for issuing Notices of Liability and as evidence at hearings regarding those Notices.

404.    By predicating the Notices upon illegal photographs and video recordings illegally taken and obtained under an illegal contract, Nassau County perverted the legal, statutory authorization for Notices so as to issue millions of illegal Notices.[18]

405.    Per the limits of its authority under state law, NCTPVA did not have authority to issue Notices. Issuing them anyway was a perversion of law. By predicating the Notices upon illegal photographs and video recordings illegally taken and obtained under an illegal contract, NCTPVA acted in a way that further perverted the law.

406.    The objective of the perverted manner in which the Notices were created and issued was to bring the "weight" and power of Nassau County and the "weight" and power of NCTPVA to bear on Notice recipients so as to obtain monies from them.

407.    On the illegally issued red light camera Notices, Nassau County and NCTPVA even issue "threats" to the recipients by stating that if the recipients fail to challenge the Notice or

---

[18] This assumes that the enabling statutes are deemed constitutional. If deemed unconstitutional, Nassau County still abused process via the actions it took while under the belief of the constitutional nature of the statutes.

pay the demanded amount, then a default conviction[19] would be entered against the recipient and an additional penalty of twenty-five dollars ($25) would also be imposed.

408.    This "threat" was intended to again bring the "weight" and power of both Nassau County and NCTPVA to bear on Notice recipients so as to obtain monies from them.

409.    Nassau County was authorized to install and operate the red light cameras in the county in a legal fashion and legally issue Notices.

410.    Rather than comply with the state and county statutes, Nassau County intentionally and negligently turned a "blind eye" to the illegal actions of NCTPVA whereby NCTPVA intentionally and willfully (1) exceeded its express parameters under state law by involving itself in the installation and operation of the red light cameras; (2) illegally involved itself in the installation and operation of the red light cameras in violation of county law which gave express and sole authority for the installation and operation to the Department of Public Works; (3) entered into multiple contracts it had no legal authority to enter into; and (4) required the corporate defendants to repeatedly and regularly commit illegal and criminal acts as terms of those contracts.

411.    Nassau County had a legal, authorized path by which it could accomplish the same goal and issue legal Notices. Instead it chose to allow NCTPVA to become involved in the red light camera program in a way expressly prohibited and unauthorized by both state and county statutes. Nassau County and NCTPVA, together, then took, and contracted for the taking of, illegal actions in order to issue Notices predicated upon criminal actions and illegally obtained evidence. By acting in contravention of express statutory authorizations, as well as contracting for the taking of criminal actions, the actions taken

---

[19] The term "default conviction" rather than "default judgment" is specifically used on the issued Notices.

by Nassau County and NCTPVA for issuing Notices were not justified.

412. Further, the illegalities taken by, and contracted for by, Nassau County and NCTPVA is inexcusable as there was a specific legal, statutorily authorized path by which Nassau County could have (1) installed the red light cameras in the county; (2) operated those cameras; (3) taken the photographs and video recordings upon which the Notices were issued; and (4) thereupon issue legal Notices.

413. By intentionally and willfully (1) ignoring state and county statutes; (2) exceeding its authority under both state and county statutes; (3) involving itself in a matter for which it had no express or implied authorization under state or county statutes; (4) entering into illegal and unauthorized contracts whose terms require the corporate defendants to repeatedly and regularly commit illegal, criminal actions in order for NCTPVA to unlawfully obtain illegal evidence for use as the basis for issuing Notices; and (5) then issuing those Notices,[20] NCTPVA is liable for abuse of process for the Notices issued.

414. By intentionally and willfully choosing to (1) ignore the state and county statutes; (2) turn "a blind eye" to NCTPVA entering into unauthorized contracts, terms of which included contracting for the taking of criminal actions so as to unlawfully obtain illegal evidence to use as the basis for the Notices issued; and (3) allowing illegal and unauthorized Notices to be issued in its name (via the use of its name, County Seal, and address) predicated upon the illegal contracts and the illegal and illegally obtained "evidence," Nassau County is liable for abuse of process for the Notices issued.

415. For their abuse of process, Nassau County and NCTPVA are liable to the members of

---

[20] Under the terms of the contracts, the corporate defendants were responsible for the actual printing and mailing of the Notices. The Notices are not automatically generated by the corporate defendants. Rather, NCTPVA sends instructions to the corporate defendants for the printing and mailing (thus the issuing) of each Notice on an individual basis.

The Ticketed Class.

**AS AND FOR A TWENTY-FIFTH CAUSE OF ACTION**
**ABUSE OF PROCESS**
*As to defendants Nassau County and NCTPVA on behalf of The Paying Class*

416.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "415" as though they are fully set forth herein.

417.    As stated above, Nassau County had the opportunity to comply with the state and county statutes authorizing installation and operation of the red light cameras and to legally issue legal Notices.

418.    As further argued above, Nassau County instead chose to "turn a blind eye" to NCTPVA illegally (1) exceeding the express parameters and limitations of its authority under state law; (2) involving itself with, and taking unauthorized actions in regards to, the red light camera program in Nassau County; (3) entering into unauthorized contracts with the corporate defendants – terms of which required the corporate defendants to regularly commit criminal misdemeanors; and (4) issued Notices.

419.    Nassau County not only "turned a blind eye" to state law, to county law, and to the illegal actions taken by NCTPVA but did so willingly, working hand-in-hand with NCTPVA.

420.    The purpose of the illegal actions taken by Nassau County and NCTPVA was to intimidate recipients of the illegally issued Notices such that they would pay the monies demanded. The intimidation was the implied legality of the issued Notices as indicated and implied by the Notices bearing Nassau County's name and County Seal, NCTPVA's name, and both Nassau County and NCTPVA addresses.

421.    The intimidation by having NCTPVA's name and address and the name, County Seal, and address of Nassau County appear on the Notices was an attempt to imply that the

Notices were legal and that Nassau County and NCTPVA intended to bring the full "weight" and power of their governmental authority down upon the Notice recipients.

422.    Further intimidation was a "threat" contained on each Notice which declared that if the recipient did not challenge the Notice or pay the demanded amount, then a default conviction[21] would be entered against the recipient and an additional penalty of twenty-five dollars ($25) would also be imposed.

423.    Nassau County had a legal, authorized path by which it could accomplish the same goal and legally issue legal Notices.[22] Instead it chose to allow NCTPVA to become involved in the red light camera program in ways expressly prohibited and unauthorized by statute. Nassau County and NCTPVA, together, then took, and contracted for the taking of illegal actions so as to issue Notices predicated upon, and based upon, illegal, criminal actions and illegal and illegally obtained evidence.

424.    Of extra importance is that under the express parameters of state law NCTPVA had no authority to issue the Notices. Yet both Nassau County and NCTPVA intentionally chose to ignore the limitations of authority expressly set forth by the NYS Legislature by having NCTPVA issue illegal, unauthorized Notices.

425.    By acting in contravention of express statutory authorizations as well as contracting for illegal actions, the actions of Nassau County and NCTPVA pursuant to which they illegally issued Notices, were not justified.

426.    Further, there was a legal, authorized path by which Nassau County could legally install the red light cameras, operate the cameras, and issue legal and proper Notices. The

---

[21] As indicated earlier, the Notices specifically use the term "default conviction" rather than "default judgment."

[22] This again assumes that the enabling statutes are deemed constitutional. However, if deemed unconstitutional, Nassau County, acting under the belief that the statutes were constitutional, none-the-less acted in a manner which abused process.

violations of law by Nassau County and NCTPVA and their illegally entering into unauthorized contracts whose terms included a requirement that criminal misdemeanors be regularly committed by the corporate defendants are inexcusable actions.

427.    By (1) willfully ignoring state and county statutes; (2) contracting for illegal, criminal actions so as to (3) unlawfully obtain illegal, inadmissible evidence to use as the basis for the Notices issued; (4) issuing illegal Notices; and (5) issuing a "threat" should Notice recipients not pay (or at least challenge liability), Nassau County abused process.

428.    By intentionally and willfully (1) involving itself in a matter for which it had no express or implied authorization under state or county statutes; (2) ignoring state and county statutes; (3) entering into illegal and unauthorized contracts whose terms require the corporate defendants to repeatedly and regularly commit criminal actions so as to provide NCTPVA with illegal and unlawfully obtained evidence for use as the basis for issuing Notices; (4) illegally issuing Notices which it had no authority to do under state law; and (5) issuing their "threat" regarding Notice recipients not paying (or at least challenging liability), NCTPVA abused process.

429.    The abuse of process was (1) issuance of illegal process in the guise of being normal and legal, (2) with the intent of causing financial injury to the Notice recipients while simultaneously financially benefitting Nassau County (and, by extension, NCTPVA), along with (3) a perversion of process including an issued "threat" of further injury.

430.    The abuse of process performed by Nassau County and NCTPVA ultimately resulted in financial injury to all members of The Paying Class.

431.    As a result of their actions, Nassau County and NCTPVA should be held liable to the members of The Paying Class for abuse of process.

### AS AND FOR A TWENTY-SIXTH CAUSE OF ACTION
### CONCERT OF ACTION
### *As to defendants Nassau County, NCTPVA, Verra Mobility, and ATS*
### *on behalf of The Ticketed Class*

432.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "431" as though they are fully set forth herein.

433.    Nassau County, NCTPVA, and the corporate defendants worked and conspired together to target The Ticketed Class for abuse of process and attempts at committing fraud.

434.    Nassau County knew, and had reason to know, that it did not have the authority to enter into the contracts with the corporate defendants as neither state nor county law gave express or implied authorization for any private third party entity to install or operate red light cameras in Nassau County. State law specifically authorized only the county to install and operate them. County law specifically authorized only the Department of Public Works to install and operate them.

