UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
**CAROL S. CYMBLER**, on behalf of herself and all            :
others similarly situated,                                    :
                                                              :
                                        Plaintiff,            :
                                                              :
                                                              :   **MEMORANDUM DECISION AND
                     – against –                              :   ORDER**
                                                              :
                                                              :   24-CV-2792 (AMD) (SIL)
**NEW YORK STATE, NASSAU COUNTY,**                            :
**NASSAU COUNTY TRAFFIC AND PARKING**                         :
**VIOLATIONS AGENCY, VERRA MOBILITY**                         :
**CORPORATION, AMERICAN TRAFFIC**                             :
**SOLUTIONS, INC.,**                                          :
                                                              :
                                        Defendants.           :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brought this action on behalf of herself and other class members against

New York State, Nassau County, Nassau County Traffic and Parking Violations Agency

("NCTPVA"), Verra Mobility Corporation and American Traffic Solutions, Inc.[1]  She claims

that the defendants violated the United States and New York constitutions by installing and

operating red light cameras in Nassau County.  The plaintiff also brings claims for fraud,

invasion of privacy, unjust enrichment, abuse of process, concert of action and racketeering.

Nassau County and NCTPVA (the "Nassau defendants") move to dismiss the complaint under

Federal Rule of Civil Procedure 12(c) for lack of standing, failure to state a claim and because

NCTPVA is not a suable entity.  Verra Mobility Corporation and American Traffic Solutions,

Inc. (the "corporate defendants") move to dismiss the complaint under Federal Rules of Civil

---

[1] The plaintiff voluntarily dismissed her claims against New York State.  (ECF No. 31.)  Although she did
not specify which claims she was withdrawing, the Court construes her filing to dismiss the First,
Second, Third and Fourth causes of action, which challenge the constitutionality of a New York State
statute, VTL § 1111-b.

Procedure 12(b)(1) and 12(b)(6) for lack of standing and failure to state a claim. For the reasons that follow, the Court grants the defendants' motions to dismiss the federal claims and declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

## BACKGROUND[2]

### I.    Statutory Background

In 2009, New York amended the Vehicle and Traffic Law ("VTL") to add VTL § 1111-b, which authorized counties, including Nassau County, to install and operate "traffic-control signal photo violation-monitoring devices" — red light cameras — at intersections throughout the county.[3] (ECF No. 1 ¶¶ 20–21.) VTL § 1111-b(a)(1) "authorized and empowered" Nassau County "to adopt and amend a local law or ordinance establishing" a red light camera program. (*Id.* ¶ 22.) To implement the program, the Nassau County legislature passed Local Law 12-2009 on May 18, 2008, which became effective on June 18, 2009, and added Title 72 to the Miscellaneous Laws of Nassau County. (*Id.*) Title 72 § 1(a) provides that the Department of Public Works "shall be authorized to install traffic-control signal photo violation-monitoring

---

[2] The Court considers the complaint and the parties' briefing. The Court also takes judicial notice of the Nassau defendants' exhibits A and B, which are resolutions and ordinances passed by the Nassau County Legislature. (ECF Nos. 36-3, 36-4.) *See Lewis v. Livingston Cnty. Ctr. for Nursing & Rehab.*, 30 F. Supp. 3d 196, 203 (W.D.N.Y. 2014) (taking judicial notice of county resolution). However, the Court does not consider the corporate defendants' exhibit A, which is a transcript of the plaintiff's January 31, 2023 hearing before the NCTPVA. (ECF No. 35-3.) *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (the "paraphrasing of certain events" at a hearing does not incorporate the hearing transcripts by reference into a complaint), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). The Court also considers documents from other cases: exhibits A and B, which the plaintiff submitted with her opposition to the corporate defendants' motion (ECF Nos. 38-2, 38-3), and exhibits A–D, which she submitted with her opposition to the Nassau defendants' motion (ECF Nos. 39-2, 39-3, 39-4, 39-5). *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings."). The Court does not consider plaintiff's exhibit E, which is not mentioned in the complaint or incorporated by reference. (ECF No. 39-6.) *Id.* at 773.

[3] VTL § 1111-b was supposed to expire in December 2014, but the state extended the expiration date. (ECF No. 1 ¶ 21.) At first, the legislature authorized red light cameras for 50 intersections, and then for 100 intersections. (*Id.* ¶ 21 n.5.)

devices and to operate such devices at no more than fifty intersections within and under the jurisdiction of the County at one time." (*Id.* ¶ 25.)

Under VTL § 1111-b(a)(1), Nassau County was to install and operate the red light cameras. (*Id.* ¶ 26.) Similarly, Title 72 placed responsibility for the installation and operation of red light cameras on the county's Department of Public Works. (*Id.* ¶ 27.) According to the plaintiff, neither VTL § 1111-b(a)(1) nor Title 72 explicitly or implicitly authorized the county or the Department of Public Works to contract out the installation or operation to any other agencies or third-party vendors. (*Id.* ¶¶ 26–27.) The plaintiff alleges that Nassau County "intentionally ignored the limitations contained in the explicit statutory authorizations set forth in VTL § 1111-b(a)(1) and Title 72," because the Department of Public Works' only involvement with the program was to assist in selecting locations for the installation of these cameras. (*Id.* ¶¶ 28–29.) Instead, the plaintiff says, the NCTPVA "involved itself with the installation and operation of the red light cameras in Nassau County" by contracting with the corporate defendants to rent the red light cameras. (*Id.* ¶¶ 30–31.) The plaintiff maintains that the contracts violated VTL § 1111-b(a)(1) and Title 72, because they provided that the corporate defendants were responsible for installing, operating, and maintaining the red light cameras. (*Id.* ¶ 32.)

When a red light camera captures a driver violating red light laws, NCTPVA mails the registered owner of the vehicle a notice of liability, which includes a fine. (*Id.* ¶ 33; *see also* ECF No. 1-1 at 2.) The owner can pay the fine in four different ways: (1) in person at NCTPVA's office, (2) by mail with a check or money order made out to Nassau County and sent to Nassau County (not NCTPVA), (3) calling a call center run by the corporate defendants, or (4) paying the corporate defendants electronically through a commercial website. (ECF No. 1 ¶ 35.)