435.    Nassau County and NCTPVA knew, and had reason to know that NCTPVA had no statutory authority under state or county law for any type of involvement with the installation or operation of red light cameras in the county. By nature, that lack of authorization includes a lack of authority for NCTPVA to enter into any contracts regarding the red light cameras.

436.    NCTPVA, despite its lack of authorization under law, in furtherance of the plan and conspiracy, on behalf of itself and Nassau County, entered into contracts with the corporate defendants for the installation, operation, and maintenance of the cameras.

437.    Nassau County, intentionally and/or negligently "turned a blind eye" to NCTPVA's illegal involvement in the red light camera program and the illegal contracts NCTPVA entered into.

**438.** The purpose of the red light cameras in Nassau County was to take photographs and make video recordings of alleged red light violations with the photos and video recordings serving as both the basis for issuance of Notices of Liability and as evidence at hearings regarding such Notices.

**439.** As stated earlier, in order to take such photographs and video recordings for those purposes, New York State law required that the corporate defendants possess a private investigator license issued by the NYS Department of State.

**440.** Nassau County and NCTPVA knew, and had reason to know, of this statutory requirement and had sufficient opportunity to determine if the corporate defendants possessed the requisite license.

**441.** Nassau County and NCTPVA knew, and had reason to know, that neither corporate defendant had, or ever had, such license.

**442.** Verra Mobility and ATS both knew, and had reason to know, that neither had, or ever had, a private investigator license issued by the NYS Department of State.

**443.** NCTPVA (on behalf of itself and Nassau County) and the corporate defendants none-the-less knowingly, intentionally, and willfully entered into multiple contracts whereby the corporate defendants were hired – and paid – to repeatedly and regularly commit the class B misdemeanor of operating as unlicensed private investigators so as to illegally obtain evidence which Nassau County, NCTPVA, Verra Mobility, and ATS all knew was to be used as the basis for issuing the illegal Notices to The Ticketed Class.

**444.** To further their plan and conspiracy, Nassau County and NCTPVA and/or Verra Mobility and ATS violated federal law in order to invade the privacy of the Ticketed Class members.

445.    In furtherance of their plan and conspiracy, Nassau County and NCTPVA, with the aid and assistance of Verra Mobility and ATS, abused process by issuing illegal, unauthorized Notices to The Ticketed Class, with all such Notices predicated on the illegal contracts and the illegal "evidence" which was criminally obtained.

446.    The purpose of all the actions taken by Nassau County, NCTPVA, Verra Mobility, and ATS was financial. Conspiring together and working together in concert of action, these defendants attempted to commit fraud so as to obtain monies.

447.    Nassau County, NCTPVA, Verra Mobility, and ATS all knew, and had reason to know, that working together their actions would injure others.

448.    Nassau County, NCTPVA, Verra Mobility, and ATS all knew, and had reason to know, that working together their actions were attempting to commit fraud which they knew, and had reason to know, could cause further injury.

449.    By choosing to intentionally enter into those contracts as part of a unified attempt to commit fraud for financial gain while knowing, and having reason to know, that state and county laws were being ignored and violated by them, that the contracts were illegal and unauthorized, that contract performance required regular and repeated commission of misdemeanors, and that their actions would cause injury to others, Nassau County, NCTPVA, Verra Mobility, and ATS conspired to work in concert.

450.    As Nassau County, NCTPVA, Verra Mobility, and American Traffic Solutions conspired together, worked in concert for the goals of that conspiracy, the conspiracy caused injury to The Ticked Class, and, for financial gain, the conspiracy tried to cause further injury by means of an attempt to commit fraud, said defendants are each liable to The Ticketed Class for injury resulting from these defendants' concert of action.

[73]

## AS AND FOR A TWENTY-SEVENTH CAUSE OF ACTION
## CONCERT OF ACTION
### *As to defendants Nassau County, NCTPVA, Verra Mobility, and ATS*
### *on behalf of The Paying Class*

451.   Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "450" as though they are fully set forth herein.

452.   Nassau County, NCTPVA, Verra Mobility, and American Traffic Solutions worked and conspired to commit fraud against The Paying Class.

453.   In furtherance of that plan and conspiracy, Nassau County, NCTPVA, and the corporate defendants entered into multiple illegal contracts regarding installation and operation of red light cameras in Nassau County.

454.   Nassau County knew, and had reason to know, that it did not have authority under state or county statutes to enter into those contracts.

455.   Nassau County and NCTPVA knew, and had reason to know that NCTPVA had no statutory authority for any type of involvement with the installation or operation of red light cameras in the county. As such they knew, and had reason to know, that the lack of such authorization included a lack of authority for NCTPVA to enter into any contracts for the rental of the cameras or contracts concerning their installation and/or operation.

456.   Nassau County and NCTPVA knew, and had reason to know, that the corporate defendants had no authority under state or county statutes to install and/or operate red light cameras in Nassau County and thus knew, and had reason to know that the contracts were illegal.

457.   The purpose of the red light cameras in Nassau County was to take photographs and make video recordings of alleged red light violations with the photos and video recordings serving as the basis for issuance of Notices of Liability and as evidence at

hearings regarding such Notices.

458.    As stated earlier, in order to take such photographs and video recordings for those purposes, New York State law required that the corporate defendants possess a private investigator license issued by the NYS Department of State.

459.    Nassau County and NCTPVA knew, and had reason to know, of this statutory requirement and, as they had sufficient opportunity to determine if the corporate defendants possessed the requisite license, they knew, and had reason to know, that neither corporate defendant had, or ever had, such license.

460.    Verra Mobility and ATS knew, and had reason to know, that neither of them had, nor ever had, a private investigator license issued by the NYS Department of State.

461.    Nassau County and NCTPVA and the corporate defendants none-the-less knowingly, willfully, and intentionally entered into multiple contracts pursuant to which the corporate defendants were hired – and paid – to repeatedly and continuously commit the class B misdemeanor of operating as unlicensed private investigators for the purpose of illegally obtaining unlawful "evidence" which Nassau County, NCTPVA, Verra Mobility, and ATS all knew was to be used as the basis for issuing the illegal Notices.

462.    In furtherance of their plan and conspiracy, Nassau County and NCTPVA, with the aid and assistance of Verra Mobility and ATS, issued Notices, all of which were predicated upon the illegal contracts and the illegal and unlawfully obtained evidence.

463.    The purpose of the issuance of the Notices was to defraud the recipients into believing they were issued legal Notices and had incurred legitimate liability for the monies demanded. Nassau County, NCTPVA, Verra Mobility, and ATS expected the recipients to either pay the monies without disputing the Notices or to pay the monies after having

been found liable at a dispute hearing.

464.    The members of the Non-disputing Subclass, having relied upon the implied but untruthful legality of the Notices, the implied but untruthful legality of the manner in which the red light cameras were installed and operated, and the implied legality of the photographs and video recordings were defrauded as they paid the monies demanded.

465.    The members of The Disputing Subclass disputed the Notices and their liability thereunder. Their disputes were heard and ruled upon at hearings.

466.    At the hearings, Nassau County and NCTPVA – through the prosecuting attorneys employed by them who appeared on their behalf – moved for, and submitted that illegal, criminally and unlawfully obtained evidence.

467.    The presiding judicial hearing officers employed by Nassau County and NCTPVA not only accepted the illegal, unlawfully and criminally obtained photographs and videos into evidence but then rendered rulings against the members of The Disputing Subclass predicated upon that "evidence."

468.    Having been ruled against at the hearings, the members of The Disputing Subclass paid the monies demanded. These Subclass members were defrauded of monies as they had relied upon the implied but untruthful legality of the Notices, the implied but untruthful legality of the manner in which the red light cameras were installed and operated, and upon the expectation of receiving due process at the hearings – inclusive of admission of only legal and legally obtained evidence.

469.    The Fee Only Subclass members were also financially injured and defrauded of monies by the scheme. They justifiable relied upon the implied but untruthful legality of the Notices and the implied but untruthful legality of the installation and operation of the red

light cameras. Although their Notices were dismissed, they were still required to pay "Fees" imposed by Nassau County. These "Fees" would not have had to be paid were it not for the illegal contracts and the illegal actions taken thereunder including issuance of the illegal Notices.

470.    The statutory penalties for the traffic infractions paid by the Non-disputing Subclass and The Disputing Subclass were shared by Nassau County (and, by extension, NCTPVA), Verra Mobility, and ATS while the additionally imposed "fees" paid by all Paying Class members benefited only Nassau County (and by extension, NCTPVA).

471.    Nassau County, NCTPVA, Verra Mobility, and ATS took their actions for purposes of obtaining money from The Paying Class. In order to do so, these defendants worked and conspired together in a concert of action so as to create an illusion of legality and of legal actions in order to defraud the Class members into paying these monies.

472.    Nassau County, NCTPVA, Verra Mobility, and ATS conspired together, worked in concert for the goals of that conspiracy, financially benefitted from the conspiracy, and the conspiracy caused injury to the members of The Paying Class. As such, Nassau County, NCTPVA, Verra Mobility, and ATS are each liable to The Paying Class for injury resulting from these defendants' concert of action.

### AS AND FOR A TWENTY-EIGHTH CAUSE OF ACTION
### FRAUD
*As to defendant Nassau County on behalf of The Paying Class*

473.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "472" as though they are fully set forth herein.

474.    Pursuant to federal law, Nassau County has, on multiple occasions, made certifications to both NYS and the federal government regarding the operation of the red light camera

program in Nassau County.

475. Nassau County's compliance certifications are also a matter of public record.

476. In these certifications, Nassau County has, multiple times, certified that it complies with the federal guidelines for red light camera programs.