An owner who wants to contest the violation can request a hearing by completing a form attached to the violation notice and mailing it to Nassau County, not NCTPVA.  (*Id.* ¶ 36; *see also* ECF No. 1-1 at 3.)  A hearing is then scheduled before an officer employed by Nassau County and NCTPVA.  (ECF No. 1 ¶ 36.)  If the officer upholds the violation, the driver pays NCTPVA directly, at its office.  (*Id.* ¶ 37.)  If the officer dismisses the notice, the owner still has to pay NCTPVA fees, which are imposed by Nassau County.  (*Id.* ¶ 38.)

## II.    Factual Background

The plaintiff concedes that she violated the red light law.  (*Id.* ¶ 39.)  At about 12:20 p.m. on June 15, 2022, she ran the red light at Old Country Road and South Oyster Bay Road.  (*Id.* ¶¶ 41–42.)  The red light camera, which was installed, operated and maintained by the corporate defendants pursuant to contracts with Nassau County and NCTPVA (*id.* ¶ 43), captured the violation in video and still images.  (*Id.* ¶ 40.)  27 days later, the plaintiff received a notice of liability dated July 1, 2022.[4]  (*Id.* ¶¶ 39, 44.)  The notice stated that the plaintiff owed $150, which included $50 in fines, a $45 "Driver Responsibility Fee" and a $55 "Public Safety Fee." (*Id.* ¶ 45.)  According to the notice, the plaintiff could pay the $150, as described above, or challenge the ticket and request a hearing by August 23, 2022.  (*Id.* ¶¶ 46–51.)

The plaintiff completed the hearing form and mailed it to Nassau County.  (*Id.* ¶ 52.)  She received a response, dated August 9, 2022, advising her that the hearing would take place on January 31, 2023.  (*Id.* ¶ 53.)  On that day, the plaintiff and her lawyer[5] appeared for the hearing at the NCTPVA offices; a Nassau County and NCTPVA attorney appeared for the county, and an officer from Nassau County and NCTPVA presided.  (*Id.* ¶ 54.)  Nassau County and

---

[4] The ticket number was 1692202357250.  (*Id.* ¶ 39.)

[5] Counsel in this action also represented the plaintiff at the hearing.

NCTPVA presented evidence, including the red light camera photographs and video recording, and a certificate by an NCTPVA technician. (*Id.* ¶ 55.) The plaintiff now objects to the admission of the photographs and video recording, because of the "unconstitutionality of the enacting statutes." (*Id.* ¶ 56.) Even if the statutes were constitutional, the plaintiff argues, the red light camera was "unauthorized and illegal" because it "was not installed or operated in compliance with the state and county statutes." (*Id.* ¶ 57.) The plaintiff also alleges that the camera's certificate "failed to meet the statutory requirements for admission as it conflicts with plaintiff's constitutional rights." (*Id.* ¶ 58.)[6]

The hearing officer ruled against the plaintiff and upheld the citation. (*Id.* ¶ 60.) The plaintiff paid the entire $150 fine by credit card at the NCTPVA offices. (*Id.* ¶ 61.) She did not appeal the officer's decision. (*See* ECF No. 35-1 at 6.)

## III.    Procedural History

On April 15, 2024, the plaintiff brought this action on behalf of herself and similarly situated drivers. She alleges the following causes of action:[7]

- VTL § 1111-b violates the federal and New York constitutions, because it imposes liability only on motor vehicle drivers, not on bicyclists. (*Id.* ¶¶ 71–97.)

- Allowing a sworn affidavit as "evidence of the accusations made against Notice recipients" "create[s] a new exception to the generally applicable rules on hearsay." (*Id.* ¶¶ 98–111.)

---

[6] According to the plaintiff, Nassau County and NCTPVA "allowed their own inadmissible (and illegal and unlawfully obtained) evidence" to be admitted, because their attorney offered the evidence and the officer presiding over the hearing worked for them. (*Id.* ¶ 60.)

[7] The complaint lists three proposed classes, two of which include sub-classes. (*Id.* ¶ 63.) The "Ticketed Class" includes drivers who have received notices of liability, based on photographs and videos, since 2009. (*Id.*) The "Paying Class" includes people in the ticketed class who paid the fines. (*Id.*) This class is divided into three subclasses: those who did not dispute the notice (the "Non-disputing Subclass"), those who paid the fines after disputing the notice and appearing at a hearing (the "Disputing Subclass"), and those who disputed the notice and prevailed, but had to pay fees (the "Fee Only Subclass"). (*Id.*) The "RICO Class" includes people who suffered financial injuries and is divided into two subclasses: those who were injured more than four years before this action (the "Older Subclass") and those were injured within four years of this action (the "Newer Subclass"). (*Id.*)

- Nassau County improperly gave the NCTPVA authority to issue notices of liability, "exceed[ing] the authorization limitations" established in General Municipal Law § 370-a(1), which provides that the "sole purpose of NCTPVA is 'to administer and dispose of traffic and parking infractions.'" (*Id.* ¶¶ 112–24.)

- Title 72 "denies due process" because the NCTPVA prepares the notices of liability and adjudicates the challenges to the notices, "eliminat[ing] any concept of a fair tribunal." (*Id.* ¶¶ 125–45.)

- The red light camera program fees are illegal taxes that violate the federal and New York state constitutions; the "Driver Responsibility Fee" is the same regardless of the actual administrative costs (*id.* ¶¶ 146–62), and the "Public Safety Fee" is not applied in "all matters involving traffic safety" (*id.* ¶¶ 163–80).

- The "Public Safety Fee" exceeds the maximum penalty allowed by state law. (*Id.* ¶¶ 181–90.)

- Photographic and video evidence should not be admitted at NCTPVA hearings (*id.* ¶¶ 320–56), and "live witnesses" should have to testify (*id.* ¶¶ 519–40).

- The defendants violated due process and denied equal protection under the state and federal constitutions. (*Id.* ¶¶ 541–49.)

- The "red light camera Notices and red light camera hearings" are treated as "quasi-civil and quasi-criminal hybrids;" thus, "due process requirements pertaining to criminal proceedings" — including the Sixth Amendment right to confront witnesses — "must apply." (*Id.* ¶¶ 550–73.)