477. Knowing, and having reason to know, that the federal guidelines were not being complied with, Nassau County none-the-less intentionally made multiple certifications whereby it falsely stated and certified that the county was complying with the federal guidelines regarding red light camera programs.

478. Nassau County expected its certifications to be accepted as truthful and accurate by the federal government, the NYS government, and the public (inclusive of all those who traverse the roads of Nassau County which thereby includes The Paying Class).

479. Nassau County further expected that the federal government, the NYS government, and the public (inclusive of all those who traverse the roads of Nassau County which thereby includes the members of The Paying Class) would justifiably rely on those certifications and their supposed truthfulness.

480. As the certifications of compliance were done pursuant to federal law, by intentionally lying and making false certifications of compliance, Nassau County intentionally committed a fraud upon both the federal and NYS governments.

481. As these certifications are a matter of public record, by intentionally lying and making false certifications of compliance Nassau County also perpetrated this fraud upon all those who traverse the roads of Nassau County (which includes The Paying Class).

482. The perpetration of this fraud targeted the members of The Paying Class and caused actual financial injury to them.

483.   As the red light camera Notices issued in Nassau County were not issued in compliance with federal guidelines, all such Notices are, in fact, invalid.

484.   As the red light camera Notices were invalid for failure to comply with guidelines, monies could not legally be demanded of, or collected from, The Paying Class predicated upon issuance of the invalid Notices.

485.   The goal of creating and enforcing red light camera policies and procedures that are not in compliance with federal guidelines was financial. These actions were designed to financially benefit Nassau County at the expense of the members of The Paying Class, without care or concern for compliance with statutes or the federal guidelines nor care or concern about causing injury.

486.   The members of The Paying Class all suffered actual financial injury as a result of Nassau County failing to comply with the federal guidelines.

487.   Intentionally crafting and enforcing policies and procedures that are not in compliance with the federal red light camera program guidelines and which resulted in actual financial damage to The Paying Class while simultaneously falsely certifying that they were in compliance and allowing The Paying Class members to rely on those false certifications, constitutes commission of fraud upon The Paying Class by Nassau County.

488.   That Nassau County made these false, untruthful, certifications not just once but multiple times over a period of years demonstrates (1) Nassau County's willingness to lie and (2) the lengths to which Nassau County was willing to go to intentionally mislead, and conceal the truth from, the federal government, the state government, and the public (inclusive of The Paying Class who suffered actual financial injury) all for financial gain.

489.   For perpetration of the fraud, Nassau County should be held liable to the members of The

Paying Class for all financial injury and losses suffered as a consequence of that fraud.

### AS AND FOR A TWENTY-NINTH CAUSE OF ACTION
### ABUSE OF PROCESS
***As to defendants Nassau County and NCTPVA on behalf of The Ticketed Class***

490.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "489" as though they are fully set forth herein.

491.    Pursuant to federal law, Nassau County attested and certified multiple times to the federal government, the NYS government, and to the public at large (including all members of The Ticketed Class) that it complies with the federal red light camera program guidelines.

492.    Those certifications, as stated above, were knowingly false as Nassau County and NCTPVA intentionally and willfully crafted policies and procedures that failed to comply with the federal guidelines.

493.    Multiple times Nassau County certified in the affirmative to taking a specific action in regards to issuance of Notices of Liability – an action which would demonstrate compliance with a specific requirement of the federal guidelines.

494.    The affirmative certifications regarding this specific action and guideline are untruthful as that action is not taken and thus the federal guideline regarding that specific action is not complied with.

495.    By not complying with this specific guideline, the Notices issued are not legal or valid.

496.    Issuing process in a manner not in compliance with the federal guidelines constitutes abuse of process.

497.    There is no excuse or justification for the issuing of illegal and invalid Notices.

498.    The lack of excuse or justification is enhanced by Nassau County making multiple false certifications regarding compliance so as to intentionally conceal their illegal actions.

499. Intentionally crafting policies and procedures for issuance of red light camera Notices that fail to comply with the federal guidelines for the red light camera programs is not simply error or mistake nor even just a single error or mistake. Rather, it is an intentional, multi-step, multi-layered course of action knowingly and willfully jointly undertaken by Nassau County and NCTPVA which involved many people on many levels of authority.

500. After knowingly creating and consistently utilizing such non-complying policies and procedures, for Nassau County to then – on multiple occasions – falsely attest and certify to the federal government, to the NYS government, and to the public at large (which includes all members of The Ticketed Class) that the federal guidelines for the red light camera program are complied with is nothing short of further willful, knowing, and intentional actions taken in furtherance of abusing process.

501. The lengths to which Nassau County went (1) to mislead; (2) to conceal its attempts to commit fraud; (3) to conceal its noncompliance with federal guidelines; and (4) to not only conceal its abuse of process but to disguise that abuse by making it appear legal and legally valid, is demonstrated by the false certifications of compliance being made not just once but multiple times over a period of years.

502. The goal of abusing process via non-complying red light camera policies and procedures was financial in nature with the intent of financially benefitting Nassau County (and by extension, NCTPVA) without care or concern for the legality of the actions being taken in order to obtain that benefit or for the injuries caused by those actions.

503. For such actions and injury, Nassau County and NCTPVA should be held liable to the Ticketed Class for those injuries.

### AS AND FOR A THIRTIETH CAUSE OF ACTION
### ABUSE OF PROCESS
*As to defendants Nassau County and NCTPVA on behalf of The Paying Class*

504.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "503" as though they are fully set forth herein.

505.    Pursuant to federal law Nassau County attested and certified multiple times to the federal government, the NYS government, and to the public at large (which includes all members of The Paying Class) that the federal guidelines for red light camera programs was complied with in Nassau County.

506.    Those certifications were knowingly false as Nassau County and NCTPVA intentionally and willfully crafted policies and procedures for issuance of red light camera Notices that failed to comply with the federal guidelines.

507.    Among those certifications were ones in which Nassau County repeatedly certified that a specific action (which would demonstrate compliance with a specific requirement of the federal guidelines) was taken.

508.    However, in truth, that action was not taken by Nassau County and thus each of those certifications was an intentionally made false certification.

509.    By not complying with this specific guideline, the Notices issued are not legal or valid.

510.    Issuing process in a manner not in compliance with the federal guidelines constitutes abuse of process.

511.    There is no excuse or justification for the issuing of illegal and invalid Notices.

512.    The lack of excuse or justification is enhanced by Nassau County making multiple false certifications regarding compliance so as to intentionally conceal their illegal actions.

513.    Intentionally crafting policies and procedures for issuance of red light camera Notices

that fail to comply with the federal guidelines for the red light camera programs is not simply error or mistake nor even just a single error or mistake. Rather, it is an intentional, multi-step, multi-layered course of action knowingly and willfully jointly undertaken by Nassau County and NCTPVA which involved many people on many levels of authority.

514. After knowingly creating and consistently utilizing such non-complying policies and procedures, for Nassau County to then – on multiple occasions – falsely attest and certify to the federal government, to the NYS government, and to the public at large (which includes all members of The Paying Class) that the federal guidelines for the red light camera program are complied with is nothing short of further willful, knowing, and intentional actions taken in furtherance of abusing process.

515. The goal of abusing process via the non-complying red light camera policies and procedures was financial. These actions were designed to financially benefit Nassau County (and by extension, NCTPVA) without care or concern for the legality of their actions or the injury that The Paying Class would suffer.

516. The actions of Nassau County and NCTPVA in failing to comply with the federal red light camera program guidelines is abuse of process and resulted in actual financial damage to the members of The Paying Class.

517. The intentional and repeated false and untruthful certifications of compliance with the federal guidelines regarding the red light camera program constitutes an intentional attempt (1) to mislead; (2) to cover-up and conceal the abuse of process being committed by Nassau County and NCTPVA; (3) to conceal the further illegal actions of Nassau County and NCTPVA; and (4) conceal that the actions taken by Nassau County and NCTPVA constituted a successful commission of fraud against The Paying Class.

518.   For such actions and the injuries which flowed from them, Nassau County and NCTPVA should be held liable to The Paying Class.

**AS AND FOR A THIRTY-FIRST CAUSE OF ACTION**
**DUE PROCESS under the NYS Constitution**
*As to defendants Nassau County and NCTPVA on behalf of The Disputing Subclass*

519.   Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "518" as though they are fully set forth herein.

520.   The members of The Disputing Subclass chose to dispute the red light camera Notices they received in Nassau County and each received a hearing regarding their dispute. At such hearings, the Subclass members were entitled to all aspects of due process.

521.   The recipients of the Notices are all accused of liability for a red light violation. The accusation is in the form of a charging document with no indication thereon as to the identity of the individual who authorized issuance of the Notice.

522.   Only on the date of the hearing is a certificate provided in which the identity of the person who authorized issuance of the Notice is finally provided to the Notice recipient. These certificates are, upon information and belief, all signed by technicians employed by Nassau County and NCTPVA and contend that the signatory is the person who authorized issuance of the Notice.

523.   Article I, § 6 of the NYS Constitution declares that "In any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions and shall be informed of the nature and cause of the accusation and be confronted with the witnesses against him or her."

524.   Pursuant to the confrontation clause contained therein, the members of The Disputing Subclass are entitled to be confronted by the witness against them. In the case of red light

camera violations, the witness against them is the technician employed by Nassau County and NCTPVA who declared in the certificate that they saw a recording of the alleged traffic violation and authorized issuance of the Notice and the charges contained therein.