- The contracts between the Nassau defendants and the corporate defendants were fraudulent, because only the Nassau County Department of Public Works was legally authorized to install and operate the red light cameras. The defendants committed "fraud" by issuing the notices of liability based on the evidence from the cameras. (*Id.* ¶¶ 191–249.)

- The defendants invaded the plaintiff's privacy, because the corporate defendants did not have private investigator licenses, which were required because the corporate defendants were "hired to obtain evidence of a crime committed against the state." (*Id.* ¶¶ 250–70.)

- The defendants used the license plate and registration information from the photographs and video recordings to obtain confidential information about the plaintiff in violation of the Drivers Privacy Protection Act, 18 U.S.C. §§ 2721, 2722, and 2724. (*Id.* ¶¶ 273–97.)

In addition, the plaintiff claims:

- Unjust enrichment based on the payments from drivers who were issued notices of liability (*id.* ¶¶ 298–319; 357–94);

- Abuse of process because Nassau County and NCTPVA "turn[ed] 'a blind eye'" to the supposedly illegal process (*id.* ¶¶ 395–431);

- Concert of action (*id.* ¶¶ 432–72);

- Fraud and abuse of process in connection Nassau County's certifications about the red light camera program to the New York state and federal governments (*id.* ¶¶ 473–518);

- Causes of action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (*id.* ¶¶ 574–693).

The plaintiff seeks declaratory relief, an injunction prohibiting Nassau County and NCTPVA from contracting with the corporate defendants, disgorgement of money collected by the red light program, as well as compensatory, punitive and treble damages, pre-judgment and post-judgment interest and attorneys' fees. (*Id.* at 115–116.)[8]

The defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(c). They argue that the plaintiff does not have Article III standing, did not exhaust administrative remedies and fails to state federal or state causes of action. The Nassau defendants argue that NCTPVA is not a suable entity, and in any event, that the law permits them to contract with the corporate defendants in connection with the red light camera program.

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "If plaintiffs lack Article III standing, a court

---

[8] On May 20, 2024, Nassau County and NCTPVA answered the complaint and filed cross claims against New York State, Verra Mobility Corporation and American Traffic Solutions for common law contribution and indemnification, and against Verra Mobility Corporation and American Traffic Solutions for contractual indemnification. (ECF No. 8.) On July 5, 2024, Nassau County and NCTPVA voluntarily dismissed their cross claims against New York State. (ECF No. 24.) On July 31, 2024, the plaintiff voluntarily dismissed all claims against New York State. (ECF No. 31.) On August 29, 2024, Nassau County and NCTPVA withdrew their cross claims against the corporate defendants. (ECF No. 34.)

has no subject matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. However, "[b]ecause 'standing is challenged on the basis of the pleadings, [the court must] accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *MacIssac v. Town of Poughkeepsie*, 770 F.Supp.2d 587, 593 (S.D.N.Y. 2011) (quoting *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 114 (2d Cir. 2002)).

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings are construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

The plaintiff argues that the Nassau defendants' Rule 12(c) motion should be denied as premature and not converted into a Rule 12(b)(6) motion, and that the Court should deny motion in any event. (ECF No. 39 at 8–11.) "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)). Accordingly, the Court

construes the Nassau defendants' motion as a Rule 12(b)(6) motion. *See Ezra v. Bristol-Myers Squibb Co.*, 784 F. App'x 48, 49 (2d Cir. 2019) (finding that the district court property considered the defendant's untimely 12(c) motion); Wright & Miller, Federal Practice and Procedure § 1368 (3d ed.) ("Because of the similarity between the Rule 12(c) and Rule 12(b) standards, courts typically will construe a premature Rule 12(c) motions as if it were brought under Rule 12(b) and a late Rule 12(b) motion . . . as if it were brought under Rule 12(c).").

## DISCUSSION

### I.    Article III Standing

To establish Article III standing, a plaintiff must "show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." *Palmieri v. Town of Babylon*, No. 01-CV-1399, 2006 WL 1155162, at *5 (E.D.N.Y. Jan. 6, 2006), *aff'd*, 277 F. App'x. 72 (2d Cir. 2008) (citation omitted).  The defendants argue that the plaintiff's "interest in avoiding the consequences of running a red light does not confer Article III standing."  (ECF No. 35-1 at 10; *see also* ECF No. 36-1 at 8–10.)  The defendants rely on *Bell v. Am. Traffic Sols., Inc.*, in which the Fifth Circuit held that the plaintiffs, who paid fines after red light cameras caught them running red lights, did not have standing to bring a negligence *per se* claim against American Traffic Solutions, which installed and operated the cameras.  371 F. App'x 488, 492 (5th Cir. 2010)  The plaintiff responds that *Bell* is different because the plaintiffs sued for negligence under Texas law and claimed that they would not have been caught if ATS had not installed and operated the cameras.  (ECF No 39 at 11–12.)

#### a.   Injury

The plaintiff cites the following as sources of her injuries: the allegedly unconstitutional red light statutes, the allegedly invalid contracts between the Nassau and corporate defendants

and denial of due process in connection with her challenge to the citation.  The *Bell* plaintiffs, on the other hand, based their claims on a Texas statute prohibiting "investigations compan[ies]" from operating without a license; they also claimed that "their violations would not have been discovered were it not for [American Traffic Solutions]."  *Bell,* 371 F. App'x at 490.  Courts have routinely found that plaintiffs have standing to challenge the constitutionality of state and county statutes and regulations, including those related to fees.  *See, e.g.*, *Kwong v. Bloomberg*, 876 F. Supp. 2d 246, 252 (S.D.N.Y. 2012), *aff'd*, 723 F.3d 160 (2d Cir. 2013) (finding standing where plaintiffs who paid a fee challenged the city statute establishing the fee as unconstitutional); *New York State Firearms Ass'n v. James*, No. 23-CV-6524, 2024 WL 1932050, at *4 (W.D.N.Y. May 2, 2024) (finding that plaintiffs had standing to challenge fees associated with background checks imposed by state statute).  The plaintiff's injury is therefore more than simply an "interest in evading the law." *Bell*, 371 F. App'x at 490.