525.  Despite the Constitutional requirement of a witness to appear at these hearings, no witnesses appear on behalf of Nassau County or NCTPVA. Instead, at each hearing Nassau County and NCTPVA, via the prosecuting attorney employed by them and appearing on their behalf, move for admission of the notarized certificate and, upon approval for admission, submit the certificate into evidence.

526.  Although the lack of a live witness as well as the reliance upon a sworn technician's certificate is pursuant to the red light camera program enacting statutes, those statutes, as argued earlier, are unconstitutional.[23]

527.  Further, the confrontation clause is a guarantee given by the NYS Constitution. The right can't be eliminated by the state or a local legislature simply passing a statute which declares a sworn certificate to be sufficient. A constitutional right can only be eliminated by amending the constitution itself.

528.  By failing to have a witness appear at the hearings, The Disputing Subclass members are denied their NYS Constitutionally declared due process right to confront their accuser.

529.  Nassau County and NCTPVA fail to give the Subclass members due process as they fail to provide a live witness at the hearings.

530.  Nassau County and NCTPVA compound their due process violation by having their attorneys represent them at the hearings whereat the attorneys intentionally and willfully

---

[23] If the statutes are deemed constitutional, the claim for failure to provide due process exists. If they are deemed unconstitutional, the claim still exists as, Nassau County and NCTPVA acted under the belief that the statutes were constitutional but created and enforced official policies and procedures which violated the guarantees to due process.

move for, and submit into evidence, the certificates instead of calling the technicians as witnesses as required by the Constitution.

531.    As the presiding judicial hearing officers are employed by Nassau County and NCTPVA, by the hearing officers allowing submission of the certificates into evidence in lieu of a live witness, Nassau County and NCTPVA compounded their due process violations even further.

532.    As such, Nassau County and NCTPVA are liable to the members of The Disputing Subclass for denying the Subclass members their rights to due process by violating the confrontation clause of the NYS Constitution.

### AS AND FOR A THIRTY-SECOND CAUSE OF ACTION
### Equal Protection under the NYS Constitution
#### As to defendant Nassau County on behalf of The Disputing Subclass

533.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "532" as though they are fully set forth herein.

534.    Nassau County and NCTPVA also violated the rights of The Disputing Subclass members by denying them their rights to equal protection.

535.    All accused of a civil or criminal wrongdoing have a state constitutional right to confront their accuser. But Nassau County and NCTPVA specifically chose to deny those rights to the members of The Disputing Subclass.

536.    Rather than comply with the constitutional requirements of the confrontation clause, Nassau County instead enacted Title 72 § 3(b) of the Miscellaneous Laws of Nassau County which essentially declares that in regards to red light camera violation accusations, the constitutional right to confront one's accuser is negated. In doing so, Nassau County enacted an official policy which denies equal protection to The Disputing

Subclass by stripping the Subclass of a right expressly granted by the NYS Constitution.

537.    Pursuant to Title 72 § 3(b) of the Miscellaneous Laws of Nassau County, Nassau County intentionally legislated, and enforces, an equal protection violation solely targeting the members of The Disputing Subclass.

538.    Any person or entity accused of a violation of law in NYS is constitutionally guaranteed the right to confront their accuser.

539.    By legislating an exception to that right for those accused of violating red light laws based upon red light cameras, Nassau County intentionally created a specific group to whom the state constitution and its protections do not apply. In doing so, Nassau County denied those individuals and entities – all of whom comprise The Disputing Subclass – equal protection of law as guaranteed by Article I, § 11 of the NYS Constitution.

540.    For that violation, Nassau County is liable to the members of The Disputing Subclass.

## AS AND FOR A THIRTY-THIRD CAUSE OF ACTION
### Due Process under the Federal Constitution
*As to defendants Nassau County and NCTPVA on behalf of The Disputing Subclass*

541.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "540" as though they are fully set forth herein.

542.    By denying The Disputing Subclass members their due process rights under the NYS Constitution, Nassau County and NCTPVA violated the federal guarantee of due process as embodied in the U.S. Constitution.

543.    By violating state due process rights, Nassau County and NCTPVA also violated the Fourteenth Amendment rights guaranteed to the members of The Disputing Subclass.

544.    Nassau County and NCTPVA are therefore liable to The Disputing Subclass members for the violation of their federal due process rights.

## AS AND FOR A THIRTY-FOURTH CAUSE OF ACTION
### Equal Protection under the Federal Constitution
#### *As to defendant Nassau County on behalf of The Disputing Subclass*

545.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "544" as though they are fully set forth herein.

546.    As indicated above, Nassau County intentionally legislated violations of the state and federal constitutional rights of the members of The Disputing Subclass.

547.    In doing so, Nassau County denied equal protection of law to the members of The Disputing Subclass.

548.    The denial of equal protection also violated the equal protection guarantee embodied in the Fourteenth Amendment to the federal constitution.

549.    As such, Nassau County is liable to the members of The Disputing Subclass for its violation of their federal equal protection guaranteed rights.

## AS AND FOR A THIRTY-FIFTH CAUSE OF ACTION
### DUE PROCESS under the Federal Constitution
#### *As to defendants Nassau County and NCTPVA on behalf of The Disputing Subclass*

550.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "549" as though they are fully set forth herein.

551.    As has been argued above, the members of The Disputing Subclass were denied their rights to face their accuser as no witness appears at the hearings. As further argued above, this violates the rights to due process guaranteed by the state and federal constitutions. But there is more to the situation.

552.    In enacting Nassau County's red light camera authorization, the NYS Legislature implied that the matter was civil in nature rather than criminal. This is implied by the statute repeatedly making reference to a "liability" including the very Notices issued being

called "Notices of Liability."[24]

**553.** Even further, the statute, using the exact same wording, states that "failure to contest in the manner and time provided shall be deemed an admission of liability."[25]

**554.** The NYS Legislature specifically used the term "admission of liability" as opposed to the term "admission of guilt" as there is a vast difference between the civil nature of a "liability" as opposed to the criminal nature of "guilt."

**555.** Rulings by courts in New York have reaffirmed the civil nature of the statute and penalty.

**556.** Despite the state legislature intending the matters to be civil in nature and the civil nature of these matters being reiterated in court decisions, Nassau County and NCTPVA have chosen to chart their own course and not treat these matters as completely civil.

**557.** Nassau County and NCTPVA instead treat red light camera Notices and red light camera hearings as quasi-civil and quasi-criminal hybrids.

**558.** Proof that the Notices are treated as both quasi-civil and quasi-criminal is found in the wording used. On the Notices, Nassau County and NCTPVA use the word "liability" just as the state legislature does so as to imply that this is strictly a civil matter.

**559.** However, on the Notices, Nassau County and NCTPVA also use the term "conviction." They warn Notice recipients that failure to respond to the Notice will result in a "default conviction." This implies that the matter is criminal in nature.

**560.** A defendant who fails to respond in a civil matter can have a default judgment entered against them but not a default conviction. By making a threat of a conviction, Nassau County and NCTPVA are indicating that the matter is being treated not only as civil (by

---

[24] See, generally, VTL § 1111-b.

[25] VTL § 1111-b(g)(3)

use of the term "liability") but also criminal.[26] As such, Nassau County and NCTPVA are treating the Notices as both quasi-civil and quasi-criminal in nature.

561.    Further evidence of this quasi-criminal status extends to the hearings. Once the hearing has been scheduled, in letters sent by Nassau County and NCTPVA to those disputing their Notices, Nassau County and NCTPVA warn that failure to appear at the hearing will result in a default conviction.

562.    By again using the term "conviction," Nassau County and NCTPVA are again declaring that the matter is not just civil in nature but criminal as well. However, by their use in reference to the hearings, Nassau County and NCTPVA are stating outright that the hearings are deemed to be criminal in nature.

563.    Further proof of the quasi-criminal nature of the hearings is evidenced by the imposition of the "Driver Responsibility Fee."

564.    Since its creation by the Nassau County Legislature in 2011, this "Fee" has been imposed on all red light camera Notices of Liability that do not result in a "not guilty" ruling.

565.    Civil proceedings only render decisions of liability. They do not render decisions declaring a party to be "guilty."

566.    Criminal proceedings however, do render decisions declaring a party to be "guilty."

567.    It is thus evident by the very terms of the local ordinances imposing the "Fee" that Nassau County believes, and legislatively treats, red light camera hearings as, at the very least, quasi-criminal proceedings.

568.    As quasi-criminal proceedings, the due process requirements pertaining to criminal proceedings must apply. Among those is the right to confront witnesses which is

---

[26] By means of this statement, Nassau County and NCTPVA are even declaring that a criminal conviction can be entered in abstentia and without having a trial or hearing of any type.

embodied in the Sixth Amendment.

569.    As argued above, the official policies and procedures of Nassau County and NCTPVA are for no live witness to appear at the hearings to act as the accuser. This denies The Disputing Subclass members from being allowed to confront their accuser.

570.    As this is per official policy and procedure, the failure to allow the accused to confront their accuser in neither arbitrary nor random.

571.    The Sixth Amendment establishes the constitutional right of an accused in a criminal proceeding to confront their accuser. This is a federal Constitutional right that cannot simply be eliminated by a state or local legislature passing a statute or ordinance.

572.    Nassau County and NCTPVA at the very least, treat the red light camera hearings as quasi-criminal proceedings and have created, and enforce, a specific policy of not having accusatory witnesses appear at these hearings. As such, the constitutional violation is not arbitrary but is purposely and intentionally done by Nassau County and NCTPVA.

573.    Nassau County and NCTPVA should therefore be held liable for the intentional violation of the Sixth Amendment rights of all members of The Disputing Subclass.

### AS AND FOR A THIRTY-SIXTH CAUSE OF ACTION
### RICO
*As to defendants Verra Mobility, ATS, Nassau County, and NCTPVA*
*on behalf of The Older Subclass and the Newer Subclass*

574.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "573" as though they are fully set forth herein.