The corporate defendants' reliance on *Palmieri v. Town of Babylon*, (ECF No. 35-1 at 11), is also misplaced.  Palmieri ignored a rental permit law and rented his property without the necessary permit.  *Palmieri*, 2006 WL 1155162, at *6.  The Honorable Sterling Johnson held that Palmieri did not have standing, and that his "failure to comply with the law by obtaining a permit undermines any claim he has that the Rental Permit Law as enforced violated due process with regard to his Property." *Id.*  Judge Johnson observed that Palmieri "could not have suffered the alleged injury of being deprived due process . . . upon the statute's enactment" because he did not buy the property until years after the town enacted the statute. *Id.* at *5.  Here, on the other hand, the plaintiff does not base her due process claims on a statute that she ignored; rather, she alleges that she was denied due process because the methods to challenge the hearing officer's finding were deficient.

10

*Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211 (E.D.N.Y.), *aff'd*, 630 F. App'x 61 (2d Cir. 2015) provides the appropriate analogy.  In that case, Leder ran a red light, got a ticket and sued the same defendants the plaintiff is suing in this case.  *Id.* at 216.  Leder did not contest the ticket and paid the fine, but claimed the defendants violated due process because they reduced the yellow light times, forcing drivers to run red lights, in order to generate revenue.  *Id.* at 217.  The Honorable Arthur Spatt rejected the defendants' standing claim, because Leder's "allegation that she paid a fine of $65.00 as a result of the Defendants' actions, although for a small amount, satisfies the injury-in-fact requirement."  *Id.* at 221.  Like Leder, the plaintiff in this case alleges "that she paid a fine . . . as a result of the Defendants' actions . . . [which] satisfies the injury-in-fact requirement."  *Id.*

### a.  Causation

The defendants also argue that the plaintiff's "own allegations confirm that her alleged 'harm' is not 'fairly traceable' to" their conduct, because she "does not challenge that she violated the law."  (ECF No. 35-1 at 11; *see also* ECF No. 36-1 at 10–11.)  The corporate defendants argue that, like in *Palmieri*, "it was Plaintiff's traffic infraction — her failure to comply with the VTL — that caused her alleged injury, not the red-light camera system that recorded her unlawful act."  (ECF No. 35-1 at 11.)  Judge Spatt rejected this argument when the defendants made it in *Leder*.  *See Leder*, 81 F. Supp. 3d at 221.  "Article III causation does not require that a plaintiff demonstrate that her injury was directly caused by the Defendant's actions; rather, she merely needs to show that her injury was 'fairly traceable' to the defendant's conduct."  *Id.* (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013)).  The plaintiff's claim — that the defendants caused her injuries by establishing and operating the red light program — is sufficient at this stage of the litigation to show causation.  *Id.*; *see also Toretto v. Donnelley Fin. Sols., Inc.*, 523 F. Supp. 3d 464, 471 (S.D.N.Y. 2021) ("[I]ndirectness is not

necessarily fatal to standing, because the fairly traceable standard is lower than that of proximate cause." (citation omitted)).

### b. Redressability

The Court also considers the question of redressability, even though the defendants have not raised it. *See In re Univ. Urology Data Sec. Incident Litig.*, No. 23-CV-6484, 2025 WL 1002355, at *4 (S.D.N.Y. Mar. 31, 2025) ("While Defendants advance no argument on traceability or redressability, the Court considers these prongs *sua sponte.*"). The plaintiff seeks declaratory relief, an injunction prohibiting the Nassau defendants from contracting with the corporate defendants, disgorgement of profits from the red light camera program and damages. (ECF No. 1 at 115–116.) "A plaintiff must demonstrate standing separately for each form of relief sought." *MacIssac*, 770 F.Supp.2d at 593 (citation omitted).

The plaintiff seeks damages for economic injuries she sustained because of the defendants' allegedly unconstitutional conduct. Accordingly, awarding damages for the fines the plaintiff paid will redress her injury. *See Leder*, 81 F. Supp. 3d at 222. However, as Judge Spatt found in *Leder*, "the Plaintiff's request for [injunctive] relief appears less plausible." *Id.* "In seeking prospective relief like an injunction, 'a plaintiff must show that he can reasonably expect to encounter the same injury again in the future — otherwise there is no remedial benefit that he can derive from such judicial decree.'" *Id.* (quoting *MacIssac*, 770 F.Supp.2d at 593). The plaintiff does not allege that she will be cited for running red lights if the Court does not grant her injunctive relief. Even if she runs a red light and gets a ticket, that "chance is too speculative to confer Article III standing on the Plaintiff's claim for a permanent injunction." *Id.*; *see also Worthy v. City of Phenix City, Alabama*, 930 F.3d 1206, 1224–25 (11th Cir. 2019) ("Appellants lack standing to bring their claims for injunctive relief [related to a red-light-camera

12

ordinance] because they have not sufficiently alleged a threat of future harm.")  Accordingly, the plaintiff's claims for injunctive relief are dismissed for lack of standing.

## II.    Failure to Exhaust and Preclusion

The defendants argue that the plaintiff did not exhaust her administrative remedies. According to the corporate defendants, the plaintiff's "failure to raise the arguments contained in her Complaint during her hearing before the NCTPVA bars her from now raising them here." (ECF No. 35-1 at 12.)  They say that is so that even if the hearing was a judicial rather than administrative proceeding, as the plaintiff claims.  (ECF No. 40 at 8–9.)  The Nassau defendants argue that the plaintiff should be "estop[ped] . . . from now bringing the present action" because she chose "to pay the fine instead of pursuing an appeal of her hearing."  (ECF No. 36-1 at 11.) The plaintiff responds that exhaustion is not required, and that even if it is, she exhausted administrative remedies by having a hearing.  (ECF No. 38 at 14–17.)[9]

The plaintiff brings constitutional claims under 42 U.S.C. § 1983, which does not require exhaustion.  *See Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 500–01 (1982) ("[T]his Court has stated categorically that exhaustion is not a prerequisite to an action under § 1983."); *see also Knutson v. Vill. of Lakemoor*, No. 18-CV-1804, 2018 WL 10509387, at *8 n.12 (N.D. Ill. Dec. 4, 2018), *aff'd*, 932 F.3d 572 (7th Cir. 2019) (exhaustion was not required where plaintiff challenged red light camera ordinance); *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 n.1 (2d Cir. 2000) ("For purposes of constitutional standing, there is no requirement that a plaintiff challenging the facial validity of a state statute first raise its claim in state court.").