575.    By means of their actions, Verra Mobility, ATS, Nassau County, and NCTPVA violated the RICO statute resulting in injury to plaintiff and to all members of both the Older Subclass and the Newer Subclass.

576.    Verra Mobility, ATS, Nassau County, and NCTPVA are each persons who are capable of

holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(a)(3).

577.   By means of actions described in further detail below, Verra Mobility, ATS, Nassau County, and NCTPVA have each violated 18 U.S.C. § 1962(c).

578.   *The Enterprise*: Verra Mobility, ATS, Nassau County, and NCTPVA together form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) and § 1962(c). This association-in-fact enterprise ("Enterprise") was engaged in activities that affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c).[27]

579.   The Enterprise had a common purpose of intentionally and willfully perpetuating a scheme to defraud all individuals and entities, including plaintiff, who own vehicles traversing the roadways of Nassau County.

580.   The RICO defendants, each of whom are persons associated with the Enterprise knowingly, willfully, and unlawfully conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c), through multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and multiple instances of wire fraud, in violation of 18 U.S.C. § 1343.

581.   The Enterprise is an ongoing organization that functions as a continuing unit.

582.   *Pattern of Racketeering Activity*: The RICO defendants devised, or intended to devise, a scheme whereby working together, for their own financial benefit, they would defraud

---

[27] Even if Nassau County and NCTPVA are deemed not to be liable for RICO violations or being capable of being any part of an association-in-fact or enterprise under the RICO statutes, Verra Mobility and ATS, both individually and together, qualify as both an association-in-fact and an enterprise for RICO purposes and can be held liable under the RICO statutes. Should it be determined that Nassau County and NCTPVA are not part of such an enterprise nor liable for RICO violations, the claims set forth in this, and the following, cause of action still apply to the association-in-fact and enterprise consisting of the corporate defendants.

individuals and entities who own vehicles traversing the roadways of Nassau County.[28]

583. NCTPVA, on behalf of itself and Nassau County, entered into illegal contracts with ATS and Verra Mobility. Pursuant to these contracts, Verra Mobility and ATS would rent red light cameras to Nassau County and/or NCTPVA.

584. As the corporate defendants are based in Arizona and Nassau County and NCTPVA are both based in New York State, these contracts called for the providing of goods across state lines thereby affecting interstate commerce.

585. Pursuant to those same contracts – and additional subsequent contracts – ATS and Verra Mobility were also responsible for installing, operating, and maintaining the cameras.

586. By these additional contract terms, the Arizona based corporate defendants were providing services in New York thereby affecting interstate commerce by providing services across state lines.

587. As stated earlier, the contracts were illegal as the NYS statute authorizing Nassau County to install and operate red light cameras did not authorize Nassau County to contract any private entity to install and/or operate any such camera.

588. As also stated earlier, the Nassau County statute only authorized the Department of Public Works to install and operate red light cameras and did not authorize the contracting of any private entity to install and/or operate any such camera.

589. Additionally, nothing, express or implied, in the Nassau County statute gave authorization for NCTPVA to have any involvement with the installation or operation of

---

[28] The actions of Nassau County and NCTPVA were not isolated actions nor were they the actions of "low-level" or "mid-level" employees. Rather, they were actions that involved dozens (if not more) people on many levels of authority – including the Executive Director of NCTPVA, the Nassau County Attorney, the Nassau County Legislature, and the Nassau County Executive. The behavior and actions of Nassau County and NCTPVA have continued for over a decade with successive Executive Directors, County Attorneys, County Legislatures, and County Executives all being responsible for its continuation and having actively or passively taken actions to continue the behavior and the RICO scheme.

those cameras. By nature, the lack of such authorization would include a lack of authorization for NCTPVA to enter into any contracts under which it contracted the corporate defendants to install and operate those cameras.

590.    Furthermore, the limited parameters of NCTPVA's authority set forth by state law grant no express or implied authority for NCTPVA to have any involvement with red light cameras beyond adjudicating liability for Notices of Liability.

591.    Combining these factors, (1) the contracts were illegal for lack of authorization to be entered into by any of the RICO defendants; (2) the installation of the cameras was illegal as it was not done in compliance with the state and county enabling statutes, and (3) the operation of the cameras was illegal as it was not done in compliance with the state and county enabling statutes.

592.    Nassau County and NCTPVA knew, and had reason to know, of these facts. Yet they chose to ignore and violate the statutes and to embark upon, as well as continue down, a path of illegal activity for financial gain – while creating an elaborate façade for the public which implied that they were acting in a legal manner.

593.    As also stated above, one purpose of taking the photographs and videos was for use at hearings. As corporate defendants Verra Mobility and ATS were contracted for the operation of the cameras, they were, as stated above, contracted for (1) the taking of the photographs and videos and (2) the securing of evidence to be used at the hearings.

594.    Verra Mobility and ATS are not government entities but are corporate for-profit entities. As such, in order to be retained for purposes of securing evidence for hearings, New York State law required said defendants to possess private investigator licenses issued by the New York State Department of State.

595.   As stated earlier, neither corporate defendant maintains such a license nor has either ever maintained such a license.

596.   As neither maintained the requisite license for securing evidence by means of their taking the photographs and videos via their operating the cameras, Verra Mobility and ATS were therefore illegally acting as unlicensed private investigators.

597.   Verra Mobility and ATS knew, and had reason to know, of the license requirement.

598.   Verra Mobility and ATS knew, and had reason to know, that neither had, nor ever had, the requisite license.

599.   Nassau County and NCTPVA knew, and had reason to know, of the license requirement.

600.   Nassau County and NCTPVA had ample opportunity to determine if either corporate defendant had the requisite license.

601.   Despite all RICO defendants knowing, and having reason to know, of the statutory license requirement and of the corporate defendants not having the required license, they all still willingly entered into the illegal contracts for financial gain.

602.   By entering into those contracts, all parties knew, and had reason to know, that the terms of those contracts required the corporate defendants to regularly commit misdemeanors.

603.   The illegal, unlicensed, and criminal actions of the corporate defendants were (and are) critical to the perpetuation of the RICO defendants' illegal scheme to defraud.

604.   As (1) Nassau County did not have authority to "contract out" the installation or operation of the cameras to private third parties; (2) NCTPVA did not have any authority for involvement in the installation or operation of the cameras; and (3) neither Verra Mobility nor ATS were authorized to install or operate the cameras; the contracts were illegal, the cameras were (and are) illegally installed and operated.

605.   As neither Verra Mobility nor ATS had the requisite license for operating the cameras for their intended purpose, for a second reason the cameras were (and are) illegally operated.

606.   As the installation and operation of the cameras was (and is) illegal, no photographs or video recordings taken or made by the cameras were (or are) legal.

607.   For the same reasons, the photographs and video recordings could not (and cannot) serve as the basis for issuing Notices of Liability. As such, all red light camera Notices issued in Nassau County were, and are, illegal.

608.   Additionally, as state law prohibited NCTPVA from issuing Notices, the issued Notices were, and are, illegal for a second reason.

609.   Nassau County, NCTPVA, Verra Mobility, and ATS knew, and had reason to know, all of this information. Yet they all entered into contracts for (1) the illegal installation of the cameras; (2) the illegal operation of the cameras; and (3) illegal use of the photographs and video recordings taken by the cameras to unlawfully issue unauthorized, illegal Notices (in the name of both Nassau County and NCTPVA to imply full legality of all actions) for the express purpose of defrauding the RICO Class members out of monies which they did not legally owe and were not legally required to pay.

610.   After taking the photographs and videos via their operation of the cameras, the corporate defendants electronically transmit those photographs and videos from the cameras to their computer servers. This constitutes wire transmission.

611.   Upon information and belief, the servers are located in Arizona, home of the corporate defendants. Thus there are interstate electronic transmissions thereby constituting interstate wire transmissions.

612.   By computer, employees of NCTPVA and whose place of employment is in Nassau

County, then access and review the photographs and videos. Use of the computers to access and view those photographs and videos involves more wire transmissions.

613.    As the employees are located in New York and are electronically accessing the videos and images stored by the corporate defendants on servers which, upon information and belief, are in Arizona, more interstate wire transmissions thus take place.

614.    After review of the photos and videos, NCTPVA employees determine whether or not Notices of Liability are to be issued.

615.    Upon determining that a Notice is to issue, the NCTPVA employees make electronic entries that send instructions to the corporate defendants to issue the Notice. This constitutes yet another wire transmission as well as, upon information and belief, an interstate wire transmission.

616.    Upon information and belief, once Notice issuance instructions are electronically entered in New York and transmitted to the corporate defendants, the Notices are prepared and printed by them.

617.    Once printed, for purposes of continuing the scheme, the Notices are then mailed to the intended targets of the scheme by being placed into the care and custody of the United States Postal Service for delivery.

618.    The Notices contain printed versions of two photographs. The Notices also provide the website address[29] of "DriveSafelyInNassau.com"[30] as the internet site which Notice recipients can electronically visit and log into so as to see the photographs, the video, and

---

[29] A website address is also called a web address or a URL. It is also referred to as the domain name of the website.

[30] The section of a web address after the period is known as the top-level domain portion of the domain name and is also known as a domain extension, domain suffix, and URL extension. This portion of a website's domain name identifies what type of website it is as well as the type of entity it represents. As a ".com" designated website, "DriveSafelyInNassau.com" is identified as a commercial website as opposed to a government website (which would have a ".gov" domain suffix).

additional information.[31]

619. Anyone who types in that website address is automatically redirected to another website. The website to which visitors are taken is yet another commercial website as it also has a ".com" domain suffix designation.