---

[9] The plaintiff also challenges the defendants' description of the hearing.  (ECF No. 38 at 17–18.)

Nor does claim preclusion apply. In Section 1983 cases, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Knutson*, 2018 WL 10509387, at *7 (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).[10] Under New York Law, "*[r]es judicata,* or claim preclusion, is invoked to prevent a party . . . from relitigating a previously litigated action" and applies "to all issues and theories of recovery applicable to the cause of action, whether or not they were actually litigated." *Hirschfeld v. Hogan*, 18 Misc. 3d 531, 534 (N.Y. Sup. Ct. 2007). Therefore, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based on different theories or even if seeking a different remedy." *Id.*

While conceding that "a number of issues raised in the complaint were not put forth before NCTPVA," the plaintiff argues that "the presiding judicial hearing officer did not have the authority to rule on those issues." (ECF No. 38 at 18.) Claim preclusion "contemplates that the parties had a 'full and fair' opportunity to litigate the initial determination." *People v. Evans*, 94 N.Y.2d 499, 501 (2000). The plaintiff could not have litigated her claims at the hearing because they are not defenses under VTL § 1111-b.[11] Accordingly, the plaintiff's claims are not precluded. *See also Knutson*, 2018 WL 10509387, at *8 (preclusion was not available where the

---

[10] The corporate defendants cite *Idris v. City of Chicago*, 552 F.3d 564 (7th Cir. 2009), where plaintiffs challenged the city's red light camera program. (ECF No. 40 at 9.) The Seventh Circuit observed that the city "might well have had a good argument that claim preclusion bars this litigation" but the city did not advance "this affirmative defense." *Idris,* 552 F.3d at 565. In *Knutson*, another challenge to a red light camera program, the district court acknowledged that *Idris* "mention[s], in dicta, that claim preclusion may be an available affirmative defense to claims against city ordinances," but found that the plaintiffs were not precluded from bringing suit even though they did not raise their arguments in the administrative hearing. 2018 WL 10509387, at *7–8.

[11] VTL § 1111-b has two defenses — that the car was reported stolen before the violation, VTL § 1111-b(i), and that the red light camera was malfunctioning at the time of the alleged violations, VTL § 1111-b(o).

14

plaintiffs were "prevented from challenging allegedly unlawful notices or administrative hearing procedures" and where "a hearing officer would not have been able to grant the relief [the plaintiffs' sought] under their limited powers").

## III.    NCTPVA

The Nassau defendants argue that NCTPVA is a non-suable entity because it "is merely an administrative arm of the municipality of Nassau County" and does not have its own legal identity.  (ECF No. 36-1 at 11–12 (quoting *Davis v. Nassau Cnty.*, No. 06-CV-4762, 2011 WL 5401663, at *3 (E.D.N.Y. Nov. 5, 2011).)  According to the defendants, the "legal reality of NCTPVA being legally identical to NASSAU has severe substantive ramifications" for the plaintiff's complaint, because she alleges that Nassau County improperly authorized or empowered NCTPVA.  (*Id.* at 12.)  They argue that because NCTPVA is a non-suable entity, "the many causes of action premised upon the mistaken argument that NASSAU improperly enlarged NCTPVA's authority and/or powers [are] null[]."  (*Id.*)  The plaintiff responds that *Davis*, which Judge Spatt also decided, does not apply because the motion for summary judgment was unopposed, and Judge Spatt did not consider NCTPVA's history.  (ECF No. 39 at 17–18.)  The plaintiff asserts that the "statute and legislative history" show that NCTPVA is "not an administrative arm of Nassau but a branch of the District Court," and that NCTPVA's website includes disclaimers about Nassau County and NCTPVA that undermine the defendants' claim that NCTPVA cannot be sued.  (*Id.* at 18–20.)

Judge Spatt observed that "under New York law, 'departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore cannot … be sued.'"  *Davis*, 2011 WL 5401663, at *3 (quoting *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008)).  Judge Spatt found that "[t]here is no doubt that the Nassau County Traffic & Parking Violations Agency is merely an administrative

arm of the municipality of Nassau County," and granted summary judgment for Nassau County. *Id*. The Court agrees with that sound logic. *See also* Nassau County Administrative Code § 24-1.1 ("[T]here shall be a department of the Nassau County government known as the Nassau County Traffic and Parking Violations Agency, which shall operate under the control and direction of the County Executive."). The plaintiff's claims against NCTPVA are dismissed because it does "not have a legal identity separate and apart from the municipality and, therefore, cannot be sued." *Davis*, 2011 WL 5401663, at *3; *see also Polite v. Town of Clarkstown*, 60 F. Supp. 2d 214, 216 (S.D.N.Y. 1999) ("[M]unicipal departments in this State . . . are not amenable to suit, and no claims can lie directly against them.").

## IV.    Failure to State a Claim

The defendants ask the Court to dismiss all of the plaintiff's claims for failure to state a claim. (ECF No. 35-1 at 13–21; ECF No. 36-1 at 14–22.) The Court addresses each claim in turn.[12]

### a.  Due Process

Four of the plaintiff's claims are federal due process claims against the Nassau defendants. (*See* ECF No. 1 ¶¶ 125–35 (Sixth Cause of Action); ¶¶ 320–41 (Nineteenth Cause of Action); ¶¶ 541–44 (Thirty-Third Cause of Action); ¶¶ 550–73 (Thirty-Fifth Cause of Action).)[13] The basis for her claims is that NCTPVA issues the notices of liability and adjudicates challenges to the notices, and that evidence from the red light cameras — photographs and videos — are admissible at NCTPVA hearings, as are sworn affidavits in lieu of witnesses.

---

[12] The plaintiff did not bring federal claims against the corporate defendants. (ECF No. 38 at 19–24.)

[13] As noted above, the plaintiff withdrew her claims against New York state, including the third and fourth causes of action challenging the constitutionality of the statute. (ECF No. 31.)