620. The website to which visitors are automatically redirected has the domain name "violationinfo.com."[32]

621. By providing recipients instructions on how to electronically access the servers on which the photographs, videos, and other information are stored for viewing purposes, the RICO defendants are encouraging use of the internet to access the images, videos, and website and thereby urging, and attempting to cause, additional wire communications to occur in furtherance of the fraud scheme.

622. Per instructions provided on the Notices, aside from going to the office of NCTPVA to make payment in person, those wishing to pay the demanded amount have three options.

623. Under one option, the recipient can mail a payment to Nassau County. In this manner, the fraud scheme would once again utilize the United States Postal Service. The payment can be made by check or money order payable to Nassau County.

---

[31] By registering ownership of this site by proxy, the identity of its owner is intentionally hidden from the public.

[32] The bottom of the website's home page has a notice that the website is copyrighted by Verra Mobility. Next to that statement are links entitled "Privacy Policy," "Terms and Conditions," "Cookies Policy," and "Accessibility." Clicking the "Privacy Policy" link opens a page with the web address of www.verramobility.com/privacy-policy which bears a notice that the site is copyrighted by Verra Mobility. Clicking the "Terms and Conditions" link opens a page with the web address of www.violationinfo.com/TermsAndConditions.aspx which bears the identical copyright statement as on the homepage. Clicking the "Cookies Policy" link opens a page with the web address of www.verramobility.com/cookies-policy which bears a notice that the site is copyrighted by Verra Mobility. Clicking the "Accessibility" link opens a page with the web address of www.verramobility.com/accesibility which bears a notice that the site is copyrighted by Verra Mobility.

Although the violationinfo.com website homepage and its "Terms and Conditions" linked page identify the website as being copyrighted by Verra Mobility, the violationinfo.com web address is officially owned by, and registered in the name of, ATS. The other linked Verra Mobility identified pages are officially registered by proxy so as to intentionally hide the ownership information from the public.

**624.**    Under the second option, payment can be made electronically. Notice recipients can electronically visit the "DriveSafelyInNassau.com" website and, after automatically being redirected to the corporate defendant owned "violationinfo.com" website, then click on that website's pay option and electronically make payment to the corporate defendants by providing their banking or credit/debit card information.

**625.**    The third option for making payment is by calling a toll free number listed on the Notice and making payment over the phone. Upon information and belief, the telephone number connects callers to a call center operated by the corporate defendants. Payment made via the telephone method requires that Notice recipients provide their banking information or their credit/debit card information to the corporate defendants.

**626.**    Payments made online or by phone require yet another use of wire communications as well as, upon information and belief, interstate wire communications.

**627.**    Furthermore, payments made electronically or over the telephone would be more interstate commerce. Even if payment of statutory penalties and "Fees" would not count as commerce, the additional fee charged by the corporate defendants for making the payment electronically or by telephone would qualify as commerce. The very name given to that "fee" is a "convenience/service fee" thereby indicating that it is a fee for a service. Thus any payments made by either of these two methods by persons not in Arizona would constitute interstate commerce.

**628.**    Regardless of which option is used, when payment is made by electronic check (via the online or telephone methods) or by credit/debit card (via the online, telephone, or in-person methods), the payment is completed by electronically communicating with banking institutions. Thus wire communication is again used in committing the fraud.

629.    As regarding any recipients who dispute the received Notice rather than simply pay the demanded amount, there were other mail and/or wire aspects to the defendants' fraudulent scheme.

630.    Those choosing to dispute the Notices are required to do so by submitting their dispute to Nassau County by mail thereby once again the scheme requires use of the United States Postal Service.

631.    Nassau County and NCTPVA then send a letter to the disputing Notice recipient of the date and time at which the hearing on their dispute would take place. Sending this letter uses the United States Postal Service yet again.

632.    In this letter, Nassau County and NCTPVA encourage the disputing Notice recipient to visit the "DriveSafelyInNassau.com" website. By doing so, Nassau County and NCTPVA encourage additional wire usage in the perpetration of its scheme.

633.    On the hearing date, the Nassau County and NCTPVA employed prosecuting attorney appearing on their behalf moves for submission of the photographs and video recording into evidence. The photos are displayed to the court on a monitor for the court and the video recording is played on that same monitor.

634.    To display the photographs and play the video, Nassau County and NCTPVA, through their prosecuting attorney employee, yet again use wire communications so as to electronically access the photographs and video recording from the corporate defendants' computer servers.

635.    At the conclusion of the hearings, decisions are rendered by the Nassau County and NCTPVA employed judicial hearing officers. If the disputing person/entity is found liable, they must pay the penalty and all additionally imposed fees such as the Public

Safety Fee and Driver Responsibility Fee. If the ruling determines the person/entity to not be liable, although they do not have to pay the fine, they are still responsible for paying the additionally imposed Driver Responsibility Fee (since 2011) and Public Safety Fee (since 2017). Payment can be made immediately, in person and can be made via credit card or debit card. Such payments made would once again involve wire communications being used to perpetrate the scheme.

636.    For each person/entity who did not dispute the Notice they received and simply paid the demanded monies, perpetration of the scheme by the Nassau County, NCTPVA, Verra Mobility, and ATS involved, at the very least, one use of the U.S. Postal Service in violation of 18 U.S.C. § 1341 and three uses of wire communications in violation of 18 U.S.C. § 1343 (communications which, upon information and belief were also interstate in nature). When making payment, unless made in person with a money order or a physical check, at least one more use of the U.S. Postal Service or one more wire communication is required.

637.    For every Notice recipient who disputed the Notice they received, perpetration of the scheme involved, at a bare minimum, at least three uses of the U.S. Postal Service in violation of 18 U.S.C. § 1341 and at least four uses of wire communications in violation of 18 U.S.C. § 1343 (communications which, upon information and belief were also interstate in nature). When making payment after the hearing (regardless of whether the penalty and any additional "Fees" or just the additional "Fees" need be paid) unless payment was made with a money order or a physical check, at least one more wire communication is required.

638.    _Predicate racketeering acts as against plaintiff:_ The actions taken by Nassau County,

NCTPVA, Verra Mobility, and ATS against plaintiff constitute multiple racketeering actions within a ten year period.

639.    The photographs and video taken by the illegally installed and operated camera (installed and operated pursuant to illegal contracts) were taken on June 15, 2022. On or about that date the photographs and video were transmitted from New York to the corporate defendants' servers. This transmission is one violation of 18 U.S.C. § 1343 and constitutes one racketeering action.

640.    At some point thereafter, an employee of NCTPVA reviewed the photographs and video – a review which could only be done by electronically accessing the corporate defendants' computer servers. That electronic access and review constitutes a second violation of 18 U.S.C. § 1343 and a second racketeering action.

641.    After reviewing the photographs and video, the NCTPVA employee electronically sent instructions to the corporate defendants, instructing the corporate defendants to prepare, print, and mail a Notice of Liability to plaintiff. Electronically sending those instructions constitutes a third violation of 18 U.S.C. § 1343 and a third racketeering action.

642.    The Notice of Liability was generated on July 12, 2022. On or about that date it was placed in the custody of the U.S. Postal Service and mailed to plaintiff. This constituted a violation of 18 U.S.C. § 1341 and a fourth racketeering action.

643.    In order to dispute the Notice, plaintiff was required to submit her dispute to Nassau County by mail. This was done on or about July 20, 2022. As the dispute instructions were provided by the RICO defendants, by their requiring plaintiff to make her dispute solely via use of the U.S. Postal Service, the RICO defendants forced a second violation of 18 U.S.C. § 1341 to occur, thus causing a fifth racketeering action to take place.

644. Upon receiving plaintiff's dispute and hearing request, Nassau County and NCTPVA scheduled a hearing. They then used the U.S. Postal Service to mail a letter to plaintiff informing her of the date and time of the hearing. By mailing that letter, dated August 9, 2022, Nassau County and NCTPVA violated 18 U.S.C. § 1341 and committed the sixth racketeering action in the matter.

645. Plaintiff's hearing took place on January 31, 2023. At the hearing, the prosecuting attorney employed by, and appearing on behalf of, Nassau County and NCTPVA moved for submission of the illegally taken photos and video into evidence and displayed the photos and played the video on a monitor for the court. In order to display the photos and play the video, the Nassau County and NCTPVA attorney electronically accessed the corporate defendants' computer servers. That electronic access constituted a fourth violation of 18 U.S.C. § 1343 and the seventh racketeering action in this matter.

646. On January 31, 2023, immediately after the hearing and the ruling against plaintiff thereat (a ruling predicated upon the illegal camera, the illegally and criminally taken photos and video, and the issuance of the illegal Notice), plaintiff made an in-person payment via a credit card. To process the payment – and thereby complete the fraud perpetrated upon plaintiff by illegally obtaining the funds from her via that fraudulent scheme – wires were used to transmit and receive information to electronically process the payment. Doing so constituted a fifth violation of 18 U.S.C. § 1343 and an eighth racketeering action.

647. The eight racketeering actions perpetrated against plaintiff all occurred in less than eight months and thus well within the ten year time frame required by statute.

648. This scheme, as perpetuated against plaintiff and which injured her, was not an isolated incident. The scheme as described in detail above both in generality, and as used to injure

plaintiff, has been continuously and regularly perpetrated by the RICO defendants since

2009 and continues through the present day. This continuous scheme has injured

hundreds of thousands, if not millions, of class members and continues to cause injury.