The Fifth Amendment Due Process Clause states that no person shall "be deprived of life, liberty, or property, without due process of law;" the Fourteenth Amendment Due Process Clause "mirrors this language." *Marvin v. Peldunas*, No. 21-1824-CV, 2022 WL 2125851, at *1 (2d Cir. June 14, 2022). "Due process protection has two components, a substantive due process component and a procedural due process component." *Avramenkov v. I.N.S.*, 99 F. Supp. 2d 210, 215 (D. Conn. 2000). "The substantive due process component precludes the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "The procedural due process component precludes the government from depriving a person of life, liberty, or property in an unfair manner." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

### i. Substantive Due Process

A plaintiff making a substantive due process claim must sufficiently allege "(1) a 'valid property interest' or 'fundamental right'; and (2) that the defendant infringed on that right by conduct that 'shocks the conscience' or suggests a 'gross abuse of governmental authority.'" *Leder*, 81 F. Supp. 3d at 223 (quoting *Sloup v. Loeffler*, No. 5–CV–1766, 2008 WL 3978208, at *10 (E.D.N.Y. Aug. 21, 2008)). "To satisfy this standard, a plaintiff must show that the government decision it challenges 'was arbitrary or irrational or motivated by bad faith.'" *Dubin v. Cnty. of Nassau*, 277 F. Supp. 3d 366, 393 (E.D.N.Y. 2017) (quoting *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989)). Notably, "the scope of rights afforded by the Due Process clause is extremely limited." *Leder*, 81 F. Supp. 3d at 223.

"Not all property rights are entitled to the protections of substantive due process," which protects only "those interests that are implicit in the concept of ordered liberty, i.e., those rights that are so rooted in the traditions and conscience of our people as to be ranked as fundamental."

*Id.* at 223–24 (citations omitted); *see also Venghaus v. City of Hartford*, No. 06–CV-1452, 2012 WL 1050014, at *8 (D. Conn. Mar. 27, 2012) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.").  The property interest that the plaintiff alleges is her "financial liability" for the red light violation — a $150 fee.  (*See* ECF No. 1 ¶ 45.)  But "courts have repeatedly found that the substantive Due Process clause does not protect plaintiffs from modest fines."  *Leder*, 81 F. Supp. 3d at 224.  Nor does the challenged conduct — issuing and adjudicating notices of liability and permitting certain evidence at an NCTPVA hearing — "shock[] the conscience" or constitute  a "gross abuse of governmental authority."  *Id.* at 223.

   *ii.  Procedural Due Process*

  A plaintiff bringing a Section 1983 procedural due process claim "must allege both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process."  *Foskey v. Corp. State of New York*, No. 22-CV-2546, 2022 WL 3228271, at *5 (E.D.N.Y. Aug. 10, 2022).  Procedural due process requires, at a minimum, that the state afford people "some kind of hearing" before depriving them of a liberty or property interest.  *Id.* (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003)). In "evaluating the adequacy of a challenged procedure," courts balance the following factors: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Dubin*, 277 F. Supp. 3d at 388–89 (quoting *Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 167–68 (2d Cir. 2001)).

New York courts have determined that VTL § 1111-b's red light camera program is civil, not criminal. *See Krieger v. City of Rochester*, 978 N.Y.S.2d 588, 598–99 (Sup. Ct. 2013) ("[T]he statutory scheme demonstrates an unequivocal intent to create a civil enforcement mechanism, not a criminal one."); *id.* at 599 (collecting cases).[14]   Accordingly, the adjudication procedure "require[s] a lower level of due process protections." *Id.* at 600.  As explained above, the $150 fee that the plaintiff paid for violating the red light law is not a protected property interest.  On the other hand, the government has an interest in enforcing traffic laws, and "the Legislature went to great lengths to design the red light program to be a minimal invasion into privacy by prohibiting photographs of the 'driver, the passengers, or the contents of the vehicle.'" *Krieger*, 978 N.Y.S.2d at 601 (quoting VTL § 1111–b(a)(2)).  In any case, "adequate procedures exist[] to safeguard plaintiffs' property rights." *Dubin*, 277 F. Supp. 3d at 389.  The notice of liability "provides sufficient detail of the allegations . . . as amplified by an opportunity to view the video of the alleged infraction via the internet, and the matter is set for a hearing at which time the owner is given a chance to contest the alleged infraction." *Krieger*, 978 N.Y.S.2d at 601 (quoting VTL § 1111-b(g)).  The plaintiff took advantage of this procedure and contested her notice of liability at a hearing.  (ECF No. 1 ¶¶ 52–54.)  A vehicle owner can also "appeal any guilt adjudication to an Examiner Panel at the Bureau," *Krieger*, 978 N.Y.S.2d at 602; the plaintiff did not avail herself of this opportunity.  "The fact that a [NCTPVA] technician inspects the red light camera footage and issues a sworn or affirmed certificate, and another [NCTPVA]

---

[14] The plaintiff alleges that the "red light camera Notices and red light camera hearings [are] quasi-civil and quasi-criminal hybrids" because the notices of liability provide that failure to respond will result in a "default conviction."  (ECF No. 1 ¶¶ 557–60.)  But the statute "expressly states that a finding of liability 'shall not be deemed a conviction.'" *Krieger*, 978 N.Y.S.2d at 599 (quoting VTL § 1111-b(f)).  Moreover, VTL § 1111-b "does not allow for a conviction exposing the offender to potential jail time," and "the alleged infraction is heard by an administrative body and not a criminal court." *Id.*

employee conducts the hearings, does not condemn the red light camera program." [15]  *Id.*
Accordingly, the plaintiff's due process claims are dismissed.

### b.  Equal Protection

Two of the plaintiff's claims are for federal equal protection violations.  (*See* ECF No. 1
¶¶ 163–72 (Tenth Cause of Action); ¶¶ 545–49 (Thirty-Fourth Cause of Action)). [16]  According
to the plaintiff, VTL § 1111-b treats motor vehicle owners differently than bicycle owners, the
Public Safety Fee treats red light camera violations differently than parking infractions, and
people who are caught by red light cameras are denied the "right to confront their accuser."