649.    The financial injury suffered by the victims of this scheme financially benefitted the

RICO defendants. All monies paid as the Public Safety Fee and Driver Responsibility Fee

filled the coffers of Nassau County (and by extension, NCTPVA). All monies charged,

and received by, the corporate defendants as "convenience/service" fees for payments

made over the internet or telephone went into the coffers of the corporate defendants. The

rest of the monies fraudulently received from this scheme was shared by the RICO

defendants with, upon information and belief, sixty-five percent (65%) going to Nassau

County (and by extension NCTPVA) and the other thirty-five percent (35%) going to

Verra Mobility and ATS.

650.    All members of the Newer Subclass have been victims of the RICO defendants'

perpetration of this scheme within the four years immediately preceding the filing of this

action. As such the claims of this Subclass are timely.

651.    The RICO claim put forth by the members of the Older Subclass is also timely. While the

statutory time period for a RICO claim is four years, there is an exception for claims that

could not be discovered within that time frame with due diligence.

652.    As regarding these claims for the members of the Older Subclass, the actual financial

damage suffered by each Subclass member (exclusive of damages for violations of their

rights, commission of torts, and punitive damages) is relatively small. The actual damage

amount to each Class member pales in comparison to the amount it would have cost any

Class member to retain counsel to delve into the depth of research necessary to uncover

the RICO scheme and its details. As such, the fraud scheme financially incentivized the members of the Older Subclass to simply accept and suffer the financial damage consequences of the scheme rather than investigate and uncover the scheme's existence.

653. Furthermore, the scheme was also perpetuated in such a way as to imply that all actions taken were taken solely by government entities and legal in nature.

654. Nassau County, NCTPVA, Verra Mobility, and ATS intentionally led the RICO Class members to believe that all red light cameras in Nassau County were legally installed and operated in compliance with state and county statutes when in fact they were not.[33]

655. Nothing in the RICO defendants' actions gave the RICO Class members even a hint that the cameras were not installed or operated by Nassau County (, as required by the state statute, or by the Department of Public Works as specifically required by the county statute) but were illegally installed by, and were illegally and criminally operated by, private third-party for-profit corporations (under illegal, statutorily unauthorized contracts) and without the license required by New York State law.

656. The Notices imply only government involvement and imply that everything was legal. The top of the Notices bear the name and County Seal of Nassau County, NCTPVA's name, and an NCTPVA address. The Notices instruct that disputes be mailed to Nassau County at a provided address. The instructions state that payments can be made to Nassau County and should be mailed to that same address or, alternatively, they can be made in person to NCTPVA at its office. Payment instructions state that checks or money orders are to be made payable to Nassau County.

657. The only non-government involvement evident on the Notices are the references to the

---

[33] Even if the enabling statutes are deemed unconstitutional, the actions taken under the belief that they were constitutional were not taken in compliance with the authorizations set forth in those statutes.

"DriveSafelyInNassau.com" website address and the telephone number provided for payment by phone.

658. Unless a recipient is knowledgeable about website domain suffixes, they would not be aware that this was a commercial, not a government website.[34] Further, no indication was given that visiting that website would automatically redirect to the corporate defendants' "violationinfo.com" website address.

659. As for the payment telephone number, no indication is given that calls connect to a call center operated by the corporate defendants rather than to a Nassau County or NCTPVA office or employee.

660. Equally as important is that the corporate defendants' names and shared address are not used or printed anywhere on the Notice. That intentional absence in conjunction with the numerous uses of Nassau County's name, County Seal, and address and NCTPVA's name and address speaks volumes to the intentional implication of the Notices, and everything related to them, being done legally, and done solely by, government entities.

661. That the hearings are (1) done by NCTPVA, (2) at the office of NCTPVA, (3) with the allegations against Notice recipients being levied by a prosecuting attorney employed by, and appearing on behalf of, Nassau County and NCTPVA, and (4) presided over by a judicial hearing officer employed by Nassau County and NCTPVA, only further cements the implication of all actions involved in the issuance and prosecution of the Notices as being legal and solely handled by government entities and officials.

662. Taking all of these factors together, everything is intentionally implied as having been

---

[34] The commercial nature of the website address as indicated by the ".com" suffix is insufficient for indicating that there was non-governmental involvement. Nothing prohibits a government entity from utilizing a ".com" website as opposed to a ".gov" website.

done by the government – inclusive of the installation and operation of the red light cameras. At the very least, the actions are all taken under an implied color of law.

663.    All RICO Class members were intentionally led to believe that the actions taken against them only involved government entities. The Notices were intentionally crafted to conceal the corporate defendants' involvement and imply only government involvement. This was intentionally done to enforce the belief that the Notices, and everything related to them (prior to, and subsequent to, their issuance), were legal actions taken by the government.

664.    The great effort exerted to create the façade of government-only involvement and to intentionally hide the involvement of the non-government corporate defendants was intended to impress upon the RICO targets the concept that "you can't fight City Hall." This enforced mindset, and the implications of it, was intentionally designed to dissuade the RICO victims from investigating the truth of what was actually taking place and dissuading them from uncovering the RICO scheme and all the underlying illegalities.

665.    By imposing and re-enforcing the belief that the actions taken were all legal and solely taken by government entities, Nassau County, NCTPVA, Verra Mobility, and ATS intentionally dissuaded the RICO Class members from spending monies to uncover the truth, especially as the monies required to do so would far exceed the amount that each Class member would lose to the fraudulent scheme.

666.    The complexity of the scheme and the hidden information could not easily be uncovered by the average person. Rather it required extensive research by counsel to a degree far beyond mere due diligence of the average person.

667.    Further, the financial cost of retaining counsel to perform due diligence and research to

the extent required to uncover the scheme was vastly out-of-proportion to the amount that each Class member would individually suffer as a loss from the scheme.

668. As the scheme could not be easily uncovered and as the cost of retaining counsel to perform a level of research well beyond simple due diligence was cost prohibitive for each individual Class member, the scheme can be said to have intentionally created an exception to the statutory time frame for RICO claims by many of its victims.

669. For those reasons, the RICO victims comprising the Older Subclass should not be barred from pursuing such claims. Their claims should be deemed valid under the exception.

670. Thus for the RICO violations, under 18 U.S.C. § 1964(c), plaintiff, along with all members of the Newer Subclass as well as the members of the Older Subclass should be entitled to recover three times their actual damages as well as the cost of this litigation and reasonable attorneys' fees from Nassau County, NCTPVA, Verra Mobility, and ATS.

## AS AND FOR A THIRTY-SEVENTH CAUSE OF ACTION
### RICO
*As to defendants Verra Mobility, ATS, Nassau County, and NCTPVA*
*on behalf of The Older Subclass and The Newer Subclass*

671. Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "670" as though they are fully set forth herein.

672. As described and detailed above, Nassau County, NCTPVA, Verra Mobility, and ATS all took actions in violation of the RICO Act as enumerated in 18 U.S.C. § 1962(c).

673. The RICO violations were actions which they knowingly and willingly took as part of an unlawful agreed upon conspiracy in violation of 18 U.S.C. § 1962(d).

674. The conspiracy commenced at least as early as 2009, and remains ongoing.

675. The purpose of the conspiracy was to defraud plaintiff and all RICO Class members of money.

[108]

676.    As argued throughout this complaint, Nassau County, NCTPVA, Verra Mobility, and ATS were willing to violate numerous federal, state and county statutes and willing to violate numerous federal and state constitutional rights in order to accomplish the fraud.

677.    Not only has each named RICO defendant committed at least one overt act in furtherance of such conspiracy but the conspiracy was set forth in written contracts which detailed at least some of the conspiratorial acts which were to be taken – including regular and repeated criminal activity to be taken by the corporate defendants.

678.    Nassau County, NCTPVA, Verra Mobility, and ATS willingly conspired to contract for, and did contract for, the unauthorized and illegal installation and unauthorized and illegal operation of red light cameras in Nassau County.

679.    Nassau County, NCTPVA, Verra Mobility, and ATS willingly conspired to contract for, and did contract for, Verra Mobility and ATS to illegally, and criminally, operate as unlicensed private investigators in the State of New York.

680.    Nassau County, NCTPVA, Verra Mobility, and ATS willingly conspired to contract for, and did contract for, the illegal use of wire communication for purposes of committing the fraud.

681.    Nassau County, NCTPVA, Verra Mobility, and ATS conspired to use the U.S. Postal Service to further commit the fraud. Upon information and belief, the conspiracy for using the Postal Service was set forth under terms of contracts between the RICO defendants.

682.    Nassau County, NCTPVA, Verra Mobility, and ATS conspired to force targets of their fraud to make additional use of the Postal Service as part of the scheme.

683.    Nassau County, NCTPVA, Verra Mobility, and ATS conspired together to encourage the

targets of their fraud to initiate additional wire communications.

**684.** As described above Nassau County, NCTPVA, Verra Mobility, and ATS operated as an association-in-fact enterprise. [35]

**685.** As described earlier, the activities of the Enterprise engage in and/or affect interstate commerce.

**686.** Nassau County, NCTPVA, Verra Mobility, and ATS directly or indirectly conducted or participated in the conduct of the affairs of the Enterprise.

**687.** The fraud committed by repeated use of wire communication and the U.S. Postal Service for conducting the affairs of the Enterprise constitute a pattern of racketeering activity by the Enterprise.

**688.** The conduct of Nassau County, NCTPVA, Verra Mobility, and ATS constitutes a conspiracy to violate 18 U.S.C. § 1962(c) and a conspiracy to do so constitutes a violation of 18 U.S.C. § 1962(d).

**689.** As a direct and proximate result of the conspiracy by and between Nassau County, NCTPVA, Verra Mobility, and ATS, the racketeering activity of the Enterprise, the acts taken in furtherance of the conspiracy, and the violation of 18 U.S.C. § 1962(d), plaintiff has been harmed. That harm was foreseeable, and reasonably foreseeable, by Nassau County, NCTPVA, Verra Mobility, and ATS as a consequence of their actions.