"In order to establish an equal protection claim, the plaintiff must show that: (1) [s]he
was selectively treated compared with others similarly situated; and (2) the selective treatment
was based on impermissible considerations, such as membership in a suspect class, intent to
inhibit or punish the exercise of a constitutional right, or malicious or bad faith intent to injure."
*Margiotta v. Kaye*, 283 F. Supp. 2d 857, 864 (E.D.N.Y. 2003).  As for the first requirement,
"[e]qual protection challenges to government classifications generally are concerned with
distinctions based on an 'identifiable group.'"  *Akbar v. Daley*, No. 09-CV-1289, 2009 WL
3055322, at *3 (N.D. Ill. Sept. 18, 2009).  In *Akbar*, also a challenge to red light cameras, the
court found that a plaintiff's equal protection classifications — drivers in the downtown area
versus drivers in other areas — were "problematic," because "the constituent members of the
two groups constantly are in flux."  *Id.*  The same is true in this case.  The groups of people who

---

[15] The *Krieger* court identified additional safeguards for vehicle owners.  "At the hearing, the owner can
have the assistance of an attorney if desired, can subpoena witnesses and records, and is not restrained
by the traditional rules of evidence . . . . The hearing also provides the owner with the ability to pursue
the defense that the red light camera was malfunctioning . . . . The owner's guilt must be shown by
'substantial evidence.'"  978 N.Y.S.2d at 602 (quoting VTL § 1111-b(n), VTL § 240(2)(b), (c) & (d)).

[16] The plaintiff argues that the Nassau defendants cannot defend equal protection challenges to a New
York statute's constitutionality (ECF No. 39 at 24), but that argument is moot because she withdrew
her constitutional claims about the statute, which includes the first and second causes of action.

own cars, ride bikes, commit parking violations and run red lights are constantly changing. Nor has the plaintiff alleged that these classifications are "based on impermissible considerations, such as membership in a suspect class, intent to inhibit or punish the exercise of a constitutional right, or malicious or bad faith intent to injure." *Margiotta*, 283 F. Supp. 2d at 864.

Because "the alleged unequal treatment implicates neither a 'fundamental right' nor is based on a suspect or quasi-suspect distinction such as race, religion, or alienage, the Court must apply a 'rational basis review' to the statutory distinction." *Id.* (quoting *Lamson v. Blumenthal,* 75 F. App'x. 811, 812 (2d Cir. 2003)). A legislative classification subject to rational basis review "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for classification;" "[t]he actual motivations of the enacting governmental body are irrelevant." *Id.* (citations omitted). The burden is on the plaintiff to negate "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (citation omitted). The plaintiff has not come close to meeting this burden, nor does she attempt to do so. The plaintiff claims only that the red light camera program "constitutes an impermissible selective treatment," without addressing whether the program serves a legitimate governmental purpose. (*See, e.g.*, ECF No. 39 at 25–26.) In any event, there is a rational basis for the red light camera program. For example, it is rational to conclude that car drivers who run red lights pose a greater danger to public safety than bicycle riders who run red lights or than drivers who violate parking regulations. The equal protection claims are dismissed.

### c. Takings Clause

The plaintiff brings a federal Takings Clause claim. She alleges that the "Driver Responsibility Fee" is an illegally imposed tax, not an administrative fee, because the defendants impose it regardless of whether the driver has a hearing. (*See* ECF No. 1 ¶¶ 146–54 (Eighth

Cause of Action).)  The defendants argue that courts have upheld the fee, citing *Dubin*, 277 F. Supp. 3d at 393, and *Guthart v. Nassau Cnty.*, No. 604271-2016, 2022 N.Y. Misc. LEXIS 42415 (Sup Ct. Nassau County 2022).  (ECF No. 35-1 at 17; ECF No. 36-1 at 17–18.)  The plaintiff responds that the claims in those cases are different.  (ECF No. 39 at 26.)[17]

"To plead a taking under the Fifth (or Fourteenth) Amendment, a plaintiff must allege that (1) plaintiff possessed a valid property interest; (2) there was a taking of that property interest under color of state law; and (3) the taking was without just compensation."  *Dubin*, 277 F. Supp. 3d at 394.  In *McCarthy v. City of Cleveland*, 626 F.3d 280 (6th Cir. 2010), the court distinguished between takings of "a sum of money from a specific fund" — which is an improper taking — and a taking that "merely impose an obligation on a party to pay money on the happening of a contingency" — which is not an improper taking.  *Id.* at 284.  Because the Driver Responsibility Fee is not a seizure of funds from the plaintiff's bank account, but a fee that a driver must pay for violating the red light laws, the fee is not an improper taking.

### d.  The Drivers Privacy Protection Act

The plaintiff brings two causes of action for invasion of privacy under the Drivers Privacy Protection Act (DPPA), 18 U.S.C. §§ 2721, 2724.  (*See* ECF No. 1 ¶¶ 250–82 (Fifteenth Cause of Action); ¶¶ 283–97 (Sixteenth Cause of Action).)  First, she maintains that the Nassau defendants did not ensure that the corporate defendants were qualified; she claims that the corporate defendants did not have a private investigative license, which New York law requires for "any person or entity hired to obtain evidence of a crime committed against the state."  Her second claim is that the Nassau and the corporate defendants invaded her privacy by getting vehicle owner information from the Department of Motor Vehicles.  As support for this

---

[17] *Dubin* may no longer be good law after *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180 (2019).

proposition, the plaintiff cites the supposed "illegality" of the contracts between the Nassau and corporate defendants, as well as the "illegal" photographs and recordings that showed the plaintiff running the red light; the plaintiff says that the Nassau defendants violated 18 U.S.C. § 2722(a) when they used this evidence to get confidential information about vehicle owners.

These conclusory allegations are insufficient to state a claim. The plaintiff claims that New York requires a private investigator license in this context, but does not identify the law that establishes this requirement, other than to cite "New York State law." (*See* ECF No. 1 ¶¶ 262– 63.) Nor does the plaintiff explain how the photographs and videos from the red light cameras are "evidence of a crime." As explained above, the red light camera program is civil in nature. *See Krieger*, 978 N.Y.S.2d at 598–99 ("[T]he statutory scheme demonstrates an unequivocal intent to create a civil enforcement mechanism, not a criminal one.").