**690.** The identical harm has been suffered by all members of The Newer Subclass and was foreseeable, and reasonably foreseeable, by Nassau County, NCTPVA, Verra Mobility,

---

[35] As argued earlier, even if Nassau County and NCTPVA are not deemed to be liable for RICO violations or capable of being any part of an association-in-fact or enterprise under the RICO statutes, Verra Mobility and ATS, both individually and together, qualify as both an association-in-fact and an enterprise for RICO purposes and can be held liable under the RICO statutes. Should it be determined that Nassau County and NCTPVA are not part of such an enterprise nor liable for RICO violations, the claims set forth in this, and the previous, cause of action still apply to the association-in-fact and enterprise consisting of the corporate defendants.

and ATS as a consequence of their actions.

691.    The identical harm has also been suffered by all members of The Older Subclass and the harm done to them was foreseeable, and reasonably foreseeable, by Nassau County, NCTPVA, Verra Mobility, and ATS as a consequence of their actions.

692.    For their conspiracy in violation of 18 U.S.C. § 1962(d), Nassau County, NCTPVA, Verra Mobility, and ATS should be liable to plaintiff and all members of The Newer Subclass for three times their actual damages as well as the cost of this litigation and reasonable attorneys' fees.

693.    Furthermore, the statute of limitations should be tolled for the members of The Older Subclass because of (1) the extent to which Nassau County, NCTPVA, Verra Mobility, and ATS went in order to create the illusion that all actions taken by them were legal and done solely by government entities and (2) that the individual recipients of Notices of Liability would find the level of due diligence and research necessary to uncover the scheme cost prohibitive (especially in comparison to their loss under the fraud). As such, the claims for The Older Subclass should be deemed timely and Nassau County, NCTPVA, Verra Mobility, and ATS should therefore also be held liable to all members of The Older Subclass for three times their actual damages as well as the cost of this litigation and reasonable attorneys' fees.

### AS AND FOR A THIRTY-EIGHTH CAUSE OF ACTION
### ATTORNEY FEES
*As to Nassau County, NCTPVA, Verra Mobility, and ATS*
*on behalf of The Ticketed Class, The Paying Class, and The RICO Class*

694.    Plaintiff repeats, realleges, and incorporates by reference paragraphs "1" through "693" as though they are fully set forth herein.

695.    The actions of Nassau County, NCTPVA, Verra Mobility, and ATS were tortious, illegal,

intentional, criminal, and unconstitutional under both the state and federal constitutions.

696.    Corporate defendants Verra Mobility and ATS were interested in increasing their profits and did not care if they broke the law and caused injury in the process.

697.    Verra Mobility and ATS were not only willing to violate laws but were even willing to enter into contracts which required them to repeatedly commit misdemeanors by acting as unlicensed private investigators. The corporate defendants knew, and had reason to know, that they were not licensed as private investigators and knew and had reason to know that acting in such a manner – including contracting for commission of criminal acts – was illegal. Yet they none-the-less took those actions for financial profit without care or concern for the injury caused to those at whose expense they were unjustly and illegally enriched. For their actions, corporate defendants Verra Mobility and ATS should be held responsible for attorneys' fees in this action.

698.    Nassau County and NCTPVA also did not care if they injured anyone or any entity by means of their actions.

699.    The Nassau County Legislature specifically and expressly gave authority for installation and operation of the red light cameras in Nassau County to the Department of Public Works – a completely separate entity from NCTPVA. Yet NCTPVA, without any authorization, decided to involve itself in their installation and operation – thereby breaking county law and exceeding the parameters of the authority expressly granted to it by the New York State Legislature.

700.    For well over a decade, Nassau County – via dozens of elected leaders in both its executive and legislative branches, its attorneys, and its appointed agency heads – have turned a "blind eye" to NCTPVA's blatant, unauthorized, illegal actions.

**701.** Going even further, to cover up all the illegal actions being taken, Nassau County repeatedly lied to the federal government, the state government, and to the public at large by falsely claiming that the county was complying with the federal guidelines for red light camera programs.

**702.** Together, Nassau County and NCTPVA then used their government identities and the implied "weight" of those identities to abuse process, commit fraud, and to create and enforce official policies and procedures that deny constitutional rights. All this was done for the sole and express purpose of unjustly enriching their coffers.

**703.** Nassau County even intentionally crafted and enacted local statutes and ordinances which were unconstitutional under the state and federal constitutions in order to line its coffers.

**704.** All actions taken by Nassau County and NCTPVA were taken under color of law.

**705.** Plaintiff and all Class and Subclass members suffered their injuries because Nassau County and NCTPVA acted illegally, under color of law, including actions intentionally taken for the purpose of depriving the class members of their due process rights.

**706.** By acting under of color of law and violating 42 U.S.C. § 1983, Nassau County and NCTPVA are liable for attorneys' fees pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of herself and all others similarly situated, prays for this Court to enter an Order:

A.    Certifying this case as a class action under Rule 23 of the Federal Rules of Civil Procedure and appointing plaintiff and her counsel to represent the Classes and Subclasses;

B.    Declaring VTL § 1111-b unconstitutional and that it has been unconstitutional

[113]

since its enactment;

C.      Declaring Title 72 of the Administrative Code of Nassau County unconstitutional and that it has been unconstitutional since its enactment;

D.      Declaring the Nassau County ordinances imposing the Driver Responsibility Fee unconstitutional and that they have been since their enactment;

E.      Declaring the Nassau County statutes imposing the Public Safety Fee unconstitutional and that they have been since their enactment;

F.      Declaring that Nassau County, NCTPVA, Verra Mobility, and ATS committed fraud against the members of The Ticketed Class;

G.      Declaring that Nassau County, NCTPVA, Verra Mobility, and ATS committed fraud against the members of The Paying Class;

H.      Declaring that Nassau County, NCTPVA, Verra Mobility, and ATS invaded the privacy of the members of The Ticketed Class;

I.      Declaring that Nassau County, NCTPVA, Verra Mobility, and ATS were unjustly enriched at the expense of, and to the financial detriment of, the members of The Paying Class;

J.      Declaring that Nassau County and NCTPVA denied federal due process to the members of The Disputing Subclass;

K.      Declaring that Nassau County and NCTPVA denied state due process to the members of The Disputing Subclass;

L.      Declaring that Nassau County and NCTPVA abused process as against the members of The Ticketed Class;

M.      Declaring that Nassau County and NCTPVA abused process as against the

members of The Paying Class;

N.      Declaring that Nassau County, NCTPVA, Verra Mobility, and ATS acted in concert of action as against the members of The Ticketed Class;

O.      Declaring that Nassau County, NCTPVA, Verra Mobility, and ATS acted in concert of action as against the members of The Paying Class;

P.      Declaring that Nassau County and NCTPVA denied the state constitutional guarantee of equal protection to the members of The Disputing Subclass;

Q.      Declaring that Nassau County and NCTPVA denied the federal constitution guarantee of equal protection to the members of The Disputing Subclass;

R.      Declaring that Nassau County, NCTPVA, Verra Mobility, and ATS injured The RICO Class by committing racketeering activity in violation of the RICO statutes;

S.      Declaring that Nassau County, NCTPVA, Verra Mobility, and ATS conspired to violate the RICO statutes thereby injuring The RICO Class;

T.      Declaring that Nassau County and NCTPVA took their improper, illegal, tortious actions under color of law;

U.      Requiring Nassau County, NCTPVA, Verra Mobility, and ATS to disgorge all amounts by which they were unjustly enriched;

V.      Awarding plaintiff, the Classes, and the Subclasses actual, compensatory, punitive, and treble damages in amounts to be determined by a jury;

W.      Awarding pre-judgment and post-judgment interest on all amounts awarded;

X.      Awarding plaintiff, the Classes, and the Subclasses their reasonable attorneys' fees and expenses and costs of suit;

Y.      Declaring that Verra Mobility and ATS have, for years, illegally operated as

unlicensed private investigators in New York State and require them to pay restitution to plaintiff, the Classes, and the Subclasses as the victims of those criminal actions;

Z.      Declaring the red light camera program in Nassau County to be illegal and unconstitutional as currently operated and issuing an injunction prohibiting the continued operation and enforcement of such program unless and until it is operated in a manner consistent with all applicable federal, state, and county laws, the federal and state constitutions, and the federal red light program guidelines;

AA.     Issuing an injunction which prohibits Nassau County (inclusive of all its agencies and political subdivisions) and NCTPVA from contracting with the corporate defendants (inclusive of any and all wholly or partially owned subsidiaries) for the use of any type of traffic cameras for any purpose unless and until (1) such camera program complies with all applicable federal, state, and county laws, the federal and state constitutions, and the federal guidelines for operation of such a program and (2) the corporate defendants comply with all applicable federal, state, and county laws inclusive of maintaining all requisite licenses;

BB.     Awarding all such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: April 12, 2024
      Bayside, New York

**LAW OFFICE OF BENJAMIN J. FISCHER, PLLC**

Benjamin J. Fischer, Esq.
213-37 39th Avenue
Suite 147
Bayside, NY 11361
Tel: (718) 253-5997
Fax: (718) 253-4748
Email: BenjaminJFischerEsq@BJFLawOffice.com

**LAW OFFICE OF LUIS A. PAGAN**

Luis A. Pagan
113 Griffing Avenue
Riverhead, NY 11901
Tel: (631) 369-7373
Fax: (631) 369-2838
Email: Paganlawgroup@optonline.net

***Attorneys for Plaintiff and Proposed Class Counsel***

[1]