The plaintiff claims that the defendants violated the DPPA by getting vehicle owner information from the Department of Motor Vehicles. The plaintiff cites the supposed "illegality" of the contracts between the Nassau and corporate defendants, as well as the "illegal" photographs and recordings that showed the plaintiff running the red light; the plaintiff says that the Nassau defendants violated 18 U.S.C. § 2722(a) when they used this evidence to get confidential information about vehicle owners. (*See* ECF No. 1 ¶¶ 274–78.)[18]

The DPPA provides a cause of action against "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter." 18 U.S.C. § 2724(a). "Permissible use" includes (1) "use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in

---

[18] The plaintiff also alleges that the defendants are liable for damages pursuant to 18 U.S.C. § 2724(b)(1), reasonable attorneys' fees pursuant to § 2724(b)(3) and equitable relief pursuant to § 2724(b)(4).

carrying out its functions," § 2721(b)(1); (2) "use in connection with matters of motor vehicle or driver safety," § 2721(b)(2); and (3) "use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency," § 2721(b)(4).  The plaintiff does not address the permissible purposes in § 2721 or the caselaw that discusses permissible use under the DPPA.  *See*, *e.g.*, *King v. Creed*, No. 14-CV-0165, 2017 WL 11712225, at *9 (N.D.N.Y. Feb. 17, 2017) (under the DPPA, "disclosure of such information is permitted for use 'by any governmental agency' or by 'any private person or entity acting on behalf of a Federal, State or local agency in carrying out its functions'" (quoting 18 U.S.C. § 2721(b)(1))); *id.* ("The DPPA also allows states to divulge drivers' personal information . . .  in connection with court, agency, or self-regulatory body proceedings." (quoting 18 U.S.C. § 2721(b)(4))).  The invasion of privacy claims based on the DPPA are dismissed.

### e.  Racketeering

Finally, the plaintiff brings claims for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*.  (*See id.* ¶¶ 574–670 (Thirty-Sixth Cause of Action); ¶¶ 671–93 (Thirty-Seventh Cause of Action).)  "To state a plausible RICO claim, a plaintiff must allege: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  *Foskey*, 2022 WL 3228271, at *6 (quoting *Williams v. Affinion Grp.*, LLC, 889 F.3d 116, 123-24 (2d Cir. 2018)).  Because "the core of a RICO civil conspiracy is an agreement to commit predicate [RICO] acts, such a complaint, at the very least, must allege specifically such an agreement."  *Id.* (quoting *Wolhendler v. Goldberg*, No. 19-CV-457, 2020 WL 5658790, *2 (E.D.N.Y. Sept. 23, 2020) (cleaned up)).  A RICO conspiracy claim will

therefore "be dismissed where the plaintiff alleges no facts to show specifically that the defendants had any meeting of the minds in the alleged violations." *Wolhendler*, 2020 WL 5658790, at *2 (citation omitted).

*Foskey* involved a similar RICO claim about Nassau County's red light camera program. The court rejected the claim because "[u]nder no possible interpretation of the facts has Plaintiff plausibly alleged any predicate acts, much less a pattern of RICO activity, nor does he sufficiently allege the existence of a RICO enterprise that affects interstate or foreign commerce." 2022 WL 3228271, at *6. That is true here, as well. The only agreement the plaintiff alleges is the contract between the Nassau and corporate defendants to operate and install the red light cameras. A contract to perform services is not a "meeting of the minds" to "commit RICO predicate acts." *Wolhendler*, 2020 WL 5658790, at *2. The racketeering claims are dismissed.

## V.    Supplemental Jurisdiction Over Remaining State Law Claims

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). The Court dismisses all the federal claims over which it has original jurisdiction, and it declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims alleging violations of the New York State constitution (ECF No. 1 ¶¶ 112–24 (Fifth Cause of Action); ¶¶ 136–45 (Seventh Cause of Action); ¶¶ 155–62 (Ninth Cause of Action); ¶¶ 173–80 (Eleventh Cause of Action); ¶¶ 181–90 (Twelfth Cause of Action); ¶¶ 342–56 (Twentieth Cause of Action); ¶¶ 519–32 (Thirty-First Cause of Action); ¶¶ 533–40 (Thirty-Second Cause of Action)), fraud (*id.* ¶¶ 191–213 (Thirteenth Cause of Action); ¶¶ 214–49 (Fourteenth Cause of Action); ¶¶ 473–89 (Twenty-Eighth Cause of Action)), unjust enrichment (*id.* ¶¶ 298–309 (Seventeenth Cause of Action); ¶¶

310–319 (Eighteenth Cause of Action); ¶¶ 357–70 (Twenty-First Cause of Action); ¶¶ 371–81

(Twenty-Second Cause of Action); ¶¶ 382–94 (Twenty-Third Cause of Action)), abuse of

process (*id.* ¶¶ 395–415 (Twenty-Fourth Cause of Action); ¶¶ 416–31 (Twenty-Fifth Cause of

Action); ¶¶ 490–503 (Twenty-Ninth Cause of Action); ¶¶ 504–18 (Thirtieth Cause of Action)),

and concert of action (*id.* ¶¶ 432–50 (Twenty-Sixth Cause of Action); ¶¶ 451–72 (Twenty-

Seventh Cause of Action)).[19]  *See Kolari*, 455 F.3d at 123 ("Plaintiffs' federal-law claims were

eliminated on a motion to dismiss, prior to the investment of significant judicial resources, and

we can discern no extraordinary inconvenience or inequity occasioned by permitting the claims

to be refiled in state court where they will be afforded a surer-footed reading of applicable law."

(citation omitted)).

## CONCLUSION

The defendants' motions to dismiss are granted.  The Clerk of Court is respectfully

directed to enter judgment and close this action.


**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge


Dated: Brooklyn, New York
      September 9, 2025

---

[19] The plaintiff's Thirty-Eighth Cause of Action is a claim for attorneys' fees, but a "claim for attorney's fees and costs is not actually a separate cause of action" but a potential form of relief.  *Reliance Commc'ns LLC v. Retail Stores Ventures, Inc.*, No. 12-CV-2067, 2013 WL 4039378, at *1 n.3 (E.D.N.Y. Aug. 7, 2013); *see also Jaffe v. Capital One Bank*, No. 09-CV-4106, 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010) (dismissing claim for attorneys' fees because it is "not [a] claim[] upon which relief may be granted" but a "potential form[] of relief," and therefore "cannot stand as [a] separate cause[] of action").